**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-05380 |
| v. | ) | The Honorable Matthew F. Kennelly, Judge |
| RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF RUSH UNIVERSITY SYSTEM FOR HEALTH'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## TABLE OF CONTENTS

**Page**

**INTRODUCTION** .......... **1**

**LAW AND ARGUMENT** .......... **3**

**I. STANDARD OF REVIEW.** .......... **3**

**II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FEDERAL WIRETAP ACT.** .......... **4**

A. Plaintiffs Do Not Plausibly Allege that Rush Intercepted Communications Where Rush Was the Intended Recipient. .......... 4

B. Rush Is Not an "Electronic Communications Service" and Plaintiff Do Not Allege the Contents of any Portal Communication. .......... 7

**III. PLAINTIFFS DO NOT ALLEGE A BREACH OF THE IMPLIED DUTY OF CONFIDENTIALITY UNDER ILLINOIS LAW.** .......... **9**

**IV. PLAINTIFFS' DECEPTIVE AND UNFAIR PRACTICES CONSUMER FRAUD ACT CLAIMS ALSO FAIL TO STATE A CLAIM.** .......... **12**

A. Plaintiffs' Deceptive Practices Claim Should Be Dismissed for Failure to Allege Personal Deception. .......... 13

B. Rush's Website Privacy Statement Fully Disclosed the Alleged Internet Metadata Transfers at Issue. .......... 14

C. Plaintiffs Fail to Allege "Actual Pecuniary Loss" for Both Their Deceptive and Unfair Practices Claims. .......... 15

**V. PLAINTIFFS CANNOT MEET THE FUTURE HARM ELEMENT FOR THEIR UNIFORM DECEPTIVE TRADE PRACTICES CLAIM.** .......... **16**

**VI. PLAINTIFFS' INTRUSION UPON SECLUSION CLAIM IS BASED ON AN ALLEGED DISCLOSURE, NOT AN INTRUSION.** .......... **18**

**CONCLUSION** .......... **20**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliano v. Louisville Distilling Co., LLC*,
115 F. Supp. 3d 921 (N.D. Ill. 2015) .......... 18

*Allen v. Quicken Loans Inc.*,
2018 WL 5874088 (D.N.J. Nov. 9, 2018) .......... 5

*ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*,
282 F. Supp. 3d 1043 (N.D. Ill. 2017) .......... 17

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) .......... 15, 16

*Bissessur v. Indiana Univ. Bd. of Trustees*,
581 F.3d 599 (7th Cir. 2009) .......... 4

*Bruce v. McDonald*,
2014 WL 931522 (M.D. Ala. Mar. 10, 2014) .......... 5

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .......... 16

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 6

*Casillas v. Cypress Ins. Co.*,
770 F. App'x 329 (9th Cir. 2019) .......... 8

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) .......... 3

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .......... 6, 7

*De Bouse v. Bayer*,
235 Ill. 2d 544 (2009) .......... 13, 14

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) .......... 9, 18, 19

*Doe v. Columbia Coll. Chi.*,
933 F.3d 849 (7th Cir. 2019) .......... 9

*Doe v. Purdue Univ.*,
928 F.3d 657 (7th Cir. 2019) .......... 9

*Dwyer v. Am. Exp. Co.*,
273 Ill. App. 3d 742, 652 N.E.2d 1351 (1995) ....................19

*Garner v. Amazon.com, Inc.*,
--- F. Supp. 3d ----, 2022 WL 1443680 (W.D. Wash. May 6, 2022) ....................8

*Geisenberger v. Willuhn*,
72 Ill. App.3d 435 (2d Dist. 1979) ....................9, 10, 12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................6, 7, 9

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................8

*Jurgens v. Build.com*,
2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) ....................5

*Khorloo v. John C. Heath Attorney at Law, PLLC*,
2020 WL 1530735 (N.D. Ill. Mar. 31, 2020) ....................16

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ....................16

*Kljahich v. Whirlpool Corp.*,
2015 WL 8481973 (N.D. Ill. Dec. 10, 2015) ....................17

*Liebich v. DelGiudice*,
2022 WL 874610 (N.D. Ill. Mar. 24, 2022) ....................12

*Lovgren v. Citizens First Nat. Bank of Princeton*,
126 Ill. 2d 411 (1989) ....................8, 12, 18

*Macovski v. Groupon, Inc.*,
533 F. Supp. 3d 460 (N.D. Ill. 2021) ....................3, 4

*Marsh v. Zaazoom Solutions, LLC*,
2012 WL 952226 (N.D. Cal. Mar. 20, 2012) ....................7

*Miller v. Motorola, Inc.*,
202 Ill. App. 3d 976, 560 N.E.2d 900 (1990) ....................19

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ....................6

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) ....................5

*O'Connor v. Ford Motor Co.*,
477 F. Supp. 3d 705 (N.D. Ill. 2020) ............ 14

