**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-05380 |
| v. | ) | The Honorable Matthew F. Kennelly, Judge |
| RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH, | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF RUSH SYSTEM FOR HEALTH'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION........................................................................................................................1**

1. *Plaintiffs are confusing two separate issues under the Wiretap Act; whether an interception occurred at all versus whether an intended recipient can intercept its own communication ..............................................................................1*

2. *The Wiretap Act's criminal or tortious conduct exception does not apply.............3*

3. *Plaintiffs have not adequately alleged that Rush is an electronic communications service or the contents of any of their alleged communications. ...............................................................................................5*

4. *The Court should not expand Illinois common law to permit a breach of implied confidentiality claim for internet claims. ...................................................6*

5. *Plaintiffs have not alleged personal deception for their Illinois Consumer Fraud Act claim. ...............................................................................................9*

6. *Plaintiffs also have not met Rule 9(b) or alleged actual damages for their Illinois Consumer Fraud Act claim.........................................................................10*

7. *Plaintiffs have not alleged future harm for their Deceptive Trade Practices Act claim. .........................................................................................................12*

8. *Plaintiffs' invasion of privacy claim is based on disclosure, not an intrusion. .....13*

**CONCLUSION ......................................................................................................................14**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aqua Dots Prods. Liab. Litig.*,
654 F.3d 748 (7th Cir.2011) ....................12

*Billings v. Atkinson*,
489 S.W.2d 858 (Tex. 1973)....................14

*In re Boeing 737 MAX Pilots Litig.*,
--- F. Supp. 3d ----, 2022 WL 16553025 (N.D. Ill. Oct. 31, 2022)....................11

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................3, 4

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979)....................4, 7

*Clayton v. Richards*,
47 S.W.3d 149 (Tx. Ct. App. (Texarkana) 2001) ....................14

*Community Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) ....................9

*De Bouse v. Bayer*,
235 Ill.2d 544 (2009) ....................9, 10

*Desnick v. Am. Broad. Cos.*,
44 F.3d 1345 (7th Cir. 1995) ....................4

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020)....................8, 14

*Doe I v. Sutter Health*,
2020 WL 1331948 (Sac. Cty. Sup. Ct. Jan. 29, 2020) ....................8

*Doe I v. Sutter Health*,
2020 WL 8410024 (Sac. Cty. Sup. Ct. Nov. 3, 2020) ....................8

*Doe v. Columbia Coll. Chi.*,
933 F.3d 849 (7th Cir. 2019) ....................6

*Dorr-Oliver Inc. v. Fluid-Quip, Inc.*,
834 F. Supp. 1008 (N.D. Ill. 1993) ....................12

*Duncavage v. Allen*,
147 Ill. App.3d 388 (1st Dist. 1986) ....................12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................1, 2

*Forth v. Walgreen Co.*,
2018 1235015 (N.D. Ill. Mar. 9, 2018)....................13

*Garner v. Amazon.com, Inc.*,
--- F. Supp. 3d ----, 2022 WL 1443680 (W.D. Wash. May 6, 2022)....................5

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015)....................2, 6

*Iowa Power & Light Co. v. Burlington Northern, Inc.*,
647 F.2d 796 (8th Cir. 1981) ....................4

*In re Jet Blue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................5

*Kaminski v. Elite Staffing, Inc.*,
23 F.4th 774 (7th Cir. 2022) ....................6

*Khorloo v. John C. Heath Atty. at Law, PLLC*,
2020 WL 1530735 (N.D. Ill. Mar. 31, 2020)....................11, 12

*Latture v. Emmerling*,
2013 WL 5225243 (Mich. Ct. App. Sept. 17, 2013) ....................14

*LeCrone v. Ohio Bell Tel. Co.*,
120 Ohio App. 129 (10th Dist. 1963) ....................14

*Lincoln v. Vigil*,
508 U.S. 182 (1993)....................4, 7

*Lovgren v. Citizens First Nat. Bank of Princeton*,
126 Ill. 2d 411 (1989) ....................14

