**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-05380 |
| v. | ) | The Honorable Matthew F. Kennelly, Judge |
| RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF RUSH SYSTEM FOR HEALTH'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**


**INTRODUCTION** ........ **1**

**LAW AND ARGUMENT** ........ **1**

**I. STANDARD OF REVIEW.** ........ **1**

**II. PLAINTIFFS' FOUR PREVIOUSLY DISMISSED CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.** ........ **1**

A. THE WIRETAP ACT'S CRIMINAL OR TORTIOUS CONDUCT EXCEPTION DOES NOT APPLY. ........ 2

B. THE COURT SHOULD AGAIN REFUSE TO RECOGNIZE PLAINTIFFS' IMPLIED CONTRACT DUTY OF CONFIDENTIALITY CLAIM UNDER ILLINOIS LAW. ........ 5

C. PLAINTIFFS STILL HAVE NOT ALLEGED PERSONAL DECEPTION OR ACTUAL DAMAGES FOR THEIR ILLINOIS CONSUMER FRAUD ACT CLAIM. ........ 8

D. PLAINTIFFS' CLAIMED INVASION OF PRIVACY INJURY RESULTS FROM A DISCLOSURE, NOT AN INTRUSION. ........ 9

**III. PLAINTIFFS' SIX NEW CLAIMS FAIL AS A MATTER OF LAW UNDER RULE 12(B)(6).** ........ **10**

A. PLAINTIFFS DO NOT ALLEGE THE PUBLICITY REQUIREMENT FOR A PUBLIC DISCLOSURE OF PRIVATE FACTS CLAIM. ........ 11

B. PLAINTIFFS DO NOT ALLEGE TRESPASS TO CHATTELS BASED ON ALLEGED TRANSFERS OF THEIR INTANGIBLE PERSONAL DATA. ........ 12

C. PLAINTIFFS DO NOT ALLEGE BREACH OF CONTRACT BASED ON THE MYCHART PATIENT PORTAL TERMS AND CONDITIONS ........ 13

D. BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING IS NOT A STANDALONE CLAIM UNDER ILLINOIS LAW ........ 15

E. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED DETRIMENT FOR THEIR UNJUST ENRICHMENT CLAIM ........ 15

F. RUSH IS NOT GOOGLE AND FACEBOOK'S "PRINCIPAL" UNDER THE ILLINOIS EAVESDROPPING ACT. ........ 17

**IV. PLAINTIFFS' ILLINOIS DECEPTIVE TRADE PRACTICES ACT CLAIM SHOULD ALSO NOW BE DISMISSED.** ........ **19**

**CONCLUSION** ........ **20**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acara v. Banks*,
470 F.3d 569 (5th Cir. 2006) ....................6

*Aliano v. Louisville Distilling Co., LLC*,
115 F. Supp. 3d 921 (N.D. Ill. 2015) ....................19

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) ....................10

*ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*,
282 F. Supp. 3d 1043 (N.D. Ill. 2017) ....................19

*Beverly v. Reinert*,
239 Ill. App. 3d 91 (1992) ....................11

*Bryant v. All Ways Auto Transport, LLC*,
2022 WL 17338295 (N.D. Ill. Nov. 30, 2022) ....................14

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................2, 3

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979)....................6

*Colbert v. Nat'l Credit Sys., Inc.*,
2023 WL 1448104 (N.D. Ill. Feb. 1, 2023) ....................11

*Community Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) ....................8

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ....................1

*Danqing Huo v. Synchrony Bank*,
2020 WL 2128729 (N.D. Ill. May 5, 2020) ....................14

*De Bouse v. Bayer*,
235 Ill. 2d 544 (2009) ....................7

*Del Vecchio v. Amazon.com, Inc.*,
2012 WL 1997697 (W.D. Wash. June 1, 2012)....................12

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
9 F.3d 1060 (7th Cir. 1993) ....................................................................................14

*Desnick v. American Broadcasting Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995) ...................................................................................3, 4

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ........................................................................7, 9

*Geisberger v. Willuhn*,
72 Ill. App. 3d 435 (1979) .....................................................................................5, 13

*Gociman v. Loyola University of Chicago*,
41 F.4th 873 (7th Cir. 2022) ....................................................................................15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015).....................................................................................2, 17

*Green Plains Trade Group, LLC v. Archer Daniels Midland Co.*,
--- F.Supp.3d ----, 2022 WL 18107272 (C.D. Ill. Dec. 30, 2022) ............................................7

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) .......................................................................................8

*Hernandez v. Ill. Inst. of Tech.*,
63 F.4th 661 (7th Cir. 2023) ....................................................................................15

*Hickman v. Wells Fargo Bank N.A.*,
683 F. Supp. 2d 779 (N.D. Ill. 2010) .........................................................................14

*Hunstein v. Pref. Coll. & Mang't Servs., Inc.*,
248 F.4th 1236 (11th Cir. 2022) (en banc) .................................................................11

*Kljahich v. Whirlpool Corp.*,
2015 WL 8481973 (N.D. Ill. Dec. 10, 2015)...............................................................19

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) .......................................................................................9

