**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-05380 |
| v. | ) | The Honorable Matthew F. Kennelly, Judge |
| RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH, | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF RUSH SYSTEM FOR HEALTH'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

**Contents**

A. *The tortious or criminal conduct exception to the Wiretap Act does not apply.* .............1

B. *The Court should again dismiss plaintiffs' Geisberger claim*. .......................................3

C. *Plaintiffs do not allege personal deception or actual, pecuniary loss.* ...........................6

D. *Plaintiffs do not allege an actionable invasion of privacy claim under Illinois law*. .....8

E. *Plaintiffs have not stated a trespass to chattels claim under Sotelo*. ..............................9

F. *Plaintiffs have not stated a contract claim for the MyChart terms & conditions.* ........10

G. *Plaintiffs have not adequately alleged unjust enrichment on form or substance.* ........12

H. *The Illinois Eavesdropping Act does not apply to plaintiffs' allegations.* ....................13

I. *Plaintiffs can no longer state a claim for future harm under the DTPA.* .....................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Village of Winthrop Harbor*,
1995 WL 51553 (N.D. Ill. Feb. 4, 1995) ....................13

*Acara v. Banks*,
470 F.3d 569 (5th Cir. 2006) ....................5

*ATC Health. Servs., Inc. v. RCM Techs., Inc.*,
282 F. Supp. 3d 1043 (N.D. Ill. 2017) ....................15

*Baron v. Sprint Corp.*,
2019 WL 5456796 (D. Md. Oct. 24, 2019) ....................12

*Bissessur v. Ind. Univ. Bd. of Trustees*,
581 F.3d 599 (7th Cir. 2009) ....................11

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................2

*Burns v. Masterbrand Cabinets, Inc.*,
369 Ill. App. 3d 1006 (4th Dist. 2007)....................9

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................1

*Carpenter v. Phillips*,
419 F. App'x 658 (7th Cir. 2011) ....................5

*Carpenter v. United States*,
484 U.S. 19 (1987)....................7

*Cebula v. General Elec. Co.*,
614 F. Supp. 260 (N.D. Ill. 1985) ....................13

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979)....................5

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018) ....................3

*De Bouse v. Bayer*,
235 Ill.2d 544 (2009) ....................6

*Del Vecchio v. Amazon.com, Inc.*,
2012 WL 1997697 (W.D. Wash. June 1, 2012)....10

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995)....1, 2

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020)....6, 8

*Doe v. Regents of Univ. of California*,
2023 WL 3316766 (N.D. Cal. May 8, 2023)....4

*In re Facebook Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....9

*Flannery v. Recording Indus. Ass'n of Am.*,
354 F.3d 632 (7th Cir. 2004)....15

*Geisberger v. Willuhn*,
72 Ill. App. 3d 435, 390 N.E.2d 945 (1979)....4, 11

*Gociman v. Loyola Univ. of Chicago*,
41 F.4th 873 (7th Cir. 2022)....12

*In re Google, Inc. Cookie Placement*,
806 F.3d 125 (3d Cir. 2015)....7

*Hamberger v. Eastman*,
206 A.2d 239 (N.H. 1964)....9

*Hawkins v. Capital Fitness, Inc.*,
2015 IL App (1st) 133716....11

*Hernandez v. Ill. Inst. of Tech.*,
63 F.4th 661 (7th Cir. 2023)....12

*Illinois Cent. R. Co. v. Comm'rs of Highways of Town of Mattoon*,
161 Ill. 247 (1896)....7

*Labor Ready, Inc. v. Williams Staffing, LLC*,
149 F. Supp. 2d 398 (N.D. Ill. 2001)....7

*Larsen v. Vic Tanny Intern.*,
130 Ill. App. 3d 574 (5th Dist. 1984)....11

*Laslie v. Cicero*,
2021 WL 1853250 (N.D. Ill. May 10, 2021)....15

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) ....................................................................................8

*Lincoln v. Vigil*,
508 U.S. 182 (1993)..................................................................................................5

*Little Co. of Mary Hosp. & Health Care Ctrs. v. Shalala*,
165 F.3d 1162 (7th Cir. 1999) ..................................................................................5

*Manhattan Gen. Equip. Co. v. Comm'r of Int. Rev.*,
297 U.S. 129 (1936)..................................................................................................5

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020)......................................................................7, 8

*Med. Lab'y Mang't Consults. v. Am. Broad. Cos., Inc.*,
1997 WL 405908 (D. Ariz. Mar. 27, 1997) ..............................................................2