*Oliveira v. Amoco Oil Co.*,
201 Ill. 2d 134 (2002) ............ 13, 14, 15

*Palm v. Holocker*,
2018 IL 123152 ............ 11

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ............ 4

*Pisciotta v. Old Nat'l Bancorp*,
499 F.3d 633 (7th Cir. 2007) ............ 12

*Popp v. Cash Station, Inc.*,
613 N.E.2d 1150 (Ill. Ct. App. 1992) ............ 17

*Rice v. Dreyer's Grand Ice Cream, Inc.*,
--- F. Supp. 3d ----, 2022 WL 3908665 (N.D. Ill. Aug. 30, 2022) ............ 17

*Rockford Memorial Hosp. v. Havrilesko*,
368 Ill. App. 3d 115 (2d Dist. 2006) ............ 15

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ............ 3

*In re Trans Union Corp. Privacy Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004) ............ 19

*Troutt v. Mondelez Global LLC*,
2022 WL 16552956 (N.D. Ill. Oct. 31, 2022) ............ 14

*Virnich v. Vorwald*,
664 F.3d 206 (7th Cir. 2011) ............ 3

*Washington v. Hyatt Hotels Corp.*,
2020 WL 3058118 (N.D. Ill. June 9, 2020) ............ 13, 16

*White v. DaimlerChrysler Corp.*,
368 Ill. App. 3d 278 (1st Dist. 2006) ............ 15

*Worix v. MedAssets, Inc.*,
857 F. Supp. 2d 699 (N.D. Ill. 2012) ............ 3, 12

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ............ 4

**Statutes**

735 ILCS § 5/8-802 ....................................................................................................11

815 ILCS 505/2...........................................................................................................15

815 ILCS 510/3...........................................................................................................17

18 U.S.C. § 2511(1) .....................................................................................................4

18 U.S.C. § 2511(2) ...........................................................................................5, 6, 7

18 U.S.C. § 2511(3) ...............................................................................................7, 8

**Rules**

FED. R. CIV. PRO. RULE 9...........................................................................................14

FED. R. CIV. PRO. RULE 12......................................................................................3, 9

## INTRODUCTION

This case is one of numerous lawsuits that have been filed against health care providers located throughout the nation based on alleged privacy violations on their internet websites. *See, e.g., Winston Smith, et al. v. Facebook, Inc., et al.*, Case No. 5:16-cv-01282 (N.D. Cal.); *Jane Doe I, et al. v. UPMC*, Case No. 2:20-cv-00359 (W.D. Pa.); *John Doe v. ProMedica Health System, Inc.*, Case No. 3:20-cv-01581 (N.D. Ohio); *Michael Krackenberger v. Northwestern Memorial Hospital, et al.*, Case No. 4:22-cv-04203 (N.D. Ill.).

As in those other cases, the basis for plaintiffs' complaint here is that defendant Rush University System for Health (Rush) embedded certain third-party source code on its publicly available website, www.rush.edu, and on Rush's MyChart patient portal, available at https://mychart.rush.edu/mychart/Authentication/Login?. (Dkt. No. 1, Compl. ¶¶ 4-5, 16, 33-34, 37-38.) Plaintiffs allege this third-party source code causes transmissions of their "personally identifiable patient data" to the following third-party data technology companies: Facebook, Google, and Bidtellect. (*Id.*, ¶ 38.) This alleged personally identifiable patient data does not come in the form of health information tied to an actual name, but instead consists of internet metadata, things such as "Patient IP addresses," "Unique, persistent patient cookie identifiers," "Device identifiers," "Account numbers," "URLs," "Other unique identifying numbers, characteristics, or codes," and "Browser-fingerprints." (*Id.*, ¶ 33.)

Plaintiffs' complaint does not allege any transfer of internet metadata specific as to them, personally. Instead, the complaint takes the parties and the Court through a hypothetical visit to Rush's website made by a hypothetical patient. This hypothetical patient navigates the website for information regarding birth control, ultimately clicking on the following link: https://www.rush.edu/treatments/birth-control. (*See id.*, ¶ 45; *see also id.*, ¶¶ 67-70 (same).)

The complaint does not say whether the hypothetical patient first searched Google for this same information:




The complaint also does not say whether the hypothetical patient also searched WebMD for this same information, https://www.webmd.com/sex/birth-control/default.htm; or another health care provider website, https://www.mayoclinic.org/healthy-lifestyle/birth-control/basics/birth-control-basics/hlv-20049454; https://www.hopkinsmedicine.org/health/wellness-and-prevention/contraception-birth-control; https://www.uchicagomedicine.org/conditions-services/obgyn/contraception-family-planning; or their federal, state or local government, https://medlineplus.gov/birthcontrol.html; https://www.cdc.gov/reproductivehealth/contraception/index.htm; https://www2.illinois.gov/hfs/MedicalClients/FamilyPlanning/Pages/default.aspx; https://cookcountyhealth.org/service/ob-gyn/.

The complaint does not say any of these things. Instead, the complaint targets Rush, claiming that "[i]mmediately upon a patient sending the 'birth control' communication to Rush," the source code on www.rush.edu "triggers separate contemporaneous data transmissions containing personally identifiable patient data and the content of the patient's communications to third parties, including Facebook, Google, and Bidtellect." (Dkt. No. 1, Compl. ¶ 68.)