*In re Michaels Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ....................5

*Nader v. General Motors Corp.*,
25 N.Y.2d 560 (1970) ....................14

*Oliveira v. Amoco Oil Co.*,
201 Ill.2d 134 (2002) ....................9

*Pascal Pour Elle, Ltd. v. Jim*,
75 F. Supp. 3d 782 (N.D. Ill. 2014) ....................5

*Peterson v. ConAgra Foods, Inc.*,
2014 WL 3741853 (S.D. Cal. July 29, 2014) ....................7

*Ruzicka Elec. & Sons, Inc. v. Int'l Broth. of Elect. Workers*,
427 F.3d 511 (8th Cir. 2005) ....................15

*Sabrina Roppo v. Travelers Comm. Ins. Co.*,
869 F.3d 568 (7th Cir. 2017) ....................8

*Shannon v. Boise Cascade Corp.*,
208 Ill.2d 517 (2004) ....................10

*Souder v. Pendleton Detectives, Inc.*,
88 So.2d 716 (La. Ct. App. 1956)....................14

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................6

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) ....................1, 2

*White v. Samsung Elec. Am. Inc.*,
2019 WL 8886485 (D.N.J. Aug. 21, 2019) ....................3

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 ....................7

*Worix v. MedAssets, Inc.*,
857 F. Supp. 2d 699 (N.D. Ill. 2012) ....................12

**Statutes**

735 ILCS § 5/8-802 ....................7

815 ILCS § 510/3....................13

18 U.S.C. § 2511....................4, 5

18 U.S.C. § 2701....................5

42 U.S.C. § 1320d-6 ....................3

## INTRODUCTION

Plaintiffs argue that "[t]his is not a close case." (Opp. 19.) Yet, they do not cite one Illinois case that has ever recognized their claims, and do not present a cogent theory as to how Rush ever could have violated the federal Wiretap Act by allegedly intercepting communications to which Rush was a party, much less for the purpose of committing a crime or a tort.

Rush respectfully submits the following reply brief in support of its motion to dismiss:

1. *Plaintiffs are confusing two separate issues; whether an interception occurred at all versus whether an intended recipient can intercept its own communication.*

Plaintiffs argue that "Rush cannot invoke the [Wiretap Act's] party exception" because "[t]he Seventh Circuit allows Wiretap Act claims where the intended recipient 'permitted an entity to engage in the unauthorized duplication and forwarding of unknowing users' information.'" (Opp. 4-5.) The quoted language above does not come from the Seventh Circuit, however. It comes from the Ninth Circuit, in a case against Facebook directly, for Facebook's alleged tracking activities *on third-party websites*, not its own. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (plaintiffs alleged Facebook embedded "third-party plug-ins on third-party web pages").

And the Seventh Circuit in *Szymuszkiewicz* also did not hold that the intended recipient of a communication could wiretap its own communication. (Opp. 5.) The case dealt with a separate question entirely. In *Szymuszkiewicz,* an employee with a suspended driving license from a drunk driving conviction diverted his boss's emails to his own account; Szymuszkiewicz's boss "discovered a 'rule' that directed Oulook to forward to Szymuszkiewicz all messages she received." *United States v. Szymuszkiewicz*, 622 F.3d 701, 703 (7th Cir. 2010). The argument the defendant raised before the appellate court was whether an interception of a communication had occurred at all, based on the technical timing of this email rerouting. *Id.* In that context, the

Seventh Circuit rejected the defendant's argument that "he 'did not 'intercept' anything, for (at least in football) 'interception' means catching a thing in flight, and any message would have reached its destination (Infusino's inbox) before a copy was made for him." *Id.* at 706.

This is the rationale that the Ninth Circuit subsequently incorporated into the internet context in the *In re Facebook* decision, and upon which the Third and Ninth Circuits are split. *Compare In re Facebook*, 956 F.3d at 607-08 (concluding "Facebook is not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication"), *with In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 140-41 (3d Cir. 2015) (rejecting argument that any interception could ever occur in the Internet context; "If users' browsers directly communicate with the defendants about the webpages they are visiting—as the complaint pleads with particularity—then there is no need for the defendants to acquire that information from transmissions to which they are not a party.").