*Liebich v. DelGiudice*,
2022 WL 874610 (N.D. Ill. Mar. 24, 2022)...................................................................7

*Lincoln v. Vigil*,
508 U.S. 182 (1993)......................................................................................................6

*Lovgren v. Citizens First Nat. Bank of Princeton*,
126 Ill. 2d 411 (1989) ..........................................................................................2, 9, 18

*Macovski v. Groupon, Inc.*,
533 F. Supp. 3d 460 (N.D. Ill. 2021) ....................................................................1

*Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*,
2018 IL App (1st) 163351....................................................................................16

*In re Marriage of D. Dahm-Schell*,
2021 IL 126802...................................................................................................18

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) ................................................................................3

*Miller .v Motorala*,
202 Ill. App. 3d 976 (1st Dist. 1990) ..................................................................10

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016).......................................................16

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ...........................................................................16

*Ogbolumani v. Young*,
2015 IL App (1st) 141930-U ...............................................................................12

*Oliveira v. Amoco Oil Co.*,
201 Ill. 2d 134 (2002) ...........................................................................................7

*Packingham v. North Carolina*,
137 S. Ct. 1730 (2017).........................................................................................19

*Peddinghaus v. Peddinghaus*,
295 Ill. App.3d 943 (1st Dist. 1998) ...................................................................15

*Popp v. Cash Station, Inc.*,
613 N.E.2d 1150 (Ill. Ct. App. 1992) .................................................................19

*State ex rel. Pusateri v. Peoples Gas Light & Coke Co.*,
2014 IL 116844...................................................................................................18

*Remijas v. Nieman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ................................................................................9

*Reno v. American Civil Liberties Union*,
521 U.S. 844 (1997).............................................................................................19

*Roehrborn v. Lambert*,
277 Ill. App. 3d 181 (1995) .................................................................................10

*Saletech, LLC v. E. Balt, Inc.*,
2014 IL App (1st) 132639....................15

*Schoemann v. Excellus Health Plan, Inc.*,
447 F. Supp. 2d 1000 (D. Minn. 2006)....................14

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................4, 5, 17

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999)....................3

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993)....................10

*In re Trans Union Corp. Privacy Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004)....................9

*Worix v. MedAssets, Inc.*,
857 F. Supp. 2d 699 (N.D. Ill. 2012)....................7

**Statutes Other Authorities**

720 Ill. Stat. § 5/14-1....................17

720 Ill. Stat. § 5/14-2....................17

BLACK'S LAW DICTIONARY 1542 (8th Ed. 2004)....................12

## INTRODUCTION

Plaintiffs' amended complaint ballooned to 479 paragraphs and 120 pages from an already healthy 266 paragraphs and 64 pages. Five claims have now become eleven. The basic story has remained precisely the same. More importantly, this unnecessarily scattershot pleading cannot mask the fundamental problem: plaintiffs still cannot state a claim for relief under either federal or Illinois law. This now includes with respect to their Deceptive Trade Practices Act claim. As plaintiffs acknowledge, and disagree or not, Rush has made changes to Rush's website in response to the Office of Civil Rights' guidance. (Dkt. 46, Am. Compl. ¶ 4, n.1.) Accordingly, plaintiffs' amended complaint should now be dismissed with prejudice.

## LAW AND ARGUMENT

### I. STANDARD OF REVIEW.

To survive a motion to dismiss, "a complaint 'must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and [the] grounds on which it rests and (2) contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Macovski v. Groupon, Inc.*, 533 F. Supp. 3d 460, 473 (N.D. Ill. 2021) (quoting *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quotation omitted).

### II. PLAINTIFFS' FOUR PREVIOUSLY DISMISSED CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs' amended complaint re-asserts each of the four counts that the Court had previously dismissed with only one minor change: plaintiff deleted their § 2702 claim under the federal Wiretap Act. (Dkt. 46, Am. Compl. ¶¶ 283-337, 350-392.) These four claims should again be dismissed.

### A. The Wiretap Act's Criminal or Tortious Conduct Exception Does Not Apply.

Plaintiffs initially argued their federal Wiretap Act claim was sufficiently plead based on the fact that an interception had allegedly occurred alone. (Dkt. 25, Opp. Br. at 4-5.) The Court correctly rejected this argument: "Rush is therefore a party to the communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception occurred." (Dkt. 31, Ord. at 9.)

Plaintiffs have now focused their allegations on the correct inquiry: whether the tortious or criminal conduct exception to the one-party consent rule could apply. (Dkt. 46, Am. Compl. ¶¶ 299-315.) Plaintiffs, however, still have the analysis wrong. The basis for their claim is that, because Rush allegedly violated some law, the tortious or criminal conduct exception applies. (*Id.*, ¶¶ 301-315.) This is not how the exception works.

"The Wiretap Act as initially proposed did not prohibit interception where one the parties to the communication consent, regardless of the parties' intent." *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010). "Senator Philip A. Hart objected to the broad language, observing that it permitted 'surreptitious monitoring of a conversation by a party to the conversation, *even though the monitoring may be for insidious purposes* such as blackmail, stealing business secrets, or other criminal or tortious acts in violation of Federal or State laws.'" *Id.* (quoting S. Rep. No. 90-1097, 1968 U.S.C.C.A.N. 2112, at 2182 (1968) (emphasis added)).