*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 (N.D. Cal. Dec. 22, 2022).........................................................3

*Morris Morris v. Ameritech Illinois*,
337 Ill. App. 3d 40 (1st Dist. 2003) .......................................................................13

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2006)...........................................................7

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021) ....................................................................................5

*Peterson v. ConAgra Foods, Inc.*,
2014 WL 3741853 (S.D. Cal. July 29, 2014) ...........................................................6

*Phillips v. Washington Legal Foundation*,
524 U.S. 156 (1998)................................................................................................12

*Planned Parenthood v. Center for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) ......................................................................2

*Pope v. Shalala*,
998 F.2d 473 (7th Cir. 1993) ....................................................................................5

*Remijas v. Neiman Marcus Grp., LLC*,
2014 WL 4627893 (N.D. Ill. Sept. 16, 2014) ...........................................................8

*Rigney v. City of Chicago*,
102 Ill. 64 (1881) .......................................................................................................7

*Saathoff v. Davis*,
2015 WL 13307406 (N.D. Ill. June 29, 2015) ............ 13

*Schoemann v. Excellus Health Plan, Inc.*,
447 F. Supp. 2d 1000 (D. Minn. 2006) ............ 12

*Scott & Fetzer Co. v. Montgomery Ward & Co.*,
112 Ill. 2d 378 (1986) ............ 11

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ............ 2, 3

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ............ 2

*Sotelo v. DirectRevenue, LLC*,
384 F. Supp. 2d 1219 (N.D. Ill. 2005) ............ 9, 10

*Stewart v. Parkview Hosp.*,
940 F.3d 1013 (7th Cir. 2019) ............ 5

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) ............ 1, 2

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ............ 8

**Statutes, Rules & Other Authorities**

42 U.S.C. § 1320 ............ 1

720 Ill. Stat. 5/14-1 ............ 14

720 Ill. Stat. 5/14-2 ............ 13

42 C.F.R. § 412.105 ............ 5

BLACK'S LAW DICTIONARY 566 (8th Ed. 2004) ............ 14

RESTATEMENT (SECOND) OF TORTS § 911 (1979) ............ 13

## INTRODUCTION

The problem that remains for plaintiffs is the same as with their initial complaint: they still do not have one federal or Illinois law case that supports their pleaded claims.

Rush respectfully submits the following reply brief in support of its motion to dismiss:

**A. *The tortious or criminal conduct exception to the Wiretap Act does not apply.***

Plaintiffs argue their Wiretap Act claim is adequately pled because "the Court already found Plaintiffs adequately alleged a claim for injunctive relief under the Illinois Deceptive Trade Practices Act." (Dkt. 51, Opp. Br. 4; *see also id.* at 4-7 (arguing exception applies because plaintiffs alleged Rush committed trespass to chattels, violated "Illinois computer crime laws," "42 U.S.C. § 1320d-6(a)(3)," and the "torts of invasion of privacy and publication of private facts").

This argument miscomprehends the nature of the tortious or criminal conduct exception. Whether or not Rush's conduct might have violated some other law does not determine the analysis. The analysis focuses on the intended purpose of Rush's alleged interception—was it undertaken for the purpose of harming the named plaintiff in particular, that is independent from the act of recording itself. The case law makes this clear. *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010); *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353-54 (7th Cir. 1995).

As the Second Circuit synopsized in *Caro*: "If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation." 618 F.3d at 100. "But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act." *Id.*

Plaintiffs dismiss Rush's argument under *Desnick* as raising factual issues, inappropriate for resolution on a motion to dismiss. (Dtk. 51, Opp. Br. 8-9.) The same straightforward analysis applies here, however. As in *Desnick*, plaintiffs have pleaded themselves out of court by making

allegations that show that the tortious or criminal conduct exception could not apply as a matter of law. (Dkt. 50, Mem. in Supp. 3-5.) Indeed, this is a much weaker case on the pleadings than *Desnick*, where plaintiffs adequately alleged that the interceptions, regardless of their intended purpose, were later used to defame them. 44 F.3d at 1353-54. Here, plaintiffs do not identify one actual harm they allegedly suffered resulting from the claimed interceptions or their alleged use.