Yet, plaintiffs' own hypothetical demonstrates the fundamental problem with their claims: *anyone can visit Rush's public website, at any particular time, for any purpose whatsoever*—including even to gather information to file a lawsuit. (*Id.*, ¶¶ 58-73.) As the Ninth Circuit held in affirming the dismissal of an analogous website privacy complaint with prejudice under Rule 12(b)(6): "Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018), *affirming Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) (same; "These pages contain general information that is accessible to the public at large.").

For the reasons further explained below, the Court should reach the same result here and dismiss plaintiffs' complaint with prejudice.

## LAW AND ARGUMENT

### I. STANDARD OF REVIEW.

"Dismissal for failure to state a claim under Rule 12(b)(6) is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 701 (N.D. Ill. 2012) (quoting *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011)).

To survive a motion to dismiss, "a complaint 'must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and [the] grounds on which it rests and (2) contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Macovski v. Groupon, Inc.*, 533 F. Supp. 3d 460, 473 (N.D. Ill. 2021) (quoting *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019)).

"A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FEDERAL WIRETAP ACT.

Plaintiffs' first claim against Rush is for an alleged violation of the federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986. (Dkt. No. 1, Compl. ¶¶ 185-204.) *See generally In re Zynga Privacy Litig.*, 750 F.3d 1098, 1101 (9th Cir. 2014) (discussing ECPA legislative history). "The post-ECPA Wiretap Act provides a private right of action against one who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'" *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003) (quoting 18 U.S.C. § 2511(1)(a)).

### A. Plaintiffs Do Not Plausibly Allege that Rush Intercepted Communications Where Rush Was the Intended Recipient.

For their Wiretap Act claim, plaintiffs first allege that Rush violated section 2511(1) of the statute in at least one of three ways:

(1) by intentionally *intercepting* plaintiffs' electronic communications (*id.*, ¶ 188, citing 18 U.S.C. § 2511(1)(a));

(2) by intentionally *disclosing* plaintiffs' electronic communications (*id.*, citing 18 U.S.C. § 2511(1)(c)), "knowing or having reason to know that the electronic communications were obtained in violation of the ECPA" (*id.*, ¶ 197); and, finally:

(3) by intentionally *using*, or *endeavoring to use*, the contents of plaintiffs' electronic communications (*id.*, ¶ 188 (citing 18 U.S.C. § 2511(1)(d)), here again "knowing or having

reason to know that the electronic communications were obtained in violation of the ECPA" (*id.*, ¶ 198).

Plaintiffs' three theories of liability for an alleged violation of section 2511(1) of the Wiretap Act all fail as a matter of law for the same basic reason: the failure to allege an actual interception of plaintiffs' electronic communications by defendant Rush. On this point, the statutory language is clear, under both subsections (c) and (d) of the provision, there must be an interception in order to state the claim. *See* 18 U.S.C. § 2511(c), (d) (both prohibiting disclosure or use of communications by persons knowing or having reason to know "*that the information was obtained through [an] interception*") (emphasis added).

Thus also, courts have repeatedly held that "interception is a necessary element for each type of violation." *Jurgens v. Build.com*, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017) (holding that (quoting *Bruce v. McDonald*, 2014 WL 931522, at *2 (M.D. Ala. Mar. 10, 2014)); *Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018) ("Since claims under subsection (c) and (d) are predicated on a violation of subsection (a), the Court considers all section 2511 claims together."); *compare Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) ("[o]nce the initial interception has occurred, subsequent conduct is governed by the Wiretap Act's use and disclosure provisions").

The law is also clear on this point: Rush cannot intercept communications for which Rush was the intended recipient. *See Allen*, 2018 WL 5874088, at *3 (holding that "section 2511(2)(d) makes the interception lawful when the person intercepting 'is a party to the communication or where one of the parties to the communication has given prior consent to such interception'") (quoting 18 U.S.C. § 2511(2)(d)); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d

262, 274 (3d Cir. 2016); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (all holding same).

These cases mandate dismissal of plaintiffs' section 2511(1) Wiretap Act claims here. The whole basis for their complaint is that "[a] patient who exchanges communications *with Rush* has a reasonable expectation of privacy that their personally identifiable data and the content of their communications will not be intercepted, transmitted, re-directed or disclosed *by Rush* to third parties without the patient's knowledge, consent, action or authorization." (Dkt. No. 1, ¶ 3 (emphasis added); *see also id.* at ¶ 4 (likewise alleging that Rush "discloses Plaintiffs' and Class Members' personally identifiable patient data, including their status as patients and the contents of their communications *with Rush*") (emphasis added); *id.*, ¶¶ 5, 16, 22, 24, 32, 38, 42 (same); *cf. id.*, ¶ 149 (quoting the modern Hippocractic Oath: "I will respect the privacy of my patients, for their problems are not disclosed *to me* that the world may know") (emphasis added).