Plaintiffs are thus confusing two separate issues: whether an interception occurred at all, versus whether Rush, as the intended recipient of the communication, could be held liable under federal law for intercepting Rush's *own* communication. Rush has only argued the latter point in its motion, and the statutory language on this point is unequivocal: "It shall *not* be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication *where such person is a party to the communication*," *unless* "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d); *cf. White v. Samsung Elec. Am. Inc.*, 2019 WL 8886485, at *5-6 (D.N.J. Aug. 21, 2019) (Opp. pg. 5, n. 5) (plaintiffs alleged defendants "surreptitiously embedded software" into their televisions that permitted them to intercept plaintiffs' third-party communications).

**2.** *The Wiretap Act's criminal or tortious conduct exception does not apply.*

Thus, the only way plaintiffs can maintain their section 2511(1) Wiretap Act claim against Rush directly is if the tortious or criminal conduct statutory exception applies. (Mem. in Supp. 7.) On this point, plaintiffs argue "[t]he bar is easily met in this case," "given that the third-party source code it deployed on its web properties *is designed for commercial marketing*." (Opp. 6 (emphasis added).) "This is significant," plaintiffs claim, "because it is a federal crime to 'knowingly' disclose 'individually identifiable health information' to third parties for 'commercial' reasons." (*Id.* (citing 42 U.S.C. § 1320d-6); *see also id.* at 7 (same).)

Notwithstanding their claim that the bar is "easily met," plaintiffs do not provide one example in their complaint of any health care provider that has ever been criminally charged for using analytical tools from Google and Facebook, or any other third party, on their publicly available websites. In fact, the federal government mandates that federal agencies use Google Analytics on their websites. *See* Office of Mang't and Budget, Memo. for Heads of Executive Depts. and Agencies, Policies for Federal Agency Public Websites and Digital Services at pg. 4 (Nov. 8, 2016); *see also* https://analytics.usa.gov/health-human-services/ (website where data compiled from the unified federal government Google Analytics account tracks user activity on the Department of Health and Human Services website).

And the lone federal court to have addressed this question held that HIPAA did not apply to the type of alleged disclosures at issue in this case, in a decision that was affirmed by the Ninth Circuit: "Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes— information that unequivocally provides a window into an individual's personal medical history." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018), *affirming Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) (same).

Plaintiffs thus rely heavily on a recent tracking technologies guidance issued by the Department of Health and Human Services. (Opp. 1, 7 (citing *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Dep't of Health & Human Services, Office of Civil Rigthts (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html).) Under plain Supreme Court precedent, however, these types of regulatory guidance apply only prospectively; they are "[g]eneral statements of policy," that are "'issued by an agency to advise the public *prospectively* of the manner in which the agency proposes to exercise a discretionary power.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n. 31 (1979) (quoting Att. Gen.'s Manual on the Admin. Proc. Act 30 n.43 (1947)); *see also Lincoln v. Vigil*, 508 U.S. 182, 196 (1993); *Iowa Power & Light Co. v. Burlington Northern, Inc.*, 647 F.2d 796, 811 (8th Cir. 1981) (both holding same).

Thus, the guidance does not show how Rush could have been violating HIPAA or any other federal law *before* the Department of Health and Human Services had ever provided this notice to covered entities, much less purposefully and intentionally violating plaintiffs' alleged rights, as required by the statute. 18 U.S.C. § 2511(2)(d); *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("to survive a motion to dismiss, a plaintiff *must plead* sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording"); *Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1353-54 (7th Cir. 1995) (affirming dismissal where plaintiffs did not allege "that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming the plaintiffs by charging tampering with the glare machine").