Two principals have emerged from this legislative background. *First,* the exception only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself. *Caro*, 618 F.3d at 100; *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 & n.81 (3d Cir. 2015) (same; "all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits").

*Second*, it is not enough that this secondary conduct might have violated some other law; the recording itself must have been made for the specific purpose of harming the plaintiff in particular. The Seventh Circuit has the leading opinion on this point. *See Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353-54 (7th Cir. 1995). The *Desnick* court affirmed the dismissal of a federal Wiretap claim under the exception based on the following analysis: "Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely." *Id.* "But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming the plaintiffs by charging tampering with the glare machine." *Id.* "The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers." *Id.*

As the Ninth Circuit has likewise held: "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original); *see also Caro*, 618 F.3d at 100 ("it is 'apparent from the context in which [Title XVIII] was enacted that the sort of conduct contemplated by the statute was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed'") (quoting *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971)).

These holdings apply here. As shown through plaintiffs' own allegations, Rush's purpose in allegedly intercepting the parties' communications was not to commit any crime or tort, but to speak better to them. As the Office of Civil Rights acknowledges in its recent guidance: "After information is collected through tracking technologies from websites or mobile apps, it is then analyzed by owners of the website or mobile app ('website owner' or 'mobile app owner'), or

third parties, to create insights about users' online activities. ***Such insights could be used in beneficial ways to help improve care or the patient experience***." HHS.gov, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, at 2/12 (Dec. 1, 2022) (emphasis added).

Plaintiffs' other allegations make this same point. They allege that "[b]y many measures, Google is the world's largest data company" (Dkt. 46, Am. Compl. ¶ 79); that "Google Analytics has massive reach," and is "far and away the web's most dominant analytics platform" (*id.*, ¶ 80 (quotation omitted)); that "Facebook operates the world's largest social media company" (*id.*, ¶ 90), and that the Facebook pixel in particular "can tally [Facebook user] actions in the Facebook Ads Manager and Analytics dashboard, so you use the data to analyze your website's conversion flows and optimize your ad campaigns" (*id.*, ¶ 94). Finally, plaintiffs allege that "Bidtellect is a third-party company that operates a 'programmatic platform' that collects and analyzes data to serve ads" (*id.*, ¶ 110), whose tracking "connects to 'bttrack.com' to measure and record user engagement and user inputs on the Rush web property sites" (*id.*, ¶ 112).

Thus, under plaintiffs' own allegations, the purpose for all of these analytical tools is to help Rush determine how well Rush is speaking to the public and patients alike through Rush's public websites. Moreover, the Ninth Circuit and the Northern District of California had both previously held that HIPAA does *not* apply to the type of internet metadata alleged in the complaint. (Dkt. 31, Ord. at 10 (citing *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018), *affirming Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017).)

Under these facts, the criminal or tortious conduct exception to the one-party consent rule does not apply. As the Seventh Circuit held in *Desnick*: "Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely."

44 F.3d at 1354. For the reasons explained below, that is not the case here. Either way, however, plaintiffs cannot state their federal Wiretap Act claim under any potential theory, and the claim should be dismissed with prejudice.

### B. The Court Should Again Refuse to Recognize Plaintiffs' Implied Contract Duty of Confidentiality Claim under Illinois Law.

The legal basis for plaintiffs' Count II implied duty of confidentiality claim remains the same as before. Plaintiffs allege that "[t]here is a duty of confidentiality implied in every health care provider and patient relationship, akin to an implied contract, such that health care services providers may not disclose confidential information acquired through the health care patient-provider relationship. *See, e.g.*, *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979)." (Dkt. 46, Am. Compl. ¶ 321.)

Part of plaintiffs' claim now appears to be limited to the patient portal. (*Id.*, ¶ 325.) Part of the claim does not, however, as plaintiffs continue to allege that "Rush breached the implied duty of confidentiality to Plaintiffs and Class members by intentionally deploying source at its web *properties* that caused the transmission of personally identifiable patient data and communications to third parties including *Facebook*, Google, and *Bidtellect*." (*Id.*, ¶ 336 (emphasis added).)

Either way, plaintiffs still fail to state a claim upon which relief can be granted: plaintiffs still have not alleged any particular health or treatment information disclosure specific as to them that Rush allegedly made to any third-party, whether within the portal or not. As the Court previously held: "only the disclosure of 'information relating to the patient's mental or physical condition or the physician's diagnosis or treatment'—which is the type of disclosure that would violate the statutory physician-patient privilege—would be actionable under Kurowski's theory." (Dkt. 31, at 13 (citing *Geisberger*, 72 Ill. App. 3d at 438).)