Plaintiffs cite a series of district court cases from the Ninth Circuit applying the exception. (*See* Dkt. 51, Opp. Br. 3, 5 (citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)); *id.* at 5 (citing *Med. Lab'y Mang't Consults. v. Am. Broad. Cos., Inc.*, 1997 WL 405908, at *2 (D. Ariz. Mar. 27, 1997)); *id.* at 7 (citing *Planned Parenthood v. Center for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016)).

*Medical Laboratory* appears to misread *Desnick*; the court failed to recognize the plaintiff's defamation claim survived the motion to dismiss. *See* 1997 WL 405908, at *3 ("the *Desnick* court dismissed plaintiffs' federal wiretapping claim because the plaintiffs had failed to allege applicable causes of action under the state law torts of trespass and intentional defamation"). *Brown* in turn relied on *Planned Parenthood*, *see* 525 F. Supp. 3d at 1067, which has now been rejected by the Ninth Circuit on ultimate appeal, *see* 51 F.4th 1125, 1136 (9th Cir. 2022) ("Planned Parenthood's argument is circular: according to Planned Parenthood, the civil RICO conspiracy is furthered by the proceedings, and the recordings themselves further the ongoing civil RICO conspiracy. Such reasoning is not permitted by § 2511(2)(d).") (citing *Sussman*, 186 F.3d at 1202)).

Plaintiffs claim that "Rush's reliance on *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) (unreported) is entirely irrelevant here." (Dkt. 51, Opp. Br. 7.) *Smith*, however, stands as the ultimate backstop to plaintiffs' federal Wiretap Act claims. For how could Rush have a criminal or tortious purpose in mind when placing third-party source code on Rush's web sites when the

lone federal courts to analyze this issue held this type of information was not subject to heightened protection under the relevant medical privacy laws, including HIPAA itself? *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) ("Plaintiffs' argument fails because Facebook did not collect 'protected health information.'"), *aff'd* 745 F. App'x at *9 (same).

Plaintiffs argue *Smith* has been limited in connection with a recent preliminary injunction motion. (Dkt. 51, Opp. Br. 8 (citing *In re Meta Pixel Healthcare Litig.*, --- F. Supp. 3d ----, 2022 WL 17869218, at *9 (N.D. Cal. Dec. 22, 2022)).) Plaintiffs do not disclose this essential point: healthcare providers are no longer involved in that case, and thus the court is only receiving a one-sided view of these questions of health privacy law. *See, e.g., id.* at *9 ("Meta does not challenge plaintiffs' assertion that patient status is protected health information under HIPAA").

For all these reasons, plaintiffs cannot state their Wiretap Act claim against Rush because as a matter of law the tortious or criminal conduct exception to the one-party consent rule does not apply. The claim should be dismissed. *See also Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) (rejecting argument that tortious or criminal conduct exception could apply to alleged internet tracking; "the exception is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party") (quotation omitted).

**B. *The Court should again dismiss plaintiffs' Geisberger claim.***

For their implied confidentiality claim, plaintiffs first concede they have not alleged any particular piece of medical information that was disclosed as to them. (Dkt. 51, Opp. 9-10.) Instead, plaintiffs argue that "[o]n a motion to dismiss, Plaintiffs are entitled to every reasonable inference," and they have generally alleged "they used Rush's web-properties," including "logging in to the patient portal," "exchanging communications inside the patient portal," and "exchanging substantive communications outside the patient portal." (*Id.* at 10.)

The Court has already considered and rejected these same arguments. (Dkt. 25, Mem. in Opp. 9-12.) As the Court held: "only the disclosure of 'information relating to the patient's mental or physical condition or the physician's diagnosis or treatment'—which is the type of disclosure that would violate the statutory physician-patient privilege—would be actionable under Kurowski's theory." (Dkt. 31, Mem. Opin. & Ord. 13 (quoting *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438, 390 N.E.2d 945, 948 (1979)).

Plaintiffs cite *Doe v. Regents of Univ. of California*, 2023 WL 3316766, at *4 (N.D. Cal. May 8, 2023), to support their claim. (Dkt. 51, Opp. Br. 10.) *Regents*, however, shows the type of factual allegations that are missing from plaintiffs' amended complaint. The plaintiff alleged she was "a UCSF patient who used the same email address to sign up for both MyChart and Facebook accounts," 2023 WL 3316766, at *2; that she "entered data relating to her heart issues and high blood pressure in MyChart and later received advertisements on Facebook, including at least one advertisement relating to high blood pressure medication," *id.*; and further that UC Regents had "intentionally incorporated Meta Pixel on the UCSF website and password protected MyChart portal, disclosing and allowing Meta to intercept plaintiff's and class members' data," *id.*