Thus also, there is no interception at issue, and each of plaintiffs' section 2511(1) claims fail to state a claim as a matter of law. As the Third Circuit held in *In re Google*: "Because the defendants were the intended recipients of the transmissions at issue—i.e. GET requests that the plaintiffs' browsers sent directly to the defendants' servers—we agree that § 2511(2)(d) means the defendants have done nothing unlawful under the Wiretap Act." 806 F.3d at 142-43; *Crowley*, 166 F. Supp. 2d at 1269 (same; "Amazon acted as no more than a second party to the communication. This is not an interception as defined by the Wiretap Act"); *Marsh v. Zaazoom Solutions, LLC*, 2012 WL 952226, at *17 (N.D. Cal. Mar. 20, 2012) ("The Zaazoom Defendants did not stop, seize, or interrupt a communication in progress before arrival to its intended destination. As in *Crowley*, the Zaazoom Defendants were the intended recipients.").

In opposition, plaintiffs may attempt to argue there is a statutory exception where "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). This exception, however, does not apply to the alleged interception itself; instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement*, 806 F.3d at 145 (emphasis in original, quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)).

Each of plaintiffs' claims here are tethered to the alleged unlawful interception of their communications with Rush itself, and not any other act. As they allege: "Whenever Plaintiffs and Patient Class members interacted with Rush's web properties, including Rush's MyChart patient portal, Rush, through the source code it embedded on its web properties, contemporaneously and intentionally intercepted, and endeavored to intercept Plaintiffs' and Patient Class members' electronic communications without authorization or consent." (Dkt. No. 1, Compl. ¶ 196; *see also id.*, ¶ 216 (same for breach of implied duty); *id.*, ¶ 227 (Illinois Consumer Fraud Act); *id.*, ¶ 258 (intrusion upon seclusion).) Thus also, "[a]s the plaintiffs plead no tortious or criminal *use* of the acquired internet histories, § 2511(d) is not inapplicable on the basis of the criminal-tortious purpose exception." *In re Google Cookie Placement*, 806 F.3d at 145 (emphasis in original).

### B. Rush Is Not an "Electronic Communications Service" and Plaintiff Do Not Allege the Contents of any Portal Communication.

Plaintiffs' complaint also appears to assert a second type of claim under the Wiretap Act, for an alleged violation of section 2511(3)(a). (Dkt. No. 1, Compl. ¶¶ 189, 195.) Here, plaintiffs assert that Rush's MyChart patient portal is "electronic communication service" (*id.*, ¶ 195), and that through the portal Rush allegedly, and intentionally, "divulged" the contents of plaintiffs'

electronic communications with Rush to Facebook, Google, and Bidtellect. (*Id.*, ¶¶ 189, 200 (citing 18 U.S.C. § 2511(3)(a)). These allegations appear inconsistent with some of plaintiffs' more specific allegations regarding the portal. (*Cf. id.*, ¶¶ 29-30, 82-83 (each alleging that only Google Analytics operated within the MyChart portal).)

Either way, this claim also fails as a matter of law. *First*, as numerous courts have held, "[a] company that merely utilizes electronic communications in the conduct of its own business is generally considered a purchaser or user of the communications platform, not the provider of the service to the public." *Garner v. Amazon.com, Inc.*, --- F. Supp. 3d ----, 2022 WL 1443680, at *11 (W.D. Wash. May 6, 2022) (rejecting argument that Amazon's "Alexa" was an electronic communications service); *see also In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307-08 (E.D.N.Y. 2005) (rejecting the argument Jetblue Passenger Reservation Systems' constituted an electronic communications service; "companies that provide traditional products and services over the Internet, as opposed to Internet access itself, are not 'electronic communication service' providers within the meaning of the ECPA"); *Casillas v. Cypress Ins. Co.*, 770 F. App'x 329, 331 (9th Cir. 2019) (same where defendant's HQ Sign-Up Services "does not permit users to communicate directly with each other").

The rationale of these cases applies with particular force here, where plaintiffs allege that "Rush uses the 'MyChart' website and mobile application to allow patients to access the MyChart patient portal," which is "*a software system designed and licensed to Rush by Epic Software Systems*." (Dkt. No. 1, Compl. ¶ 25 (emphasis added); *see also id.*, ¶¶ 26-29 (same).)

*Second*, plaintiffs do not allege, or even attempt to allege, the "contents" of any of *their* alleged communications with Rush, whether within the MyChart portal or otherwise. The only factual allegations in the complaint specific to the named plaintiffs are that they are both Rush

patients and have been MyChart patient portal users "since 2017." (Dkt. No. 1, Compl. ¶¶ 8-9.) These general allegations say nothing about the specific contents of any alleged internet communication they may have had with Rush. *Compare In re Google Cookie Placement*, 806 F.3d at 137 ("The line between contents and metadata is not abstract but contextual with respect to each communication.") (quotation omitted).