**3.** *Plaintiffs have not adequately alleged that Rush is an electronic communications service or the contents of any of their alleged communications.*

Plaintiffs argue they "adequately allege that Defendant Rush is an 'electronic communications service' because it gives patients the ability to communicate with their doctors directly online through an access-restricted messaging service." (Opp. 8.) Plaintiffs cite paragraphs 21-24 of their complaint to support this statement. (*Id.*) Plaintiffs ignore their allegations contained immediately thereafter, in paragraphs 25-29, which make it plain that Rush is merely a consumer—a "licensee," as plaintiffs allege (Compl. ¶ 29)—of a patient portal product offered by third-party company Epic Software Systems (*id.*, ¶ 25), which in turn is "a privately owned health care software company that provides services to 250 million patients, including two thirds of the US population" (*id.*, ¶¶ 26-27).

Thus also, Rush, a non-profit healthcare provider (Compl. ¶ 10), falls safely and squarely into the type of entity that is *not* a provider of electronic communications services to the public under the statute. (Mem. in Supp. 8; citing *Garner v. Amazon.com, Inc.*, --- F. Supp. 3d ----, 2022 WL 1443680, at *11 (W.D. Wash. May 6, 2022); *In re Jet Blue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307-08 (E.D.N.Y. 2005).)

Plaintiffs also cite *Pascal Pour Elle, Ltd. v. Jim*, 75 F. Supp. 3d 782, 788-89 (N.D. Ill. 2014). (Opp. 8-9.) That case, however, was decided under § 2701 of the Stored Communications Act. *Id.* at 788. As used in section 2701, the term "electronic communication service" is not modified by the qualifier "*to the public*." 18 U.S.C. § 2701(a)(1), (2). *See* 75 F. Supp. 3d at 788 (distinguishing *In re Michaels Pin Pad Litig.*, 830 F. Supp. 2d 518, 523-24 (N.D. Ill. 2011)). And here, as in *In re Michaels*, the relevant provision in the Wiretap Act contains the "to the public" qualifier. 18 U.S.C. § 2511(3)(a) ("person or entity providing an electronic communication service *to the public* shall not intentionally divulge the contents of any communication").

Plaintiffs also have not alleged the "contents" of any of their alleged communications that Rush allegedly divulged. (Mem. in Supp. 8-9.) For their response here, plaintiffs set out at length the generic allegations they have made regarding claimed internet searches on Rush's website generally. (Opp. 8.) None of these generic allegations, however, disclose the actual contents of any one of *plaintiffs'* alleged Internet searches, including in particular the URL content that was allegedly transferred. *See In re Google Cookie Placement*, 806 F.3d at 137 ("[t]he line between contents and metadata is not abstract but contextual *with respect to each communication*"); *U.S. v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008) (same).

These types of specific allegations, not "exemplar screen shots" (Opp. 9), are required by Seventh Circuit precedent. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 855 (7th Cir. 2019) (holding that a plaintiff cannot rely on "generalized allegations alone," but "must combine them with facts particular to his case to survive a motion to dismiss"); *see also Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (same).

**4.** *The Court should not expand Illinois common law to permit a breach of implied confidentiality claim for internet claims.*

For their breach of implied confidentiality claim, plaintiffs argue that "Rush's odd if not absurd argument that the communications at issue are not protected because they were made through computers has no basis in law." (Opp. 11.) This argument comes straight from the *Geisenberger* decision itself, which forms the underlying legal foundation for their implied confidentiality claim. (*See* Dkt. No. 1, Compl. ¶ 208.)

Specifically, *Geisenberger* defined the scope of any implied duty as being tethered to the statutory privilege: "*those disclosures which violate the statutory privilege also define what is actionable under a contract theory*." 72 Ill. App.3d at 438. And the statutory physician-patient privilege under Illinois law is in turn tied to the actual provision of physical care in "*attending*"

any patient: "No physician or surgeon shall be permitted to disclose any information *he or she* may have acquired *in attending any patient* in a professional character, necessary to *enable him or her professionally to serve the patient*." 735 ILCS § 5/8-802 (emphasis added).