The real basis for plaintiffs' claim now appears to be that Rush violated HIPAA, and this *ipso facto* must mean a claim under Illinois law, because "HIPAA preempts any state law that is less protective of patient privacy." (Dkt. 46, Am. Compl. ¶ 328.) This allegation, and plaintiffs' extensive new allegations regarding the history of the HIPAA privacy rule generally (*id.*, ¶¶ 148-191), appear to be directed at the Court's holding that the recent Office of Civil Rights guidance operates only prospectively. (Dkt. 31, Ord. at 10, 14.)

The Court's holding, however, remains correct as a pure matter of administrative law. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n. 31 (1979) ("General statements of policy are 'statements issued by an agency to advise the public *prospectively* of the manner in which the agency proposes to exercise a discretionary power.'") (emphasis added, quoting Att. Gen.'s Manual on the Admin. Proc. Act 30 n.43 (1947)); *see also Lincoln v. Vigil*, 508 U.S. 182, 196 (1993) (same).

What plaintiffs are really alleging is that the guidance reflects what the HIPAA privacy rules always made plain. If this was correct, however, plaintiffs would not have omitted the following statements from a new Office of Civil Rights bulletin that is alleged in their amended complaint: "**The HIPAA Rules generally *do not* protect the privacy or security of your health information when it accessed through or stored on your personal cell phones or tablets.**" *See Protecting the Privacy and Security of Your Health Information When Using Your Personal Cell Phone or Tablet*, U.S. Dep't of Health & Human Services, last updated June 29, 2022 (emphasis in original). In this guidance, the OCR further stated: "For example, ***the HIPAA rules do not protect the privacy of your internet search history, information you voluntarily share online***, or your geographic location information." *Id.* (emphasis added).

Moreover, plaintiffs still do not connect the dots between their HIPAA allegations and their Illinois state law claims. Congress made the policy decision not to allow for a private right of action under HIPAA. *E.g., Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("Congress did not intend for private enforcement of HIPAA.").

The Illinois state courts have not recognized a common law cause of action in tort based on alleged breach of physician-patient confidentiality, whether grounded in HIPAA or otherwise. *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), *7th Cir. appeal pending*, Case No. 20-3134 (Nov. 2, 2020).

And the cause of action that plaintiffs are trying to get the Court to accept in the Internet context is based on a 1979 appellate court decision that is tied to an implied contract theory that is in turn tied to a statutory physician-patient privilege that was enacted by the Illinois legislature in 1959. *See* Physician-Patient Privilege, 56 N.W. U.L. Rev. 263, 263-64 (1961-62). Plaintiffs are asking the Court to recognize this novel claim, yet at the same time still refuse to allege one specific piece of internet metadata that was allegedly disclosed to any third-party specific as to them. (Dkt. 31, Ord. at 10.)

Under these circumstances, the Court should again dismiss the claim. *See Green Plains Trade Group, LLC v. Archer Daniels Midland Co.*, --- F.Supp.3d ----, 2022 WL 18107272, at *6 (C.D. Ill. Dec. 30, 2022) ("[f]ederal courts are loathe to fiddle around in state law, as innovative state law claims should be brought in state court"); *Liebich v. DelGiudice*, 2022 WL 874610, at *9 (N.D. Ill. Mar. 24, 2022); *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 705 (N.D. Ill. 2012) (likewise refusing to make substantive innovations in state law).

### C. Plaintiffs Still Have Not Alleged Personal Deception or Actual Damages for their Illinois Consumer Fraud Act Claim.

Illinois law is clear: "[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause." *De Bouse v. Bayer*, 235 Ill. 2d 544, 550 (2009); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002) (same).

Plaintiffs' amended complaint contains even more extensive allegations regarding Rush's alleged misstatements than previously were present—including a three-page chart containing an alleged "list of 37 Rush misstatements, misrepresentations, or omissions in its various policies." (*Compare* Dkt. 1, Compl. ¶¶ 157-173, *with* Dkt. 46, Am. Compl. ¶¶ 202-237.)

What plaintiffs have failed to allege, however, is the one simple fact that is required by Illinois law to state their Consumer Fraud Act deceptive practices claim, and that is known only to them: how they, personally, were deceived by any of these alleged misstatements. *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 822 (7th Cir. 2018) (affirming dismissal of ICFA deceptive practices claim; holding "the plaintiff cannot rest on vague accusations about inadequate disclosures" under *De Bouse*).

The same basic analysis also applies for plaintiffs' actual damages allegations under the Consumer Fraud Act. Here again, plaintiffs' prior problem was not a lack of factual allegations; plaintiffs' initial complaint also contained extensive allegations regarding how each and every putative class member had theoretically been harmed. (Dkt. 1, Compl. ¶¶ 134-42 (alleging the "***The Personally Identifiable Data and Communications Rush Uses and Discloses Without Patients' Knowledge, Consent, Authorization, or Further Action Has Value***") (emphasis in original); *see also id.*, ¶¶ 5, 203, 217, 239, 250, 264 (each claiming the same damages).)

On this point as well, what was missing from plaintiffs' complaint were the factual allegations that mattered: an explanation for how plaintiffs themselves had personally suffered an "actual, pecuniary loss" because of Rush's alleged misconduct, particularly when all of Rush's web properties are free. (Dkt. 31, Ord. at 16-17.)