Plaintiffs claim "Rush's argument asks the Court to require Plaintiffs to publicly disclose the contents of their specific health communications to hold Rush accountable for sharing that same information with third parties." (Dkt. 51, Opp. Br. 10.) This is not a requirement from Rush, however, or from the Court. Plaintiffs are asking the Court to recognize a novel claim under Illinois law without attempting to allege the facts that could even potentially support it. To the extent plaintiffs believed it was necessary to lodge information under seal in order to state the claim, they have had more than adequate opportunity to do so. Instead, plaintiffs' response to the Court's order was to make their amended complaint *more* generic, rather than less so.

Finally, plaintiffs once again repeat their arguments that Rush's conduct allegedly violated HIPAA, and that "Rush is incorrect to suggest the Bulletin applies only prospectively." (Dkt. 51, Opp. Br. 10.) The guidance does not operate retroactively under basic rules of administrative procedure. "General statements of policy are 'statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n. 31 (1979) (quoting Att. Gen.'s Manual on the Admin. Proc. Act 30 n.43 (1947)); *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993) (same).

None of plaintiffs' cited cases on retroactivity support any different result. *Manhattan Gen. Equip. Co. v. Comm'r of Int. Rev.*, 297 U.S. 129, 134-35 (1936) (regulation at issue at time of reorganization was nullity because inconsistent with intent of Congress); *Little Co. of Mary Hosp. & Health Care Ctrs. v. Shalala*, 165 F.3d 1162, 1163-64 (7th Cir. 1999) (the Seventh Circuit expressly held: "The regulation has since been changed to exclude 'beds or bassinets in healthy newborn nursery,' 42 C.F.R. § 412.105(b), *but the new regulation does not apply to this case*") (emphasis added); *Pope v. Shalala*, 998 F.2d 473, 482-83 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562 (7th Cir. 1999) (notice and comment regulations that expressly provided "these final rules make no substantive change in our policy").

The question that remains unanswered is this: How does it matter to plaintiffs' claims under Illinois or even federal law whether or not Rush allegedly violated HIPAA? The Seventh Circuit, like every other federal circuit court to address the question, has held the statute creates no private right of action, whether express or implied. *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006); *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021).

Thus, plaintiffs' extensive allegations and argument regarding Rush's alleged violation of HIPAA would only matter to the extent that Illinois law had expressly recognized a cause of action based on an alleged HIPAA violation. Plaintiffs, however, have not cited one case that would support this position. To the contrary, another member of this Court has refused to recognize a common law for alleged breach of physician-patient confidentiality under Illinois law, which likewise was grounded in alleged HIPAA violations. *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 583-84 (N.D. Ill. 2020), *7th Cir. appeal pending*, Case No. 20-3134 (Nov. 2, 2020).

The Court should again refuse to retroactively impose liability on health care providers under state common law based on nebulous allegations and common law causes of action that do not exist. *Peterson v. ConAgra Foods, Inc.*, 2014 WL 3741853, at *4 (S.D. Cal. July 29, 2014) (dismissing state law claim based on "No MSG" labels predating regulatory clarification; "To hold that ConAgra should have been complying with a regulation that was not explicitly clarified until November 19, 2012 would violate due process because ConAgra was not on fair notice.").

**C. *Plaintiffs do not allege personal deception or actual, pecuniary loss.***

For their Illinois Consumer Fraud Act claim, plaintiffs first argue they have adequately alleged personal deception through paragraphs 20 and 471 of their amended complaint. (Dkt. 51, Opp. Br. 12.) Both of these allegations are general statements about patients' alleged "reasonable expectations of privacy in their personally identifiable data and communications exchanged with Rush" (*id.*, ¶¶ 20, 471), however; they say nothing about how plaintiffs themselves were allegedly deceived by Rush's claimed misrepresentations and omissions. The deceptive practices act claim should therefore be dismissed. *De Bouse v. Bayer*, 235 Ill.2d 544, 554 (2009).

Plaintiffs argue they have alleged actual, pecuniary loss under the Consumer Fraud Act under three theories: (1) "Rush provided a less valuable service than it had promised, giving rise to benefit of the bargain damages" (Dkt. 51, Opp. Br. 12); (2) "caused patients to overpay by taking

more of the patient's property in exchange than Rush stated it would" (*id.*); and (3) "'loss of value of property in their personal identifying information'" (*id.* at 13) (quoting *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 412 (N.D. Ill. 2001)).