As the Seventh Circuit has held, a plaintiff cannot rely on "generalized allegations alone" to skate past Rule 12(b)(6), but instead "must combine them with facts particular to his case to survive a motion to dismiss." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 855 (7th Cir. 2019) (citing *Doe v. Purdue Univ.*, 928 F.3d 657, 668 (7th Cir. 2019)).

## III. PLAINTIFFS DO NOT ALLEGE A BREACH OF THE IMPLIED DUTY OF CONFIDENTIALITY UNDER ILLINOIS LAW.

Count two of plaintiffs' complaint pleads a common law claim for an alleged "breach of the implied duty of confidentiality." (Dkt. No. 1, Compl. ¶¶ 205-218.) Plaintiffs plead this claim based on an implied contract theory of liability. (*Id.*, ¶ 208 (alleging "[t]here is a duty of confidentiality implied in every health care provider and patient relationship, akin to an implied contract"); *cf. Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), *7th Cir. appeal pending*, Case No. 20-3134 (Nov. 2, 2020) ("declin[ing] the invitation" to recognize tort claim for alleged breach of physician-patient confidentiality under Illinois law).)

Plaintiffs' complaint cites the Appellate Court's decision in *Geisenberger v. Willuhn*, 72 Ill. App.3d 435, 438 (2d Dist. 1979), to support this implied contract claim. *(Id.*, ¶ 208.) The plaintiff brought suit in *Geisenberger* after the employee of a physician furnished the plaintiff's name as a possible suspect in an armed robbery. *Id.* at 436. The plaintiff sued the physician for this alleged breach of physician-patient confidentiality under three distinct theories: (1) breach of Illinois's statutory physician-patient privilege; (2) breach of an implied contract not to divulge

confidential information acquired through the physician-patient relationship; and finally, (3) for an alleged "invasion of privacy." *Id.* at 436.

The Illinois Appellate Court affirmed the dismissal of the *Geisenberger* complaint in its entirety. *Id.* at 437-38. As relevant here, the court first held that patient status alone is not protected health information under Illinois law for purposes of the statutory physician-patient privilege: "We follow the overwhelming majority of the courts of the United States which have held that the disclosure of the name alone of the patient by a doctor or his agents does not violate the patient-doctor privilege established by section 5.1." *Id.* at 438.

This holding nullified the plaintiff's breach of implied duty claim as well. *Id.* This was so because, "for all practical purposes, the breach of a confidential relationship and the breach of contract are probably co-extensive." *Id.* "In other words, those disclosures which violate the statutory privilege also define what is actionable under a contract theory." *Id.* The court thus concluded: "The cases that have recognized the contract theory as a cause of action make it clear that the action for the disclosure of 'personal' information, E.g., *information relating to the patient's mental or physical condition or the physician's diagnosis or treatment*." *Id.* (emphasis added).

Thus, even assuming *Geisenberger* establishes a valid implied contract theory cause of action, that would not help plaintiffs here. The opinion itself demonstrates that the scope of the cause of action is limited, and would encompass only disclosures that violate the statutory physician-patient privilege. *See* 72 Ill. App.3d at 438.

And the Illinois statute, first enacted in 1959, *see Physician-Patient Privilege*, 56 N.W. U.L. Rev. 263, 263-64 (1961-62), is tied to the actual provision of physical care: "No physician or surgeon shall be permitted to disclose any information *he or she* may have acquired *in*

*attending any patient* in a professional character, necessary to *enable him or her professionally to serve the patient*." 735 ILCS § 5/8-802 (emphasis added). As the Illinois Supreme Court has held: "The purpose of the privilege is to encourage full disclosure of all medical facts by the patient in order to ensure the best diagnosis and outcome for the patient." *Palm v. Holocker*, 2018 IL 123152, ¶ 20.

Plaintiffs' complaint against Rush lies far afield from this traditional paradigm. Plaintiffs do not allege a communication between actual living beings; instead, plaintiffs base their claim on communications between "[w]eb browsers"; "software applications that allow consumers to exchange electronic communications over the Internet." (Dkt. No. 1, Compl. ¶ 43.) Rush's website is hosted not by a physician, but by a "computer server." (*Id.*, ¶ 44.) And the same "GET" (*id.*, ¶ 45) or "POST" (*id.*, ¶ 46) requests that form the basis for plaintiffs' complaint here can be made by any visitor to Rush's website, whether patient or not. This would include a high school student writing a research report about actor Michael J. Fox, https://www.rush.edu/conditions/parkinsons-disease, an individual who wants to quit smoking, https://www.rush.edu/services/smoking-cessation-services, or, as here, a law firm looking to file a complaint, https://www.rush.edu/treatments/birth-control, *id.*, ¶¶ 45-46.

Plaintiffs also point to Rush's HIPAA privacy notice to support the claim. (*Id.*, ¶¶ 168-72, 214, citing https://www.rush.edu/sites/default/files/2049-notice-privacy-11x17.pdf, attached as Exhibit A.) Rush's HIPAA privacy notice, however, expressly contemplates this same type of personal interaction: "Each time you visit a hospital, physician or other health care provider, a record of your visit is made." (*See id.*, at pg. 1.) "This record typically contains information regarding your symptoms, diagnosis, examination and test results, current and future treatment, as well as billing-related information." (*Id.*) And thus also: "This notice applies to *all records*

generated by Rush University Medical Center or Rush Oak Park Hospital, Inc., whether made or received by our organization's personnel or given to others outside the organization for business purposes." (*Id.* (emphasis added).)