Plaintiffs argue Rush's notice of privacy practices independently created an expectation of privacy sufficiently to support the implied confidentiality claim. (Opp. 10.) Yet, Rush's notice of privacy practices reflects this same basic limitation: "*Each time you visit a hospital*, physician or other health care provider, a *record* of your visit is made." (Mem. in Supp., Ex. A at 1.) And on its face the notice only applies "to *all records* generated by Rush University Medical Center or Rush Oak Park Hospital, Inc., whether made or received by our organization's personnel or given to others outside the organization for business purposes." (*Id.* (emphasis added).)

Plaintiffs argue the OCR's recent tracking technologies guidance also supports the claim. (Opp. 11-12.) As set forth above, this guidance applies only prospectively. *See Chrysler Corp.*, 441 U.S. at 302; *Lincoln*, 508 U.S. at 196. Thus, it provides no basis for recognizing a novel cause of action under Illinois state law directed at conduct that occurred *prior* to its issuance. *See also e.g., Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013) (dismissing state law claim based on "Defendant's 'No MSG' labels" predating regulatory clarification; "Defendant's arguments are underpinned by the Court's conclusion that the FDA's November 2012 statement clarified an ambiguous regulation, and by the Ninth Circuit's holding that retroactive application of a regulatory clarification contravenes due process."); *Peterson v. ConAgra Foods, Inc.*, 2014 WL 3741853, at *4 (S.D. Cal. July 29, 2014) (same; "To hold that ConAgra should have been complying with a regulation that was not explicitly clarified until November 19, 2012 would violate due process because ConAgra was not on fair notice.").

Plaintiffs also cite a series of state law cases analyzing similar claims and recognizing some cause of action for some claim under some state law. (Opp., Exs. 1-6.) These cases are not the panacea that plaintiffs paint them to be, particularly in prior decisions that were not attached to plaintiffs' opposition. *See, e.g.*, Ex. 1, *Doe v. Virginia Mason Med. Center*, King Cty., No. 19-2-26674-1 SEA, Ord. at pg. 2 (noting that "Plaintiffs are correct that Washington courts have consistently recognized greater privacy rights than other states or federal courts"); Ex. 2, *Doe v. MedStar Health, Inc.*, Baltimore City Cir. Ct., No. 24-C-20-000591, Mem. Op. at pg. 5 (there "is no cause of action in Maryland offering relief for a breach of confidence claims involving a patient-provider relationship"); *compare Doe I v. Sutter Health*, 2020 WL 1331948, at *5-6 (Sac. Cty. Sup. Ct. Jan. 29, 2020) (dismissing California Confidential Medical Information Act and breach of fiduciary duty claims; "The Complaint does not allege that the disclosed browser history reveals Plaintiffs' *personal* medical history, diagnosis, or care.") (emphasis added); *Doe I v. Sutter Health*, 2020 WL 8410024, at *3-4, 8-9 (Sac. Cty. Sup. Ct. Nov. 3, 2020) (same).

In any event, none of these cases was decided by an Illinois trial court, analyzed Illinois law, or attempted to predict how the Illinois Supreme Court would decide any particular legal question. The court in *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561 (N.D. Ill. 2020), *7th Cir. appeal pending*, Case No. 20-3134 (Nov. 2, 2020), refused to recognize an independent tort claim for breach of physician-patient confidentiality under Illinois common law in rationale that applies equally to plaintiffs' breach of implied confidentiality claim here: "the Seventh Circuit has consistently held that it is not our role to break new ground in state law." *Id.* at 594-95 (quoting *Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 598 (7th Cir. 2017)).

**5.** *Plaintiffs have not alleged personal deception for their Illinois Consumer Fraud Act claim.*

Plaintiffs argue they have adequately alleged personal deception under *De Bouse v. Bayer*, 235 Ill.2d 544, 554 (2009), based on the following logic: they were "[1] Rush patients at the time the statements were made;" [2] all Rush patients were "encouraged by Rush to use and communicate through the MyPatient portal;" and plaintiffs "[3] did in fact sign up for an use the MyChart portal for years pursuant to incomplete and misleading disclosures." (Opp. 13.)