There is no explanation for this result in this factual context, under any potential theory. *Cf., e.g., Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017) (denying Article III standing based on a claimed "deprivation of the economic value of Plaintiff's personal information"; holding the type of interest asserted in the "present case is not enough to establish standing, as otherwise the federal courts would be flooded with cases based not on proof of harm but on an implausible and at worst trivial risk of harm"); *Remijas v. Nieman Marcus Grp., LLC*, 794 F.3d 688, 694-95 (7th Cir. 2015) (refusing to allow standing based on benefit of the bargain theory; distinguishing prior cases because "many of those cases involve products liability claims against defective or dangerous products"); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) (same; "As we noted in *Remijas*, such arguments have been adopted by courts only where the product itself was defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect.").

### D. Plaintiffs' Claimed Invasion of Privacy Injury Results from a Disclosure, Not an Intrusion.

As the Court previously held, Illinois law recognizes an important distinction between spying and publicizing. (*See* Dkt. 31, Ord. at 19-20 (analyzing *Dinerstein*, 484 F. Supp. 3d at 594; *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417 (1989); *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004), and holding: "The Court adopts the same view here.").)

Notwithstanding this holding, plaintiffs re-asserted their same intrusion upon seclusion claim, based on their allegation that Rush allegedly "caused cookies associated with Facebook and Google to be deposited on Plaintiffs' and Class members communications devices as first-party cookies used for tracking purposes." (Dkt. 46, Am. Compl. ¶ 375.) As before, however, plaintiffs continue to allege the same basic overarching injury that allegedly flows from this action: the *disclosure* of their alleged personal health information to third parties.

As plaintiffs allege in their intrusion upon seclusion count itself: "Plaintiffs' and Class members' personally identifiable data and communications are the type of sensitive, personal information that one normally expects *will be protected from disclosure* to unauthorized parties by the very entity charged with safeguarding it." (*Id.*, ¶ 387 (emphasis added).)

Plaintiffs voluntarily communicated with Rush through Rush's websites. The harm that plaintiffs allege is not that Rush allegedly recorded this "communication," but the disclosure that Rush's third-party source code allegedly caused their web browser to make to Facebook, Google, and Bidtellect. If anything, this is a claim for alleged public disclosure of private facts under Illinois law, an issue addressed below, not intrusion upon seclusion.

Plaintiffs' intrusion upon seclusion claim should thus also be dismissed with prejudice. *See also Angelo v. Moriarty*, 2016 WL 640525, at *4 (N.D. Ill. Feb. 18, 2016) (holding that "a plaintiff fails to state a claim for invaded seclusion if the harm flows from the publication rather than the intrusion") (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993)).

## III. PLAINTIFFS' SIX NEW CLAIMS FAIL AS A MATTER OF LAW UNDER RULE 12(B)(6).

Plaintiffs' amended complaint also asserts six new counts under Illinois law. (Dkt. 46, ¶¶ 393-479.) Each of these claims should be dismissed for the reasons set forth in this section.

### A. Plaintiffs Do Not Allege the Publicity Requirement for a Public Disclosure of Private Facts Claim.

The fundamental element of a claim for invasion of privacy by public disclosure of private facts claim under Illinois law is "publicity," *i.e.*, that plaintiffs' private information has in fact been made public, or at the very least that the plaintiff "has a special relationship with the 'public' to whom the information is disclosed." *Miller .v Motorala*, 202 Ill. App. 3d 976, 981 (1st Dist. 1990).

Generally speaking, "'[p]ublicity' in this invasion of privacy tort means communicating the matter to the public at large or to so many persons that the matter must be regarded as one of general knowledge." *Roehrborn v. Lambert*, 277 Ill. App. 3d 181, 184 (1995) (quoting Restatement (Second) of Torts, § 652D, comment a, at 384. (1977)); *see also Beverly v. Reinert*, 239 Ill. App. 3d 91, 99 (1992) (same).

The basis for plaintiffs' complaint here is that Rush allegedly disclosed their information to three third-parties, Facebook, Google, and Bidtellect, not to the public at large, or to any third parties with whom they had a special relationship. Notably, even in their count, plaintiffs do not attempt to plead facts to meet this requirement, instead basing the claim on the mere fact of publication alone, as if this were a defamation claim. (Dkt. 46, Am. Compl. ¶ 399.) *But see Roehrborn*, 277 Ill. App. 3d at 184 (analyzing the distinctions between the two claims).

This is not sufficient to state a claim for invasion of privacy by public disclosure of private facts under Illinois law. *See also Hunstein v. Pref. Coll. & Mang't Servs., Inc.*, 248 F.4th 1236, 1245 (11th Cir. 2022) (en banc) (analyzing tort; holding: "the harm at the core of the tort is based on the fact that embarassing information exists, but that the public knows about it. So without publicity, there can be no tort."); *Colbert v. Nat'l Credit Sys., Inc.*, 2023 WL 1448104, at *4 (N.D. Ill. Feb. 1, 2023) (same).