Rush does not dispute that Illinois law has long recognized property rights. *See Rigney v. City of Chicago*, 102 Ill. 64, 71 (1881) (right of access to line of horse railway); *Illinois Cent. R. Co. v. Comm'rs of Highways of Town of Mattoon*, 161 Ill. 247, 251 (1896) (railroad right of way). Rush also does not dispute that confidential business information can constitute "property" for purposes of the government prosecuting an alleged securities or mail or wire fraud violation under the federal criminal laws. *See Carpenter v. United States*, 484 U.S. 19, 26, 28 (1987). And Rush can accept as true for purposes of this brief "the value that personal identifying information has in our increasingly digital economy." *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020); *Labor Ready*, 149 F. Supp. 2d at 412 (misappropriation claim where "Staffing Network allegedly also had the former employees and other of plaintiff's employees steal or attempt to steal personnel files and other records from plaintiffs").

What plaintiffs' amended complaint fails to do is connect these dots to any actual, pecuniary loss allegedly suffered by them. As the Southern District of New York has held: "While we recognize that browsing information may have possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this harm remains too conjectural." *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *6 (S.D.N.Y. Aug. 17, 2006), *aff'd* 684 F. App'x 32, 36 (2d Cir. 2017); *In re Google, Inc. Cookie Placement*, 806 F.3d 125, 149 (3d Cir. 2015) (same where plaintiffs "allege no facts suggesting that they ever participated or intended to participate in the market they identify, or that the defendants prevented them from capturing the full value of their internet usage information for themselves").

Plaintiffs again cite *In re Marriott* to support their claimed overpayment / "benefit of the bargain" damages. (Dkt. 51, Opp. Br. 13 (citing 440 F. Supp. 3d at 462-63).) That case, however, involved an actual payment in exchange for a hotel stay. *Marriott*, 440 F. Supp. 3d at 463. Here, plaintiffs are trying to apply that principle to the alleged use of free public web properties in connection with an overall health care relationship. Even in the context of a direct payment for a hotel stay, *Marriott* considered and declined to follow Seventh Circuit precedent in reaching its result. *Id.* at 465 (discussing *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016)); *cf. Remijas v. Neiman Marcus Grp., LLC*, 2014 WL 4627893, at *4-5 (N.D. Ill. Sept. 16, 2014), *rev'd on other grounds by* 794 F.3d 688, 693-94 (7th Cir. 2015) (refusing to "expand" this theory of injury "to include deficiencies extrinsic to the purchased product"); *Dinerstein*, 484 F. Supp. 3d at 579 (dismissing Consumer Fraud Act claim under *Remijas* and *Lewert*).

### D. *Plaintiffs do not allege an actionable invasion of privacy claim under Illinois law.*

Plaintiffs again argue that Rush allegedly intruded upon their seclusion by "bugging its own properties," and by "bugging patient communications devices and computers by placing Facebook and Google cookies on them that are designed as belonging to Rush." (Dkt. 51, Opp. Br. 13.) The Court has already rejected this claim, and for good reason. Plaintiffs' alleged harm does not flow from this claimed "bugging"—they voluntarily communicated with Rush. Instead, the alleged harm, if any, is the disclosure the third-party source code allegedly causes.

As the Court held: "In other words, the harm for which Rush is responsible, if any, is its disclosure of patient data (which, as alleged, is not protected private health information)—not the obtaining of that data." (Dkt. # 31, Mem. Opin. & Ord. 19-20.); *see also Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) (holding that "under *Lovgren*, a plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than intrusion").

None of plaintiffs' three new cited cases alter this straightforward analysis. *See Johnson v. K mart Corp.*, Ill. App. 3d 573, 579-80 (1st Dist. 2000), *appeal allowed* 188 Ill.2d 565 (2000) (company hired private detectives to spy on employees at work); *Burns v. Masterbrand Cabinets, Inc.*, 369 Ill. App. 3d 1006, 1008 (4th Dist. 2007) (defendant used a false story regarding a missing juvenile to gain access to plaintiff's home); *Hamberger v. Eastman*, 206 A.2d 239, 239-40 (N.H. 1964) (defendant installed a listening and recording device in plaintiffs' bedroom).