For all of these reasons, the Court should refuse to recognize a novel claim under the Illinois common law that is not supported by the *Geisenberger* decision itself. *See, e.g., Liebich v. DelGiudice*, 2022 WL 874610, at *9 (N.D. Ill. Mar. 24, 2022) (refusing to recognize "a novel duty between a doctor and a *potential criminal suspect*" under Illinois law; "The Seventh Circuit has instructed to tread lightly when given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability," as a federal court "should choose the narrower and more reasonable path") (quotation omitted, emphasis in original); *cf. Worix*, 857 F. Supp. 2d at 705 (declining to adopt "a 'substantive innovation' in state law or 'to invent what would truly be a novel tort claim' on behalf of the state absent some authority to suggest that approval of the Supreme Court of Illinois is forthcoming") (quoting *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 633, 640 (7th Cir. 2007)).

## IV. THE COURT SHOULD ALSO DISMISS PLAINTIFFS' ICFA CLAIM.

Count III of plaintiffs' complaint alleges a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). (Dkt. No. 1, Compl. ¶¶ 219-240.) This count in turn also contains two distinct theories of liability. *First*, plaintiffs allege that Rush engaged in "deceptive acts and practices." (*Id.*, ¶¶ 229-30.) This deceptive acts and practices claim appears to be based on alleged misrepresentations contained in Rush's website privacy statement (*id.*, ¶¶ 157-167), and in Rush's HIPAA privacy notice (*id.*, ¶¶ 168-73).

*Second*, plaintiffs plead a claim for alleged "unfair acts or practices." (*Id.*, ¶¶ 223, 233.) This claim is grounded in Rush's alleged "practice of disclosing Plaintiffs' and Illinois Class members' personally identifiable data and re-directing their communications to third parties

without authorization." (*Id.*, ¶ 227.) "In determining whether conduct is unfair under the ICFA, courts consider whether the practice: '(1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers." *Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118, at *6 (N.D. Ill. June 9, 2020) (quotation omitted).

### A. Plaintiffs' Deceptive Practices Claim Should Be Dismissed for Failure to Allege Personal Deception.

Plaintiffs' deceptive practices claim should be dismissed for a very simple reason: the Illinois Supreme Court has held, repeatedly, that a plaintiff must allege that she has *personally* been deceived in order to state the claim, and plaintiffs make no such allegations here. *See De Bouse v. Bayer*, 235 Ill. 2d 544, 550 (2009) (collecting cases; "[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause."); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002) ("[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived.").

To the contrary, plaintiffs' complaint goes out its way to allege precisely the opposite: that neither they themselves, nor any reasonable consumer, would have ever seen Rush's alleged misstatements regarding website privacy. (Dkt. No. 1, Compl. ¶¶ 164-170.) As plaintiffs explain: "The vast majority of Internet users do not read privacy policies or website terms of use." (*Id.*, 164; *see also id.*, ¶ 165 ("Chief Justice John Roberts admits he does not read purported online agreements").) For this reason, plaintiffs further allege that it is also reasonable for them "to assume that their health care providers' privacy policies are consistent with their providers' duties of confidentiality and patient expectations of privacy." (*Id.*, ¶ 167.)

These allegations are not sufficient to state a deceptive practices claim under Illinois law. *See Bayer*, 235 Ill. 2d at 550 (holding that "[a] consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant"); *Oliveira*, 201 Ill. 2d at 155 (affirming dismissal where "plaintiff does not allege that he saw, heard or read any of defendant's ads," and thus also "cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance"); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) (same where "Plaintiff does not identify any direct statements from Defendant that contain material omissions").

**B. Rush's Website Privacy Statement Fully Disclosed the Alleged Internet Metadata Transfers at Issue.**

Plaintiffs' deceptive practices should also be dismissed for failure to adequately allege how any statement Rush made is deceptive under Rule 9(b). *Troutt v. Mondelez Global LLC*, 2022 WL 16552956, at *3 (N.D. Ill. Oct. 31, 2022) ("As this claim relates to deceptive conduct (as opposed to unfair conduct), the heightened pleading standard in [Rule 9(b)] applies.").

This is particularly so in light of the following fact: *Rush does disclose, fully, Rush's use of cookies on the website in the privacy statement, including specifically with respect to Google Analytics.* (*See* Rush System Web Privacy Statement, available at https://www.rush.edu/web-privacy-statement, attached as Exhibit B.) The disclosures are omitted from plaintiffs' complaint (*id.*, ¶¶ 158-161), but state as follows:

**Use of 'Cookies'**

A "cookie" is a small file that a website puts on a user's computer with their agreement. This website uses cookies to track how visitors use the website. Cookies also streamline a user's experience of the website during a visit.