Plaintiffs' deceptive practices claim is not limited to the portal, however, but covers the entirety of Rush's alleged "web properties." (Compl. ¶ 227; *see also id.*, ¶ 231 (same).) This argument also does not explain how either plaintiff was actually deceived by any statement that Rush made, as required by Illinois precedent. *See De Bouse*, 235 Ill. at 544 ("The basic principle in each of the foregoing cases is that to maintain an action under the Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant."); *Comm. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 822 (7th Cir. 2018) (affirming dismissal; "the plaintiff cannot rest on vague accusations about inadequate disclosures" under *De Bouse*).

Plaintiffs argue the cases that Rush cites are "inapposite," because "the plaintiffs lacked a direct connection to the defendant or their deceptive statements" (Opp. 13). This is not correct. *See Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 140 (2002) ("Plaintiff maintained in his complaint that he suffered actual damage as a result of the allegedly deceptive advertisements when he purchased defendant's premium gasoline."). It is also irrelevant to Rush's argument. The issue here is not whether the plaintiff purchased the product directly or indirectly from the defendant; Illinois Supreme Court precedent is plain that a claim for "indirect deception" is allowed. *See Bayer*, 235 Ill.2d at 556 (answering certified question in the affirmative as to whether or not "a theory of indirect deception is recognized under the Consumer Fraud Act").

The issue is that, as a basic element of *any* ICFA deceptive practices act claim, the plaintiff must, in some manner, allege that they were *personally* deceived by the alleged fraud, even if only indirectly. *See also, e.g., Shannon v. Boise Cascade Corp.*, 208 Ill.2d 517, 525 (2004) (affirming dismissal where "Plaintiffs' complaint in this case does not allege that any deceptive advertising by Boise Cascade was received by any plaintiff, or that it was received by any builder, architect, engineer, or other like person somehow connected with a plaintiff."); *De Bouse*, 235 Ill.2d at 560 (same; "In this case, De Bouse similarly fails to allege that her particular doctor was actually deceived by any of Bayer's advertisements or statements.").

Finally, plaintiffs argue that *De Bouse* is "entirely inapplicable" to this case, because there the alleged deception occurred "in advertising separate from the product," whereas here "Rush's deceit occurred on the web properties themselves" (Opp. 13). This is a distinction without a difference, as plaintiffs also allege that neither they, nor any other reasonable consumer, would have ever been exposed to Rush's alleged deceptive statements on the website. (Compl. ¶ 164 ("The vast majority of Internet users do not read privacy policies or website terms of use."); *id.*, ¶ 168 (same with respect to Rush's HIPAA notice of privacy practices).)

**6.** *Plaintiffs also have not met Rule 9(b) or alleged actual damages for their Illinois Consumer Fraud Act claim.*

In their complaint, plaintiffs allege that Rush did not disclose the use of Google Analytics on its web properties: "Rush took advantage of MyChart's analytics compatibility by knowingly *and secretly* deploying Google source code throughout its web properties," including "inside the MyChart patient portal." (Compl. ¶ 30; *see also id.*, ¶ 173 (same).) As shown in Rush's opening brief, however, Rush does disclose, explicitly, Rush's use of Google Analytics on its website: "Like many websites, www.rush.edu uses Google Analytics to gather information about how visitors use the website." (Mem. in Supp., Ex. B at pg. 2/7 (Use of 'Cookies').)

Faced with this disclosure, plaintiffs thus pivot in opposition, claiming this revelation "actually makes the omissions as to Facebook and Bidtellect even worse," given the implication that "Google is the only third party receiving Plaintiffs' personal data, when, in fact, it is not." (Opp. 14.) Yet, the disclosure regarding Google Analytics is at the bottom of a section of the web privacy statement discussing Rush's website of use of website analytics broadly, which includes the following: "This website uses cookies to track how visitors use the website." (*Id.*, at pg. 1/7.)