### B. Plaintiffs Do Not Allege Trespass to Chattels Based on Alleged Transfers of their Intangible Personal Data.

Count VII of plaintiffs' amended complaint asserts a claim for trespass to chattels. (Dkt. 46, Am. Compl. ¶¶ 408-426.) The basis for this claim is that source code on Rush's websites allegedly deposits certain Facebook and Google cookies onto their web browsers when they search Rush's websites, including when they log into Rush's patient portal. (*Id.*, ¶¶ 410, 413-420.) As plaintiffs describe the claim: "Rush's setting of Facebook and Google cookies results in the persistent and unavoidable interception of Plaintiffs' and Class members' communications, which deprives Plaintiffs and Class members of the full value of using their computing devices for those communications." (*Id.*, ¶ 423.)

Plaintiffs run into a basic problem in asserting this claim: "there is no recognized cause of action in Illinois for a trespass to chattel claim based on trespass to an intangible such as digital information contained on a USB drive." *Ogbolumani v. Young*, 2015 IL App (1st) 141930-U, ¶ 33. "Digital information such as plaintiff's data files on the USB drive is not tangible personal property and therefore is not chattel." *Id.*; *compare* Dkt. 46, Am. Compl. ¶ 238 (defining property as "the right of any person to possess, use, enjoy, or dispose of a thing, *including intangible things like data and communications*") (emphasis added).

Moreover, plaintiffs do not allege any physical disruption in the actual performance of their physical computers. To the contrary, the whole point of their claim is that Rush's source code is an alleged "modern day web bug" that allegedly operates in complete and utter secrecy. (Dkt. 46, Am. Compl. ¶ 421.)

For this reason as well, plaintiffs' trespass to chattels claim should be dismissed. *See, e.g.*, BLACK'S LAW DICTIONARY 1542 (8th Ed. 2004) (defining trespass to chattels as "[t]he act of committing, without lawful justification, any act of *direct physical interference* with a chattel

possessed by another. The act must amount to a *direct forcible injury*.") (emphasis added); *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *8 (W.D. Wash. June 1, 2012) (dismissing trespass to chattels claim based on internet cookies; "Plaintiffs have failed to plead any facts that would permit the Court to infer that they sustained any plausible harm to a materially valuable interest in the condition, quality, or value of their computers").

### C. Plaintiffs Do Not Allege Breach of Contract Based on the MyChart Patient Portal Terms and Conditions.

Count VIII of plaintiffs' amended complaint alleges a new claim for breach of contract, based on Rush's MyChart patient portal terms and conditions. (Dkt. 46, Am. Compl. ¶¶ 428-30.) The theory of this claim is that Rush allegedly breached the terms and conditions in two ways: (1) by sharing "patient portal login information with Facebook"; and (2) by continuing to "share login, logout, and information about patient communications inside the patient portal with Google." (*Id.*, ¶¶ 432, 433.)

The terms and conditions are expressly governed by Illinois law, however. (Ex. A, MyChart Terms and Conditions at pg. 6/6 ("This Agreement shall be governed by the laws of the State of Illinois.").) As this Court previously held, under Illinois patient status is not confidential. (Dkt. 31, Ord. at 14 (citing *Geisberger*, 72 Ill. App. 3d at 438, 390 N.E.2d at 947).) Nor do plaintiffs point to any other provision of the terms and conditions that would protect this non-confidential information.

Plaintiffs also do not make any specific allegation of any particular piece of "confidential health information" that is allegedly disclosed within the portal. To the contrary, also as before, their claim is based on the alleged transfer of internet metadata that is not confidential health information on its face: "Patient IP addresses," "Unique, persistent patient cookie identifiers,"

"Device identifiers," "Account numbers," "URLs," "Other unique identifying numbers, characteristics, or codes," and "Browser-fingerprints." (Dkt. 46, Am. Compl. ¶ 35.)

More basically, the MyChart Terms and Conditions contain limitation of liability and hold harmless provisions that operate to bar plaintiffs' claim, even assuming the claim had otherwise been adequately pled. The limitation of language provides: "In no circumstances will Rush, Rush Copley and their affiliates be liable to you or any other person for direct, indirect, special, incidental or consequential damages of any type, even if informed of the possibility of such damages." (*Id.* at 5/6.)

The hold harmless language in turn states: "By downloading or viewing the information on MyChart, you agree to hold Rush, Rush Copley and their affiliates harmless and indemnify it against any damages or claims asserted against Rush, Rush Copley and their affiliates arising out of, or in any way connected with, your utilization of MyChart or the information, material or content contained therein." *Id.*

Plaintiffs cannot accept the benefits of the MyChart patient portal terms and conditions, while at the same time ignoring the provisions in the agreement that do not favor them. As the District of Minnesota held in enforcing a forum-selection clause in an ERISA plan against the named plaintiffs: "In bringing this suit, the Schoermanns claim rights under the Plan against Excellus. They must take the bad with the good." *Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000, 1007 (D. Minn. 2006); *see also, e.g.*, *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (7th Cir. 1993) (holding party was estopped from avoiding arbitration clause in agreement where "Noraudit knowingly accepted the benefits of the agreement through its continuing use of the name 'Deloitte'").