In a single paragraph, plaintiffs argue their new invasion of privacy by public disclosure of private facts is adequately pled under *In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 796 (N.D. Cal. 2019). (Dkt. 51, Opp. Br. 14.) That was a public disclosure claim against Facebook directly, however, for Facebook's alleged disclosures of plaintiffs' confidential information to an untold number of third parties. *Id.* at 776. Under these facts, the court rejected Facebook's argument that "if people use social media to communicate sensitive information with a limited number of friends, they have no right to complain of a privacy violation if the social media turns around and shares that information with a virtually unlimited audience." *Id.*

### E. *Plaintiffs have not stated a trespass to chattels claim under Sotelo*.

Plaintiffs argue they have adequately alleged their trespass to chattels claim under *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005). As plaintiffs put it: "Plaintiffs allege the same essential facts as *Sotelo*: the defendant deposited unwanted tracking devices onto Plaintiffs' personal computing devices to track their Internet communications and, in the process, impaired the condition, quality, and value of those devices." (Dkt. 51, Opp. Br. 14-15.)

This is not correct. In *Sotelo*, the plaintiff alleged the physical destruction of his computer: the "Spyware wreaks havoc on a computer and its user," 384 F. Supp. 2d at 1224; "destroys other software programs," *id.*; "the unsolicited advertisements that clog the screen cause computers to slow down, deplete Internet bandwidth and the computer's memory," *id.*; "[p]roductivity is

decreased because hours are wasted attempting to remove Spyware from computers, closing recurring and frequent advertisements, and waiting for slowed machines," *id.*; and "[u]sers are forced to keep their slowed computers running longer, which uses more electricity, decreases the useful life of a computer, and forces the user to incur increased Internet access charges," *id.*

Here, by contrast, plaintiffs allege precisely the opposite from *Sotelo*: they were completely "unaware of the presence of concealed source code that redirected their communications" (*id.*, ¶ 472; *see also id.*, ¶¶ 386 (same)); the claimed "web-bugs are tiny and purposefully camouflaged to remain invisible to the user" (*id.*, ¶ 52); that they reside in an "invisible window" (*id.*, ¶ 56), and are further "designed to be invisible" (*id.*, ¶ 57). Thus, even under *Sotelo* plaintiffs' trespass to chattels claim should be dismissed. *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *8 (W.D. Wash. June 1, 2012) (dismissing trespass to chattels claim where plaintiffs "failed to plead any facts that would permit the Court to infer that they sustained any plausible harm to a materially valuable interest in the condition, quality, or value of their computers").

**F. *Plaintiffs have not stated a contract claim for the MyChart terms & conditions.***

Plaintiffs concede their implied covenant claim does not exist under Illinois law. (Dkt. 51, Opp. Br. 17.) And plaintiffs' opposition brief attempts to contort the express contract claim that is alleged in their amended complaint. Plaintiffs now accuse Rush of ignoring the "21 contract promises at issue." (*Id.* at 15 (citing Dkt. 46, Am. Compl. ¶ 237).) The first eleven of these "21 contract promises" are contained in Rush's HIPAA notice of privacy practices, however, not the MyChart patient portal terms and conditions. The Court has already held the privacy notice does not apply to routine searches on Rush's public website. (Dkt. 31, Mem. Opin. & Ord. 14-15.)

Plaintiffs argue that "Rush cites no authority" for the proposition that "patient-status is not protected under Illinois law." (Dkt. 51, Opp. Br. 15). Rush cited this Court's prior opinion in this case, however. (Dkt. 31, Mem. Opin. & Ord. 14 ("We follow the overwhelming majority of courts

of the United States which have held that the disclosure of the name alone of the patient by a doctor or his agents does not violate the patient-doctor privilege established by [Ill. Rev. Stat. 1973, ch. 51, P 5.1].") (quoting *Geisberger*, 72 Ill. App. 3d at 438, 390 N.E.2d at 947)).

Moreover, here too plaintiffs still do not identify one specific piece of "confidential health information" that Rush allegedly disclosed as to them, whether within the portal or otherwise. Rather, all their amended complaint does is contain a screenshot of the information that might be contained in the portal; after this point, plaintiffs' allegations simply stop. (Dkt. 46, Am. Compl. ¶ 48.) Thus, even under their own theory, plaintiffs have not adequately pleaded the claim. *See Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (dismissing breach of contract claim for failure to adequately allege the "nature of the breach"; "*Twombly* teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case").