Rush's disclosure continues, informing website users that they also "should be able to change browser settings to disable cookies":

> In most cases, a web browser will automatically accept cookies. Users should be able to change browser settings to disable cookies. Disabling cookies may make it more difficult to use some parts of the website. For more information about deleting cookies, see the web browser's help section.

And, finally, the statement discloses Rush's use of Google Analytics in particular, and further provides a link for users to opt out of Google Analytics data use:

> Like many websites, www.rush.edu uses Google Analytics to gather information about how visitors use the website. Users may opt out if they do not want their data to be used by Google Analytics. Visit Google to learn how.

(*See* Ex. B, Web Privacy Statement at pgs. 1-2.)

Plaintiffs' deceptive practices claim should thus also be dismissed for failure to allege actual deception. As the Illinois Appellate Court has held: "The bald assertion of deception is insufficient to state a claim; the deceptive manner of the omission must be stated with specificity and particularity." *Rockford Memorial Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 123 (2d Dist. 2006); *see also, e.g., White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283 (1st Dist. 2006) ("A complaint alleging a consumer fraud violation must be pled with the same particularity and specificity as that required under common law fraud.").

**C. Plaintiffs Fail to Allege "Actual Pecuniary Loss" for Both Their Deceptive and Unfair Practices Claims.**

Finally, both plaintiffs' deceptive practices and unfairness claims should be dismissed for failure to allege actual damages. *See Oliviera*, 201 Ill.2d at 149 (holding that "[u]nlike an action brought by the Attorney General under section 2, which does not require that 'any person has in fact been misled, deceived or damaged,' (815 ILCS 505/2 (West 1996)), a private cause of action under section 10(a) requires proof of 'actual damage'"); *see also, e.g., Benson v. Fannie May*

*Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (both holding same).

This actual damages requirement under the Consumer Fraud Act has a specific meaning: "actual pecuniary loss." *See Washington*, 2020 WL 3058118, at *7 ("[u]nder the ICFA, a plaintiff must plead actual pecuniary loss"); *Benson*, 944 F.3d at 647 ("must plausibly plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss"); *see also Khorloo v. John C. Heath Attorney at Law, PLLC*, 2020 WL 1530735, at *2 (N.D. Ill. Mar. 31, 2020) (same, quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)).

Plaintiffs cannot meet this requirement under either prong of their statutory claims here. Rush's "web properties" are free, whether for a Rush patient or for the public at large. There is thus also no exchange of financial renumeration that takes place to the use www.rush.edu or mychart.rush.edu from which a transactional loss could arise. The only actual loss that plaintiffs claim to have suffered anywhere in their complaint is for an alleged loss of privacy (Dkt. No. 1, Compl. ¶ 239(a)-(c)), which is not actionable under the statute. *See Khorloo*, 2020 WL 1530735, at *2 (rejecting ICFA claim for damages based on alleged loss of privacy; "It seems unlikely that the statute allows plaintiffs to recover damages for privacy violations because the ICFA is concerned with fraudulent or unfair advertising, not with individual privacy rights.").

## V. PLAINTIFFS CANNOT MEET THE FUTURE HARM ELEMENT FOR THEIR DECEPTIVE TRADE PRACTICES ACT CLAIM.

Plaintiffs' fourth claim against Rush is for an alleged violation of the Illinois Uniform Deceptive Trade Practices Act. (Dkt. No. 1, Compl. ¶¶ 241-252.) For this count, plaintiffs generally assert that Rush represented that "good or services have characteristics that they do not have," or were "of a particular standard, quality, or grade," when they were "of another," and of "[a]dvertising goods or services with intent not to sell them as advertised." (*Id.*, ¶ 243.)

Plaintiffs allege damages for this count. (*Id.*, ¶¶ 249-50.) Yet, the only permissible relief under the statute is for injunctive relief. *See* 815 ILCS 510/3 (Injunctive relief). As the Appellate Court has held: "The purpose of the DTPA is 'the enjoining of trade practices which confuse or deceive the consumer, or which unjustly injure the honest businessman and prevent him from receiving his just rewards from effective advertising and consumer satisfaction.'" *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156 (Ill. Ct. App. 1992) (quoting Ill. Ann. Stat., ch 121 ½, Prefatory Illinois Notes, at 238 (Smith-Hurd supp. 1992)).

Thus also, "[i]n order to maintain a consumer action under the IDTPA, the consumer must 'allege facts which would indicate that he is likely to be damaged in the future.'" *Kljahich v. Whirlpool Corp.*, 2015 WL 8481973, at *4 (N.D. Ill. Dec. 10, 2015) (quoting *Popp*, 613 N.E.2d at 1157)); *see also, e.g., ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) (holding that "[t]he likelihood of future harm occurring absent an injunction is an element of liability on the claim, not merely a separate element of damages"). And "[t]he problem in most consumer actions under the DTPA is the inability to allege facts indicating the likelihood of damage in the future." *Kljahich*, 2015 WL 8481973, at *4 (quoting *Popp*, 613 N.E.2d at 1157)).