Plaintiffs also argue that "[c]ookies are just one of seven distinct categories of Plaintiffs' PII that are alleged to have been collected and sent to third parties without consent" (Opp. 14). Plaintiffs do not argue, however, nor does their complaint allege, any facts to explain how it is deceptive for Rush to allegedly fail to disclose that routine internet metadata such as IP addresses, browser fingerprints, and URLs may be disclosed to third parties through the routine operation of the Internet when an individual visits Rush's website, much less to meet the requirements of Rule 9(b). *See, e.g., In re Boeing 737 MAX Pilots Litig.*, --- F. Supp. 3d ----, 2022 WL 16553025, at *25-27 (N.D. Ill. Oct. 31, 2022) (dismissing fraud claim under Rule 9(b) where, among other things, plaintiffs "fail to plead the 'how' of the alleged fraud").

Finally, plaintiffs devote one paragraph of their entire brief to arguing how they can meet the ICFA's actual damages requirement. (Opp. 15-16.) On this point, plaintiffs claim the court's decision in *Khorloo* is distinguishable because the case involved only alleged "de minimis" privacy violations. (*Id.* at 15 (discussing *Khorloo v. John C. Heath Atty. at Law, PLLC*, 2020 WL 1530735, at *2 (N.D. Ill. Mar. 31, 2020)). *Khorloo*'s rationale is broader than that, however: "It seems unlikely that the statute allows plaintiffs to recover damages for privacy violations for privacy violations because the ICFA is concerned with fraudulent or unfair advertising, not with individual privacy rights." *Id.*

Plaintiffs also argue they plead the same type of "benefit of the bargain" damages "endorsed in *Khorloo*." (Opp. 16.) But as here *Khorloo* also did not involve a product, and thus also did not "endorse" any benefit of the bargain theory. *Id.* at *2. *Compare In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir.2011). And there is an important distinction between this case and *Aqua Dots*: Rush's alleged "web properties" are free; plaintiffs paid nothing for them and nothing for their use. Thus also, plaintiffs could not have suffered any "actual pecuniary loss" through their alleged use. *See Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 706 (N.D. Ill. 2012) (dismissing ICFA claim for failure to plead actual damages where plaintiffs' allegations were "conclusory," and "there is no indication anywhere in the complaint of what 'money or property' he might have lost as a result of MedAssets' alleged actions").

**7.** *Plaintiffs have not alleged future harm for their Deceptive Trade Practices Act claim.*

Citing to *Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1014 (N.D. Ill. 1993), and *Duncavage v. Allen*, 147 Ill. App.3d 388, 102 (1st Dist. 1986), plaintiffs argue that "the DTPA allows Plaintiffs to recover damages." (Opp. 16.) All *Dorr-Oliver* and *Duncavage* hold, however, is that a plaintiff can use an alleged violation of the Deceptive Trade Practices Act to recover damages under the ICFA; they do not recognize any independent, free-standing claim for damages under the Deceptive Trade Practices Act. *See Dorr-Oliver*, 834 F. Supp. at 1014; *Duncavage*, 147 Ill. App.3d at 102; *compare* 815 ILCS § 510/3 (Injunctive Relief).

Plaintiffs alternatively cite *Forth v. Walgreen Co.*, 2018 1235015, at *14-15 (N.D. Ill. Mar. 9, 2018), to argue they have adequately alleged future harm under the Deceptive Trade Practices Act. (Opp. 17.) That case, however, addressed a separate question—Article III standing under federal law. *See id.* at *14. In that context, where certain plaintiffs who were "ineligible for the PSC program due to their Medicare coverage," had "no choice to be injured in the future," the court allowed for "standing to pursue injunctive relief" generally. 2018 1235015, at *14-15.