### D. Breach of the Duty of Good Faith and Fair Dealing Is Not a Standalone Claim under Illinois Law.

Count IX of plaintiffs' amended complaint asserts a standalone claim against Rush for alleged breach of duty of good faith and fair dealing. (Dkt. 46, Am. Compl. ¶¶ 441-457.) This is not a standalone claim under Illinois law, however, but instead merely a way in which a contract might be breached. *See, e.g., Danqing Huo v. Synchrony Bank*, 2020 WL 2128729, at *3 (N.D. Ill. May 5, 2020) ("Because breach of the duty of good faith and fair dealing is not an independent cause of action but is merely a basis for a breach of contract action, the Court grants Synchrony's Motion to Dismiss Count III.").

The claim should therefore be dismissed. *See also Bryant v. All Ways Auto Transport, LLC*, 2022 WL 17338295, at *6 (N.D. Ill. Nov. 30, 2022) (same; "Bryant may not allege breach of the implied covenant of good faith and fair dealing as a separate count in his complaint."); *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) (same).

### E. Plaintiffs Have Not Adequately Alleged Detriment for their Unjust Enrichment Claim.

Count X of plaintiffs' amended complaint asserts a claim for unjust enrichment. (Dkt. 46, Am. Compl. ¶ 458-461.) Plaintiffs purport to plead the claim "in the alternative to Counts XIII and IX." (*Id.*, pg. 115.) At the same time, however, plaintiffs "reallege and incorporate by reference each allegation in the preceding and succeeding paragraphs" into the Count, which includes these breach of contract allegations. (*Id.*, ¶ 458.) The factual gravamen for the claim is consistent with plaintiffs' other claims: plaintiffs allege their "individually identifiable health information conferred an economic benefit on Rush," and that "Rush has been unjustly enriched at the expense of Plaintiffs and Class members." (*Id.*, ¶¶ 460-61.)

Plaintiffs label their unjust enrichment count here as being based in a contract implied-in-law. (Dkt. 46, Am. Compl. at pg. 115 ("**QUASI-CONTRACT**") (emphasis in original).) *Cf.*

*Peddinghaus v. Peddinghaus*, 295 Ill. App.3d 943, 948 (1st Dist. 1998) (holding that "[u]nder Illinois law, unjust enrichment may be predicated on either quasi-contract or tort"); *Saletech, LLC v. E. Balt, Inc.*, 2014 IL App (1st) 132639, ¶ 36 (unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law").

This claim fails for two basic reasons. *First*, under Seventh Circuit precedent, plaintiffs have not adequately alleged the claim in the alternative to their breach of contract claim. *See Gociman v. Loyola University of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022) ("a party may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count"); *cf. Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 672 (7th Cir. 2023) (allowing pleading in the alternative where plaintiffs further alleged "*and to the extent it is determined a contract does not exist or otherwise apply*") (emphasis in original); *compare* Dkt. 46, ¶ 429 ("The 'Terms and Conditions' is a binding contract on Rush.").)

*Second*, and to the more substantive point, plaintiffs have not adequately alleged any detriment to support the claim. *Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 2018 IL App (1st) 163351, ¶ 17 (to "state a cause of action for a breach of contract implied in law, a plaintiff must allege specific facts in support of the conclusion that it conferred a benefit upon the defendant which the defendant has unjustly retained in violation of fundamental principles of equity and good conscience").

Instead, plaintiffs have alleged only that their personal information allegedly has value on certain markets, including alleged "black markets." (Dkt. 46, Am. Compl. ¶¶ 329-330.) Plaintiffs do not allege, however, any facts to show how this is an alleged detriment to *them*. As one court questioned in rejecting this same alleged theory of injury: "[H]ow is that a value to the plaintiff?

How can you say that the value – something that's worth something to somebody else is somehow something that I can take as a value for me?" *See* Ex. B, *In re Dominion Dental Servs. USA, Inc.*, E.D.Va. No. 1:19-CV-01050, at pg. 18 (Jan. 17, 2020) (Brinkema, J.).

The Southern District of New York made the same point in rejecting an analogous unjust enrichment claim: "While we recognize that browsing information may possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this alleged harm remains too conjectural." *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *6, 13 (S.D.N.Y. Aug. 17, 2016), *aff'd* 684 F. App'x 32, 36 (2d Cir. 2017) ("plaintiffs do not allege that PulsePoint's data collection practices actually deprived them of any opportunity to sell their own personalized information").

**F. Rush Is Not Google and Facebook's "Principal" as Defined under the Illinois Eavesdropping Act.**

Finally, plaintiffs assert a new wiretap-based claim under the Illinois Eavesdropping Act. (Dkt. 46, Am. Compl. ¶¶ 462-479.) Here again, with respect to electronic communications, Illinois is a one-party consent state. 720 Ill. Stat. § 5/14-2 (a "person commits eavesdropping when he or she knowingly and intentionally . . . (3) [i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication *to which he or she is not a party*") (emphasis added). Moreover, unlike under federal law, the statute does not appear to provide for a tortious or criminal conduct exception to this one-party consent rule.