As a final point, plaintiffs argue the limitation of liability and hold harmless provisions contained in the MyChart terms and conditions are not enforceable under Illinois law. (Dkt. 51, Opp. Br. 15-16.) The cases plaintiffs cite on this point are distinguishable, however. *See Larsen v. Vic Tanny Intern.*, 130 Ill. App. 3d 574, 575 (5th Dist. 1984) (personal injury claim against gym "as a result of inhaling gaseous vapors"); *Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716, ¶ 1 (same where "a nearby mirror" fell on plaintiff while he was lifting weights); *cf. Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 395-96 (1986) (holding statutory claim for contribution was not barred by ambiguous exculpatory clause provision).

None of these cases analyzed this particular factual context, where plaintiffs are attempting to use the agreement to their benefit on the one hand by suing for breach, while avoiding the parts of the agreement they do not like on the other. Under these facts, plaintiffs must "take the bad with

the good." *Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000, 1007 (D. Minn. 2006); *cf. Baron v. Sprint Corp.*, 2019 WL 5456796, at *3 (D. Md. Oct. 24, 2019) (enforcing arbitration provision where "the Morrisons' FCA claims hinge on the existence and terms of the very contracts containing the arbitration provisions"; "[A] plaintiff should not be allowed to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage").

**G. *Plaintiffs have not adequately alleged unjust enrichment on form or substance.***

For unjust enrichment, plaintiffs first argue that pleading the claim in the alternative also "necessarily implies the statement 'to the extent it is determined a contract does not exist or otherwise apply.'" (Dkt. 51, Opp. Br. 17 (quoting *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 672 (7th Cir. 2023)).) The statement in *Hernandez* was not implied, however, it was actually made: "Hernandez expressly states that the unjust enrichment claim 'is pled in the alternative to, *and to the extent it is determined a contract does not exist or otherwise apply*, the contract-based claim set forth in the First Cause of Action above.'" *Id.* at 672 (emphasis added).

This is not a matter of "form over substance"; it is what binding Seventh Circuit precedent holds. *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 879, 887 (7th Cir. 2022). Indeed, even in *Hernandez* the court made plain the fact that the claims can be pled in the alternative "does not condone half-baked or legally insufficient allegations of unjust enrichment." *Hernandez*, 63 F.4th at 671; *but cf.* Dkt. 46, Am. Compl. ¶¶ 458-461 (conclusorily pleading unjust enrichment count, including the beginning allegation that "[p]laintiffs reallege and incorporate by reference each allegation in the preceding and succeeding paragraphs").)

In any event, for all the reasons stated above with respect to Consumer Fraud Act damages, plaintiffs also have not adequately alleged the detriment necessary to state the claim on its merits. Plaintiffs' cited authorities again addressed different questions. *See Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-170 (1998) (takings case over interest on IOLTA accounts; "[t]he

rule that 'interest follows principal' has been established under English common law since at least the mid-1700'") (citing *Beckford v. Tobin*, 1 Ves. Sen. 308, 310, 27 Eng. Rep. 1049, 1051 (Ch. 1749)); *see also Saathoff v. Davis*, 2015 WL 13307406, at *6 (N.D. Ill. June 29, 2015) (interpreting Restatement (Second) of Torts § 911 (1979) under Illinois law; concluding "the proper measure of damages for Plaintiffs' loss of their dog is the reasonable value of the dog to them").

**H.** ***The Illinois Eavesdropping Act does not apply to plaintiffs' allegations.***

Plaintiffs argue that the provisions of the Illinois Eavesdropping Act make Illinois an "all party consent" state. (Dtk. 51, Opp. Br. 18.) This is not correct for electronic communications. On this point, the plain text of the statute, not cited by plaintiffs, provides as follows: "*to which he or she is not a party*." 720 Ill. Stat. § 5/14-2(a)(3) (emphasis added). Moreover, plaintiffs also have not found, and do not argue, any tortious or criminal conduct exception to this one-party consent rule exists under Illinois law. Thus, for electronic communications, Illinois is not only a one-party consent statute, *id.*, but also does not have any tortious or criminal conduct exception.