These holdings apply here. For the reasons stated above, Rush has not engaged in any deception as a matter of law. But even assuming this were wrong, plaintiffs have full knowledge of what this claimed amorphous deception might be. As the court held in *Kljajich*: "Plaintiff's awareness—even of a risk that a defect exists—still arms her with the knowledge she needs to avoid any future harm from Whirlpool's allegedly deceptive practices." *Id.*; *see also Rice v. Dreyer's Grand Ice Cream, Inc.*, --- F. Supp. 3d ----, 2022 WL 3908665, at *2 (N.D. Ill. Aug. 30, 2022) ("Because Rice is aware of the presence of vegetable oil in the product, he faces no risk of

future harm from being deceived by the failure of the product's front label to mention vegetable oil, and he therefore lacks standing to seek prospective injunctive relief."); *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 929 (N.D. Ill. 2015) (dismissing claim where "Fratelli cannot allege that it will be deceived in the future, so the ILDTPA is inappropriate"; "Indeed, Fratelli has not cited any authority suggesting that a plaintiff can obtain injunctive relief under the ILDTPA when the plaintiff itself will not be deceived or confused in the future.").

## VI. PLAINTIFFS' INTRUSION UPON SECLUSION CLAIM IS BASED ON AN ALLEGED DISCLOSURE, NOT AN INTRUSION.

Plaintiffs' final claim is for an alleged invasion of privacy by intrusion upon seclusion. (Dkt. No. 1, Compl. ¶¶ 253-266.) Here, plaintiffs allege that "Rush intruded upon Plaintiffs' and Illinois Class members' seclusion by deploying source code *that caused the transmission* of Plaintiffs' and Illinois Class members' personally identifiable data and the contents of communications Plaintiffs and Illinois Class members exchanged with their health care providers to third parties including Facebook, Google, and Bidtellect." (*Id.*, ¶ 258 (emphasis added).)

As Judge Pallmeyer has already held, these allegations do not make an intrusion upon seclusion claim under Illinois law. *See Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020). There, plaintiffs alleged an intrusion upon seclusion claim against both the University of Chicago and Google "because of the University's disclosure and Google's receipt of his PHI." *Id.*

The court dismissed the claim, because "[t]he Illinois Supreme Court has explained that 'the core of this tort is the offensive prying into the private domain of another' and that '[*t*]*he basis of the tort is not publication of publicity*.'" *Id.* (quoting *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417 (1989) (emphasis added). "Examples of such 'offensive prying,'" the court continued, "are 'invading someone's home; an illegal search of someone's

shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls.'" *Id.*

Based on this reasoning, the court held that "[t]he 'intrusion' that Plaintiff alleges took place here is unlike these examples." *Id.* "In fact, a court in this district has held that such disclosures of private personal information 'do not support a claim for unauthorized intrusion.'" *Id.* (citing *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004) ("it is the intrusion itself that creates liability, not any subsequent publication or disclosure")).

This same rationale applies here. As set forth above, the basis for plaintiffs' claim is not any intrusion, but an alleged disclosure; in their most succinct allegation, plaintiffs put it this way: "Rush's conduct in *disclosing* Plaintiffs' and Illinois Class members' personally identifiable data and communications to third parties was and is highly offensive to a reasonable person." (*Id.*, ¶ 262; *see also id.*, ¶¶ 3-4, 16, 29-30, 33, 38, 258, 262 (all same).)

Like plaintiffs' claim under the federal Wiretap Act, plaintiffs' alleged intrusion upon seclusion claim against Rush is thus also out of place in this case, and should be dismissed with prejudice. *See also Dwyer v. Am. Exp. Co.*, 273 Ill. App. 3d 742, 746, 652 N.E.2d 1351, 1354 (1995) (affirming dismissal of intrusion claim based on American Express's alleged disclosure of spending information to retailers; "Plaintiffs' allegations fail to satisfy the first element, an unauthorized intrusion or prying into the plaintiffs' seclusion."); *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 978, 560 N.E.2d 900, 902 (1990) (same where the "alleged wrongful actions involve the dissemination or publication of information voluntarily provided to defendant by plaintiff, not defendant's unauthorized intrusion," and thus also "the alleged actions here do not constitute an unreasonable intrusion into the seclusion of another").

## CONCLUSION

For the reasons set forth above, the Court should dismiss plaintiffs' complaint with prejudice for failure to state a claim upon which relief can be granted.

Dated: November 23, 2022

Respectfully submitted,

By: */s/* David Carney
*Counsel for Defendant Rush University System for Health*

Bonnie Keane DelGobbo
bdelgobbo@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201

David A. Carney
dcarney@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7634

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on November 23, 2022, a true and correct copy of the foregoing Memorandum in Support of Rush University System for Health's Rule 12(B)(6) Motion to Dismiss Plaintiffs' Complaint was served on counsel of record via the Court's electronic filing system.

*/s/* David Carney
*Counsel for Defendants*