Notably, the court denied standing for injunctive relief for certain plaintiffs that was actually tied to an alleged deception, here holding: "But now that the Consumer Plaintiffs are aware of Walgreens' pricing practices, those that are eligible for participation in the PSC program can enroll and pay directly, rather than use insurance, thus accessing lower prices." *Id.*

**8.** *Plaintiffs' invasion of privacy claim is based on disclosure, not an intrusion.*

Plaintiffs argue they have adequately pled their invasion of privacy by intrusion upon seclusion claim because "[*b*]*oth* the initial collection and the subsequent dissemination are alleged to have been conducted without plaintiffs' knowledge or consent." (Opp. 17.) Plaintiffs do not cite to their actual invasion of privacy count to support this statement, because it does not. As plaintiffs there allege: "Rush's conduct *in disclosing* Plaintiffs' and Illinois Class members' personally identifiable data and communications to third parties was and is highly offensive to a reasonable person." (Compl. ¶ 262; *see also id.* at ¶ 255 (alleging plaintiffs have a "reasonable expectation that Rush *would not disclose* personally identifiable patient data and communications to third parties for marketing purposes" without consent).)

A privacy claim predicated upon disclosure is a claim for public disclosure of private facts, not intrusion upon seclusion. *See Dinerstein*, 484 F. Supp. 3d at 594 ("The Illinois Supreme Court has explained that 'the core of this tort is the offensive prying into the private domain of another' and that '[*t*]*he basis of the tort is not publication of publicity*.'") (quoting *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417 (1989)).

Plaintiffs argue *Dinerstein* is factually distinct because there "the action was against Google, not the hospital" (Opp. 18.) As the opinion makes plain, however, the invasion of privacy claim was pleaded against both defendants: "Next, plaintiff asserts a common law claim for intrusion upon seclusion against both Defendants *because of the University's disclosure* and Google's receipt of his PHI." 484 F. Supp. 3d at 594 (emphasis added).

Finally, plaintiffs cite a series of intrusion upon seclusion cases they contend support their claim here. (Opp. 18-19.) All of them were based on actual intrusions made by third-parties, however, not voluntary communications with the defendant that were allegedly disclosed. *LeCrone v. Ohio Bell Tel. Co.*, 120 Ohio App. 129, 134-35 (10th Dist. 1963) (husband spied on wife's telephone calls); *Hoskins v. Howard*, 132 Id. 311, 312 (1998) (deputy sheriff used to police scanner to spy on neighbors); *Clayton v. Richards*, 47 S.W.3d 149, 153 (Tx. Ct. App. (Texarkana) 2001) (wife installed video camera in bedroom to spy on husband): *Nader v. General Motors Corp.*, 25 N.Y.2d 560, 564-65 (1970) (GM spied on Ralph Nader's private phone calls); *Souder v. Pendleton Detectives, Inc.*, 88 So.2d 716, 718 (La. Ct. App. 1956) (private detective "trespassed upon the property of petitioners, and peeked into their windows"); *Latture v. Emmerling*, 2013 WL 5225243, at *1 (Mich. Ct. App. Sept. 17, 2013) (teacher and two parents spied on school superintendent's emails); *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973) (defendant spied on plaintiff's telephone calls); *Ruzicka Elec. & Sons, Inc. v. Int'l Broth. of Elect. Workers*, 427 F.3d 511, 524-25 (8th Cir. 2005) (private investigators "trespassed on Ruzicka's private property to conduct surveillance of him and his family").

## CONCLUSION

Plaintiffs' opposition shows that plaintiffs cannot decide what their theory of relief for this case is. On the one hand, plaintiffs want to claim that Rush intruded upon their seclusion by intercepting the parties' own alleged communications. On the other, plaintiffs argue that the real problem with Rush's alleged misconduct is not the intrusion, but the subsequent disclosure that the third-party source code on Rush's website allegedly causes.

This internal tension demonstrates the more basic problem with plaintiffs' claims: under either of their shifting theories, plaintiffs' complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) and should be dismissed.

Dated: January 6, 2023

Respectfully submitted,

By: /s/ David Carney
*Counsel for Defendants*

David A. Carney
dcarney@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7634

Bonnie Keane DelGobbo
bdelgobbo@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
Firm No. 46365

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 6, 2023, a true and correct copy of the foregoing Reply Brief in Support of Rush System for Health's Rule 12(B)(6) Motion to Dismiss was served on counsel of record via the Court's electronic filing system.

*/s/* David Carney
*Counsel for Defendants*