Plaintiffs have thus adopted an entirely new theory of relief for this claim. Specifically, plaintiffs claim that Facebook, Google, and Bidtellect allegedly intercepted plaintiffs' and Rush's communications, not the other way around. (Dkt. 46, Am. Compl. ¶ 473.) And they allegedly did so at Rush's direction; plaintiffs further allege that Rush "acted as Facebook, Google, and Bidtellect's 'principal' under the [Illinois Eavesdropping Act]." (*Id.*, ¶ 476.)

This theory is inconsistent with the entirety of plaintiffs' allegations throughout this case, which alleged that Rush surreptitiously intercepted the parties' *own* communications, not that Rush directed some other third-party to do so. (Dkt. 46, Am. Compl. ¶¶ 36, 292, 297, 299.)

The theory is also insufficient to state the statutory count. The Eavesdropping Act defines the term "principal" to mean a "person" who does one of three things: (1) "Knowingly *employs* another who illegally uses an eavesdropping device *in the course of such employment*"; (2) "Knowingly derives any benefit or information from the illegal use of an eavesdropping device *by another*"; or (3) "*Directs another* to use an eavesdropping device illegally on his behalf." 720 Ill. Stat. 5/14-1(c) (emphasis added).

As this definition is applied here, Rush is not a principal for two basic reasons. *First*, with respect to part (1) of the statutory definition, Google, Facebook, and Bidtellect are not Rush employees. *Second*, and with respect to parts (2) and (3) of the statutory definition, plaintiffs allege that Rush itself played the source code on Rush's own web properties, not Facebook, Google, or Bidtellect. (Dkt. 46, Am. Compl. ¶¶ 32, 40, 56-60, 292, 297.) Nor did Rush direct Facebook, Google, or Bidtellect to take this action; rather, plaintiffs allege that Rush's source code allegedly "commanded" plaintiffs' web browser to take this action. (*Id.*, ¶ 40.)

For these reasons, under the plain text of the statute, the Illinois Eavesdropping Act does not apply. *See In re Marriage of D. Dahm-Schell*, 2021 IL 126802, ¶ 35 ("When construing a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. The plain language of the statute is the best indicator of the legislative intent."); *see also State ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 8 (same).

## IV. PLAINTIFFS' ILLINOIS DECEPTIVE TRADE PRACTICES ACT CLAIM SHOULD ALSO NOW BE DISMISSED.

Finally, the Court should now dismiss plaintiffs' Illinois Deceptive Trade Practices Act claim as well. As plaintiffs acknowledge in a footnote to their amended complaint: "It appears that the source code for Rush's web properties was changed sometime in or around March 2023." (Dkt. 46, Am. Compl. ¶ 4 n.1.) Further, that "Google transmissions from within MyChart seem to have ceased, and Facebook transmissions have ceased altogether from both MyChart and www.rush.edu." (*Id.*)

As set forth above, while the merits of the OCR guidance are subject to debate, Rush is doing its best to comply with the guidance in a manner that effectively balances Rush's basic First Amendment right to speak. *Compare Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) ("While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular.") (quoting *Reno v. American Civil Liberties Union*, 521 U.S. 844, 868 (1997)).

In the same footnote, plaintiffs imply that these changes should not matter because Rush continues to use Bidtellect on www.rush.edu, Rush's public internet site. (Dkt. 46, Am. Compl. ¶ 4 n.1.) Plaintiffs do not allege, however, that Bidtellect has any users or members. (*Cf. id.*, ¶ 110 (claiming only that "Bidtellect is a third-party company that operates a 'programmatic platform' that collects and analyzes data").)

Thus also, plaintiffs' allegations of claimed injury based on the alleged disclosure of their "personally identifiable patient data" do not apply in this situation, much less are plaintiffs injured as the result of any claimed deception. *Kljahich v. Whirlpool Corp.*, 2015 WL 8481973, at *4 (N.D. Ill. Dec. 10, 2015) ("[i]n order to maintain a consumer action under the IDTPA, the

consumer must 'allege facts which would indicate that he is likely to be damaged in the future.'") (quoting *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156 (Ill. Ct. App. 1992)); *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) (same; holding "[t]he likelihood of future harm occurring absent an injunction is an element of liability on the claim, not merely a separate element of damages").

**CONCLUSION**

This is a simple alleged breach of physician-patient confidentiality case that plaintiffs are attempting to contort into something much more because they cannot state a simple breach of physician-patient confidentiality claim under Illinois law.

The Court should dismiss plaintiffs' amended complaint with prejudice.

Dated: April 28, 2023

Respectfully submitted,

By: */s/* David Carney
*Counsel for Defendants*

Bonnie Keane DelGobbo
bdelgobbo@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
Firm No. 46365

David A. Carney
dcarney@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7634

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 28, 2023, a true and correct copy of the foregoing Memorandum in Support of Rush System for Health's Rule 12(B)(6) Motion to Dismiss Plaintiffs' Amended Complaint was served on counsel of record via the Court's electronic filing system.

*/s/* David Carney
*Counsel for Defendants*