Plaintiffs have thus turned to their "principal" theory of liability. (Dkt. 51, Opp. Br. 19-20.) Here, plaintiffs first argue "[t]he term 'employ' is not defined by the statute and its ordinary meaning is broader than 'an employer' in an 'employer-employee' relationship." (*Id.* at 19.) This is not how the provision has been interpreted by the Illinois courts, however. *See Cebula v. General Elec. Co.*, 614 F. Supp. 260, 268 n.4 (N.D. Ill. 1985) ("We think it clear from the context of the statute that the employer must *know* the employee is eavesdropping within the scope of his employment. This reading gives meaning to the word 'knowingly.'") (emphasis in original); *Morris  Morris v. Ameritech Illinois*, 337 Ill. App. 3d 40, 47 (1st Dist. 2003) (same; "we find that the General Assembly meant to impose liability only if the employer knows that its employee is eavesdropping"); *Abbott v. Village of Winthrop Harbor*, 1995 WL 51553, at *9 (N.D. Ill. Feb. 4,

1995) (same); *compare* Black's Law Dictionary 566 (8th Ed. 2004) (defining term "employment" to mean "1. The relationship between master and servant").

Plaintiffs argue that under subdivision (2) of the statutory principal definition they have adequately alleged Rush knowingly "derived a benefit" from Facebook and Google's use of the information recorded by *Rush*'s claimed "eavesdropping device." (Dkt. 51, Opp. Br. 19-20.) Under this theory, plaintiffs argue that a party can use an eavesdropping device to record a conversation, give this recording to a third-party, and then be liable as a principal for the use of this same alleged recording by the third-party. (*Id.* at 20.) This circular argument is contrary to the statutory text, which contemplates that the "benefit *or* information" must both come from the "illegal *use* of an eavesdropping device *by another*," 720 Ill. Stat. § 5/14-1(c)(2) (emphasis added).

Finally, plaintiffs argue they have "adequately alleged that Rush directed Facebook and Google to acquire the communications by placing the tracking code on its web-properties," thereby also allegedly "causing Google and Facebook to intercept Plaintiffs' communications." (Dkt. 51, Opp. Br. 20.) Here again, the statutory language is plain: the alleged "principal" must direct the agent to "use an *eavesdropping device* illegally *on his or her behalf*." 720 Ill. Stat. 5/14-1(c)(3) (emphasis added). Plaintiffs' repeated, unequivocal allegations that Rush itself placed the source code on Rush's web properties thus also defeat plaintiffs' theory here under the statute's plain text. (Dkt. 46, Am. Compl. ¶ 32 ("Rush took advantage of MyChart's analytics capability by knowingly and secretly deploying Google source code throughout its web properties"); *see also id.*, ¶¶ 40, 75-77, 88, 96, 100, 209(f), 228-29, 235-36, 292-97, 305, 310, 336, 410-11 (all same).)

### I. *Plaintiffs can no longer state a claim for future harm under the DTPA.*

Plaintiffs claim that "Rush argues the Court should dismiss the IDTPA claim because it stopped the unlawful behavior after Plaintiffs filed suit." (Dkt. 51, Opp. Br. 20.) That is not what Rush argued, however. Rather, Rush argued that the Court should dismiss the complaint under

Rule 12(b)(6) for failure to state a claim. (Dkt. 50, Mem. in Supp. 19-20.) Nor is this a question of mootness, as plaintiffs contend. (Dkt. 51, Opp. Br. 20.) Plaintiffs chose to file an amended complaint; this amended complaint thus supersedes plaintiffs' original pleading. *Laslie v. Cicero*, 2021 WL 1853250, at *9 (N.D. Ill. May 10, 2021) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void.") (quoting *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004)).

Plaintiffs' allegations show they have full knowledge of the alleged source code contained on Rush's web properties, including the changes Rush has recently made. Plaintiffs thus have not stated their deceptive trade practices claim because they cannot show any potential future harm from Rush's alleged deceptions regarding these same practices. The fact that Rush's website has now been changed further buttresses this argument. *See ATC Health. Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) ("[t]he likelihood of future harm occurring absent an injunction is an element of liability on the claim, not merely a separate element of damages").

## CONCLUSION

One-by-one, the counts in plaintiffs' amended complaint fail to state a claim upon which relief can be granted. The Court should dismiss the complaint with prejudice.

Dated: June 2, 2023

Respectfully submitted,

By: /s/ David Carney
*Counsel for Defendants*

David A. Carney
dcarney@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7634

Bonnie Keane DelGobbo
bdelgobbo@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
Firm No. 46365

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 2, 2023, a true and correct copy of the foregoing Reply Brief in Support of Rush's Rule 12(B)(6) Motion to Dismiss Plaintiffs' Amended Complaint was served on counsel of record via the Court's electronic filing system.

*/s/* David Carney
*Counsel for Defendants*