**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-05380 |
| v. | ) | The Honorable Matthew F. Kennelly, Judge |
| RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION......................................................................................................1**

**LAW AND ARGUMENT.........................................................................................3**

A. STANDARD OF REVIEW. ........................................................................3

B. RUSH HAD NO NOTICE ITS CONDUCT COULD HAVE BEEN CRIMINAL AND THUS THE TORTIOUS OR CRIMINAL CONDUCT EXCEPTION DOES NOT APPLY....................4

C. PLAINTIFFS FAIL TO ALLEGE ACTUAL DAMAGES ON THEIR BREACH OF CONTRACT CLAIM. ........................................................................8

D. PLAINTIFFS FAIL TO ALLEGE THEIR ENTITLEMENT TO A CIVIL REMEDY UNDER THE ILLINOIS EAVESDROPPING ACT. ...........................................10

E. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THE WIRETAP ACT QUESTION TO THE SEVENTH CIRCUIT FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B). ........................................................................12

**CONCLUSION ......................................................................................................15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADM All. Nutr., Inc. v. SGA Pharm Lab, Inc.*,
877 F.3d 742 (7th Cir. 2017) ....................4

*Ahrenholz v. Board of Trustees of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ....................12, 13, 15

*Antonicic v. HSBC Bank USA, N.A.*,
2020 WL 1503201 (N.D. Ill. Mar. 27, 2020)....................9

*Avery v. State Farm Mutual Auto. Ins. Co.*,
216 Ill.2d 100 (2005) ....................9

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ....................9

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982) ....................10

*CaramelCrisp, LLC v. Putnam*,
2023 WL 422892 (N.D. Ill. Jan. 26, 2023)....................8

*Caro v. Weintraub*,
618 F.3d 84 (2d Cir. 2010)....................6

*Centre PC v. Auctus Group*,
2023 WL 5854398 (N.D. Ill. Sept. 10, 2023) ....................3, 4

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018) ....................8

*Desnick v. American Broadcasting Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995) ....................2, 5, 6

*Doe v. Chao*,
540 U.S. 614 (2004)....................11

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................2, 5

*F.A.A. v. Cooper*,
566 U.S. 284 (2012)....................11

*Florodora, Inc. v. Claris Int'l Inc.*,
2020 WL 2468195 (N.D. Ill. May 13, 2020) ....................10

*Florsheim v. Travelers Indem. Co. of Ill.*,
75 Ill. App. 3d 298 (1st Dist. 1979) ....................10

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................7

*In re Illinois Bell Telephone Link-Up II*,
2013 IL App (1st) 113349 ....................8, 9

*Katz-Lacabe v. Oracle Am., Inc.*,
--- F. Supp. 3d ----, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ....................7

*Krown 1 FZC v. Crane Worldwide Logistics*,
2021 WL 1212797 (N.D. Ill. Mar. 31, 2021) ....................8

*Martin v. Asset Acceptance, LLC*,
2012 WL 3042524 (N.D. Ill. July 25, 2012) ....................12

*McDonald's Corp. v. Levine*,
108 Ill. App. 3d 732 (2d Dist. 1982) ....................11

*Media Logic USA, LLC v. Prinova US, LLC*,
76 Misc.3d 1218(A), (N.Y. Sup. Ct. Albany Cty. Sept. 7, 2022) ....................11

*Mitchell v. Elrod*,
275 Ill. App. 3d 357 (1st Dist. 1995) ....................10

*Phil. Indem. Ins. Co. v. Lewis Prod. Mkt. No. 2 Inc.*,
2022 WL 1045640 (N.D. Ill. Apr. 7, 2022) ....................4

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. May 21, 2021) ....................7

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................1, 2, 6, 7

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................1

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) ....................3, 13, 14

*TAS Distributing Co. v. Cummins Engine Co., Inc.*,
491 F.3d 625 (7th Cir. 2007) ....................8

*Unite Here Local 1 v. Hyatt Corp.*,
862 F.3d 588 (7th Cir. 2017) ....................................................................................3

*United States v. Anzalone*,
766 F.2d 676 (1st Cir.1985) ......................................................................................8

**Statutes & Rules**

720 ILCS 5/14-6 ..........................................................................................................10

720 ILCS 5/17-50 ..........................................................................................................4

720 ILCS 5/17-51 ..........................................................................................................4

815 ILCS §§ 510/2..........................................................................................................4

18 U.S.C. § 2520..........................................................................................................14

28 U.S.C. § 1292.............................................................................................12, 13, 14

42 U.S.C. § 1320............................................................................................................4

FED. R. CIV. PRO. R. 12..................................................................................................3

## INTRODUCTION

In its most recent decision, the Court held that plaintiffs had alleged enough facts to make a plausible HIPAA violation. (Dkt. # 81, Mem. Op. & Ord. 5-6.) Rush will not re-argue that point here. Rush respectfully submits, however, that the second conclusion the Court reached from this predicate holding—that the tortious or criminal conduct exception to the Wiretap Act is also therefore met—is not correct.

The question the Court left unanswered is this: How could Rush have in mind a purpose to commit a crime when, *at the time of the alleged disclosures in question*, Rush was not on notice that HIPAA even applied to the alleged transferences of internet information at issue?

To the contrary, prior to the plaintiffs filing their complaint here, the only federal courts that had weighed in on the issue had held these same basic internet disclosures were not only not criminal, HIPAA did not apply to them at all. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 948 (N.D. Cal. 2017) (allegations regarding "**How Facebook Tracks Visitors' Web Browsing Activity**") (emphasis in original); *id.* at 954-55 n. 4-7 (collecting healthcare website URLs, including http://my.clevelandclinic.org/search/results?q=intestine%20transplant).

In doing so, the Ninth Circuit stated as follows: "We do not agree that the collected data is so different or sensitive. The data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history. Moreover, many other kinds of information are equally sensitive." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018). The appellate court concluded: "Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history." *Id.*

The Department of Health and Human Services did not issue any regulatory guidance showing it disagreed with *Smith* until more than four years later, on December 1, 2022. (Dkt. # 86, 2d Am. Compl. ¶¶ 170-175.) Indeed, plaintiffs' second amended complaint shows on its face that the government did not provide this notice to Rush individually until July 20, 2023. (*Id.*, ¶¶ 193-195 & Exhibit 1, *Off. of Civil Rights 7/20/23 Bergetz letter*.)

Maybe Rush should have foreseen that the Court would ultimately rule differently, or that this regulatory guidance might someday be issued. The tortious or criminal conduct exception to the Wiretap Act, however, does not require this type of foresight; the relevant conduct is judged as of the time of the acts in question. The Seventh Circuit made this point plain in refusing to apply the exception in *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345 (7th Cir. 1995): "Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely. But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming the plaintiffs by charging tampering with the glare machine." *Id.* at 1353-54.

Judge Buchwald, writing for the Southern District of New York, has made the same point: "a culpable mind does not accompany every tortious act." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001). For purposes of the exception, there is no transferred intent *ex post facto*; there must be "a *specific contemporary intention* to commit a crime or tort." *Id.* (emphasis added). Plaintiffs' Wiretap Act should therefore be dismissed, because it fails to state a claim as a matter of law.

Moreover, the Court should also enter judgment on plaintiffs' two remaining claims, for alleged breach of contract and violation of the Illinois Eavesdropping Act. (*See* Dkt. # 86, 2d Am. Compl. ¶¶ 349-362 (breach of contract); *id.* at ¶¶ 363-380 (Eavesdropping Act).) For these

claims, plaintiffs (1) have failed to allege actual damages under Illinois law for their breach of contract claim, and (2) have failed to allege facts to show they are entitled to relief under the Illinois Eavesdropping Act's civil remedies provision.

In the alternative, Rush respectfully requests the Court certify its decision on the Wiretap Act claim for immediate interlocutory appeal. The central focus of the parties' extensive briefing up to this point has revolved around this claim. It is the only claim for statutory penalties at issue in the case, and its presence in briefing and deciding class certification could clearly impact not only the Court's decision on class but also the settlement dynamics as the parties approach that stage of the case. This Court and the Seventh Circuit have previously worked together in such a situation, *see Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012), and Rush respectfully submits the same approach is appropriate here.

Accordingly, for these and the other reasons set forth below, Rush respectfully submits that the Court should enter judgment as a matter of law on plaintiffs' second amended complaint. In the alternative, if the Court allows plaintiffs' Wiretap Act claim to survive dismissal, the Court should certify this decision to the Seventh Circuit for immediate interlocutory appeal.

## LAW AND ARGUMENT

### A. STANDARD OF REVIEW.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party is entitled to judgment as a matter of law." *Centre PC v. Auctus Group*, 2023 WL 5854398, at *2 (N.D. Ill. Sept. 10, 2023) (internal ellipsis omitted, quoting *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017)).

"The standard for assessing such a motion is the equivalent of that used in considering a motion to dismiss for failure to state a claim." *Id.* "Specifically, to survive a motion for judgment on the pleadings, the complaint must 'state a claim that is plausible on its face.'" *Id.* (quoting *ADM All. Nutr., Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017)); *Phil. Indem. Ins. Co. v. Lewis Prod. Mkt. No. 2 Inc.*, 2022 WL 1045640, at *2 (N.D. Ill. Apr. 7, 2022) (same).

### B. Rush Had No Notice Its Conduct Could have Been Criminal and Thus the Tortious or Criminal Conduct Exception Does Not Apply.

For their Wiretap Act claim, plaintiffs continue to allege that the tortious or criminal conduct exception applies merely because Rush allegedly violated the law:

> "319. Rush's acquisition of patient communications that were used and disclosed to Facebook, Google, and others was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and of Illinois, including: a. Criminal violation of HIPAA, 42 U.S.C. § 1320d-6; b. Violation of the Illinois Computer Fraud Act, 720 ILCS 5/17-50; c. Violation of the Illinois Computer Crime Prevention Law, 720 ILCS 5/17-51; d. Violation of the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/2, *et seq*.; e. Violations of the Federal Trade Commission Act."

(Dkt. # 86, 2d Am. Compl. ¶ 319.)

The Court has now agreed, at least with respect to the first of these alleged legal violations. (Dkt. # 81, Mem. Op. & Ord. 6.) The Court held the tortious or criminal conduct exception applies because "Kurowski alleges that Rush knowingly transmits this data and that is does so for the purpose of financial gain." (*Id.*) "All of these allegations, taken together, are sufficient to invoke the HIPAA exception-to-the-party-exception quoted earlier." (*Id.*)

The Southern District of New York rejected the same basic application of the statute in another alleged internet tracking case, *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 515-19 (S.D.N.Y. 2001). The plaintiffs there attempted "to meet § 2511(2)(d)'s 'purpose' requirement by arguing that their six non-Wiretap Act claims against DoubleClick 'plead conduct that has underlying it a tortious purpose and/or that translates into tortious acts." *Id.* at 515. "In other words, by virtue of its tortious acts, DoubleClick must have had a tortious purpose." *Id.*

The court disagreed. The court held that "Section 2511(2)(d)'s legislative history makes clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *Id.* The court further held that "the legislative record suggests that the element of 'tortious' or 'criminal' *mens rea* is required to establish a prohibited purpose under § 2511(2)(d)." *Id.* (emphasis in original).

The court thus held that plaintiffs had not adequately alleged their Wiretap Act claim. "DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial websites." *Id.* at 519. "If any of its practices ultimately prove tortious, then DoubleClick may be liable for the resulting damage." *Id.* "However, a culpable mind does not accompany every tortious act." *Id.* The court concluded: "In light of the abundant evidence that DoubleClick's motivations have been licit and commercial and the utter lack of evidence that its intent has been tortious, we find as a matter of law that plaintiffs have failed to allege that DoubleClick has acted with a 'tortious' purpose." *Id.*

The court cited the Seventh Circuit's decision in *Desnick* in reaching this decision, where the appellate court had held as follows: "Maybe the program as it was eventually broadcast was

tortious, for we have said that the defamation count was dismissed prematurely. But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming the plaintiffs by charging tampering with the glare machine." 44 F.3d at 1353-54; *see also Caro v. Weintraub*, 618 F.3d 84, 100 (2d Cir. 2010) (holding the exception only applies where "*at the time of the recording*, the offender plans to use the recording to harm the other party to the conversation"; "There is a temporal thread that runs through the fabric of the statute and the case law.") (emphasis added).

These decisions preclude plaintiffs' Wiretap Act claim as a matter of law. Plaintiffs may have adequately alleged Rush's purpose in making the alleged disclosures at issue was financial. (Dkt. # 86, 2d Am. Compl. ¶ 328.) And it may be that the HIPAA statute provides for enhanced criminal penalties for financial disclosures. (*Id.*, ¶ 321.)

But neither of these things answers this threshold question: How could Rush have in mind a purpose to criminally violate HIPAA *at the time the alleged disclosures were made* when, *at this time*, plaintiffs have not plausibly alleged that Rush was even on notice that the statute applied to the alleged internet disclosures at issue? Indeed, the only specific screenshot that either plaintiff provides of their own information allegedly being transferred was one screenshot to Google in October of *2019*. (*Id.*, ¶ 79.)

As of this time, the only federal courts to weigh in on the issue had both held that HIPAA did not apply to the alleged disclosures at issue at all. *Smith*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8, 9 (9th Cir. 2018). The Court itself made the same holding with respect to the first two iterations of plaintiffs' complaint even in this case. (Dkt. # 31, Mem. Op. & Ord. at 10; Dkt. # 60, Mem. Op. & Ord. 8 ("The type of metadata that Kurowski alleges was transmitted via third-party source code does not in the least bit fit into that category.").)

Rush respectfully continues to believe that plaintiffs did not materially change anything in their second amended complaint that would alter this conclusion. (Dkt. # 73, Opp. Br. at 8-9; *cf. John Ellis v. United Airlines, Inc.*, No. 23-cv-123, Dkt. # 36, *Order* (Oct. 18, 2023).) The Court disagreed, and that is fair enough. But the conclusion that the Court then drove from this predicate holding—to transfer intent from this alleged legal violation into a purposeful intent to commit a crime at the time of the acts in question—is wrong and should be corrected.

Plaintiffs' second amended complaint shows that: (1) the government did not provide any notice that it disagreed with the *Smith* decision until December 1, 2022, nearly three months after plaintiffs filed their complaint here (Dkt. # 86, 2d Am. Compl. ¶¶ 170-175); (2) the government did not provide this notice to Rush specifically until July 20, 2023 (*id.*, ¶¶ 193-195 & Exhibit 1, *Off. of Civil Rights 7/20/23 Bergetz letter*); and (3) following the government's initial guidance Rush took immediate action to change Rush's website (*id.*, ¶ 4 n.1; *compare American Hospital Association, et al. v. Melanie Fontes Rainer, et al.*, No. 4:23-cv-01110 (N.D. Tex.), Dkt. # 1, Compl., filed Nov. 2, 2023) (AHA lawsuit challenging constitutionality of guidance).)

Plaintiffs may be right that in hindsight Rush allegedly violated HIPAA. In light of all these circumstances, however, plaintiffs have not alleged plausible facts to show the basic fact that matters for their Wiretap Act claim based on this alleged legal violation: that Rush had in mind a specific contemporary intention to commit a crime at the time of the alleged disclosures in question. *Compare In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. May 21, 2021); *Katz-Lacabe v. Oracle Am., Inc.*, --- F. Supp. 3d ----, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023) (each rejecting the argument that an alleged financial motive was enough for the tortious or criminal conduct exception to apply).

Plaintiffs' Wiretap Act claim should therefore be dismissed as a matter of law. *See also Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (refusing to apply exception to alleged internet tracking case; "Cohen fails to demonstrate that Defendants' primary purpose <u>was to commit</u> a tort. Instead, he claims that Defendants' conduct <u>amounted</u> to a tort.") (emphasis in original); *United States v. Anzalone*, 766 F.2d 676, 680 (1st Cir.1985) (Torruella, J.) ("In contrast to what is permitted under other legal systems, the Constitution of the United States mandates that, before any person is held responsible for violation of the criminal laws of this country, the conduct for which he is held accountable be prohibited with sufficient specificity to forewarn of the proscription of said conduct.").

### C. Plaintiffs Fail to Allege Actual Damages on Their Contract Claim.

Under Illinois law, "[d]amages are an essential element of a breach of contract action and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law." *In re Illinois Bell Telephone Link-Up II*, 2013 IL App (1st) 113349, ¶ 19; *see also CaramelCrisp, LLC v. Putnam*, 2023 WL 422892, at *4 (N.D. Ill. Jan. 26, 2023) (holding that "Illinois courts require a showing of actual damages to maintain a claim for breach of contract"); *Krown 1 FZC v. Crane Worldwide Logistics*, 2021 WL 1212797, at *6-7 (N.D. Ill. Mar. 31, 2021) (same).

As the Seventh Circuit has likewise held: "Illinois law is clear that, to state a claim for breach of contract, one must be able to prove actual damage." *TAS Distributing Co. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 n. 6 (7th Cir. 2007). Thus also, "[m]erely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *Id.* at 631.

The parties and the Court have also expended significant resources in this case briefing and deciding the numerous damages theories set forth in plaintiffs' initial complaint and in particular plaintiffs' amended complaint. (Dkt. # 21, Rush Mem. in Supp. 15-16; Dkt. # 25, Opp.

Br. at 15-16 ("**Plaintiffs Allege Actual Pecuniary Loss**") (emphasis in original); Dkt. # 28, Rush Rep. Br. at 11-12; Dkt. # 31, Mem. Op. & Ord. at 16-17 ("An individual suing under the ICFA must 'plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss.'") (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019)); Dkt. # 50, Rush Mem. in Supp. at 8-9, 16-17; Dkt. # 51, Opp. Br. at 12-13, 17-18; Dkt. # 52, Rep. Br. at 6-8, 12-13; Dkt. # 60, Mem. Op. & Ord. at 11-14).)

The Court ultimately rejected these alleged harms as being sufficient to state a claim for actual damages under the Illinois Consumer Fraud Act: "In sum, because Kurowski does not plausibly allege a monetary loss, she cannot state a claim under the ICFA." (Dkt. # 60, Mem. Op. & Ord. at 14; *see also* Dkt. # 31, Mem. Op. & Ord. at 16-17 (same).)

This holding precludes plaintiffs' breach of contract claim as a matter of law in their second amended complaint. This is so because "[t]he basic theory of damages in a breach of contract action requires that a plaintiff 'establish an actual loss or measurable damages resulting from the breach in order to recover.'" *In re Illinois Bell Telephone Link-Up II*, 2013 IL App (1st) 113349, ¶ 19 (quoting *Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill.2d 100, 149 (2005)).

Thus also, as numerous courts have held, including the Illinois Supreme Court, plaintiffs' breach of contract claim should rise—and here also fall—with the Court's prior, considered actual damages analysis on their Illinois Consumer Fraud Act claim. *See, e.g.*, *Avery*, 216 Ill.2d at 145-154, 195-198 (rejecting Consumer Fraud Act damages for same reason as breach of contract; "As explained in our discussion of plaintiffs' breach of contract count, specification damages are not, in fact, real or measurable damages and, hence, in no way constitute 'actual damage' withing the meaning of the Act."); *Antonicic v. HSBC Bank USA, N.A.*, 2020 WL 1503201, at *2 (N.D. Ill. Mar. 27, 2020) (holding plaintiffs' breach of contract and Illinois

Consumer Fraud Act claims failed to allege actual damages without independent analysis; "To state a claim for breach of contract under Illinois law or for violation of the ICFA, a plaintiff allege he or she suffered actual, pecuniary damage."); *Florodora, Inc. v. Claris Int'l Inc.*, 2020 WL 2468195, at *3-4 (N.D. Ill. May 13, 2020) (same; "In short, because Plaintiff fails to plausibly plead that it suffered harm, its first amended complaint fails in its entirety.").

### D. PLAINTIFFS FAIL TO ALLEGE THEIR ENTITLEMENT TO A CIVIL REMEDY UNDER THE ILLINOIS EAVESDROPPING ACT.

The analysis is different but the result should be the same for plaintiffs' claim under the Illinois Eavesdropping Act. (Dkt. # 86, 1st Am. Compl. ¶¶ 363-380.) The Eavesdropping Act provides "Civil remedies to injured parties." 720 ILCS 5/14-6. Pursuant to this provision, "[a]ny or all parties to any conversation or electronic communication upon which eavesdropping is practiced contrary to this Article shall be entitled to the following remedies: (a) To an injunction by the circuit court prohibiting further eavesdropping by the eavesdropper and by or on behalf of his principal, or either; (b) To all actual damages against the eavesdropper or his principal or both; (c) To any punitive damages which may be awarded by the court or by a jury." *Id.*

To begin with punitive damages first: "Illinois like most states does not recognize a cause of action for punitive damages alone; the plaintiff can only be awarded punitive damages where actual damage is shown." *Florsheim v. Travelers Indem. Co. of Ill.*, 75 Ill. App. 3d 298, 309-310 (1st Dist. 1979) (internal citation omitted); *see also By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 961 (7th Cir. 1982) (Posner, J.) (applying this rule to claim under the Eavesdropping Act); *Mitchell v. Elrod*, 275 Ill. App. 3d 357, 362 (1st Dist. 1995) (holding it was "legally inconsistent for the jury to award punitive damages but no compensatory damages"; "A long line of cases has held that punitive damages may not be recovered in the absence of compensatory damages.").

Thus, plaintiffs' claim for punitive damages under the Illinois Eavesdropping Act also is dependent on their ability to state a claim for actual damages under the statute. *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732, 738-739 (2d Dist. 1982) (holding "[t]he three civil remedies to an injured party are not a statutory penalty but a codification of the traditional common-law remedies afforded to anyone whose rights have been tortiously violated").

The Supreme Court has noted the term "actual damages" has a "chameleon-like quality" in the statutory context, *F.A.A. v. Cooper*, 566 U.S. 284, 294 (2012), and thus also can change "with the specific statute in which it is found," *id.* at 292 (quotation omitted); *see also Doe v. Chao*, 540 U.S. 614, 621-22 (2004) (analyzing actual damages under the federal Privacy Act). Based on these holdings, Rush is not arguing that the Court's actual damages analysis under the Illinois Consumer Fraud Act controls the outcome of the same analysis under the Illinois Eavesdropping Act. That being said, what does control here is this: plaintiffs' factual allegations in their second amended complaint.

Here again, throughout the entirety of plaintiffs' second amended complaint, plaintiffs seek the same alleged "actual damages" on each one of their claims. (Dkt. # 86, 2d Am. Compl. - ¶¶ 148-156 (alleged lost value of personal information); *id.*, ¶¶ 256-265 (alleged "property interests in their individually identifiable health information"); *id.*, ¶¶ 266-67 (alleged lost "benefit of the bargain"); *id.*, ¶¶ 268-289 (alleged "overpayment" for health care services).)

As the Court has previously found, plaintiffs do not sufficiently allege how any of these claimed damages are actual as to them, personally. (Dkt. # 60, Mem. Op. & Ord. at 14; *see also* Dkt. # 31, Mem. Op. & Ord. at 16-17 (same).) Thus also, the Court's prior holding on this point should also apply to plaintiffs' claim for actual damages under the Illinois Eavesdropping Act. *See also, e.g., Media Logic USA, LLC v. Prinova US, LLC*, 76 Misc.3d 1218(A), at *13-14 (N.Y.

Sup. Ct. Albany Cty. Sept. 7, 2022) (dismissing Eavesdropping Act counterclaim for lack of damages; "Prinova's inability to identify any damages flowing from the alleged eavesdropping provides an alternative ground for dismissal"); *compare Martin v. Asset Acceptance, LLC,* 2012 WL 3042524, at *2 (N.D. Ill. July 25, 2012) (dismissing actual damages claim under the Fair Credit Reporting Act; "After already providing one opportunity to amend the complaint, I am left to conclude that no actual damages exist, and I grant the defendant's motion to dismiss parts of Count I and II relying upon a claim for negligent noncompliance under § 1681***o***.").

Finally, as to injunctive relief, the Court initially allowed this claim to proceed forward to discovery. (Dkt. # 31, Mem. Op. & Ord. at 17-18.) Plaintiffs chose not to pursue this claim, at least not on its own, instead seeking leave to file their first amended complaint. (Dkt. # 37, Mot. for Leave.) As the Court has since held in two additional orders analyzing plaintiffs' subsequent claims for injunctive relief, these are no longer well-pled based on the changes that Rush has made to its website. (Dkt. # 60, Mem. Op. & Ord. at 15-16; Dkt. # 81, Mem. Op. & Ord. at 7.)

### E. In the Alternative, the Court Should Certify the Wiretap Act Question to the Seventh Circuit for Interlocutory Appeal under 28 U.S.C. § 1292(b).

In the alternative, assuming the Court is included to stick by the Court's prior analysis on the tortious or criminal conduct exception, Rush respectfully submits that an interlocutory appeal from this order would be appropriate under 28 U.S.C. § 1292(b). *See* 28 U.S.C. § 1292(b) (allowing certification for immediate appeal where the district court "shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation"); *see also Ahrenholz v. Board of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (analyzing statutory requirements).

As the Seventh Circuit held in *Arenholz*: "We think 'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz,* 219 F.3d at 676. "The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Id.* at 677.

This rationale applies to this case here, right now. For more than a year, the parties have been arguing over one basic and controlling question of law: whether plaintiffs can adequately state a Wiretap Act claim under the tortious or criminal conduct exception. (Dkt. # 21, Rush Mem. in Supp. 15-16; Dkt. # 25, Opp. Br. at 6-7; Dkt. # 28, Rush Rep. Br. at 3-4; Dkt. # 31, Mem. Op. & Ord. at 9-10; Dkt. # 50, Rush Mem. in Supp. at 2-4; Dkt. # 51, Opp. Br. at 3-8; Dkt. # 52, Rep. Br. at 1-3; Dkt. # 60, Mem. Op. & Ord. at 4-9; Dkt. # 67, Mot. for Leave at 2-6; Dkt. # 73, Opp. Br. at 6-9; Dkt. # 81, Mem. Op. & Ord. at 5-6).)

The resolution of this legal question is not free from doubt. This is shown not only through the case law cited above, but also through the Court's prior opinions on this point. (Dkt. # 31, Mem. Op. & Ord. at 9-10; Dkt. # 60, Mem. Op. & Ord. at 4-9; Dkt. # 81, Mem. Op. & Ord. at 5-6).) Moreover, and perhaps most importantly, the resolution of this question can be made quickly and without any factual record—the question is based solely upon the allegations contained in plaintiffs' second amended complaint and nothing more.

Finally, the resolution of this issue would materially advance the ultimate termination of the litigation. As the Seventh Circuit held in *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012), where this Court had certified a statutory interpretation question

regarding the Video Privacy Protection Act for immediate appeal: "If the appeal is not allowed, and the suit proceeds in the district court on both the disclosure and the destruction claims, the completion of the litigation will take longer than is the destruction claim is out of the case, especially since that claim appears to be the plaintiffs' main one, with the disclosure claim perhaps just a life jacket." *Id.*

"Moreover, uncertainty about the status of the destruction claim may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation." *Id.* "That is enough to satisfy the 'may materially advance' clause of section 1292(b); neither the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court." *Id.* at 536.

Rush respectfully submits that this rationale applies equally here, however the Court decides the breach of contract and Illinois Eavesdropping Act claims. There is good reason plaintiffs have continually moved to amend their complaint to try and keep the federal Wiretap Act claim in the case: it is their only claim that authorizes statutory penalties. *See* 18 U.S.C. § 2520(c)(2)(A), (B); *see also* Dkt. # 86, 2d Am. Compl. ¶ 348 ("Plaintiffs, individually, and on behalf of the Class members, seek all monetary and non-monetary relief allowed by law, including actual damages, statutory damages, punitive damages, preliminary and other equitable or declaratory relief, and attorneys' fees and costs.").

Thus also, the claim has not only shaped the parties' extensive briefing up to this point in time, but also will clearly and certainly have a fundamental impact on the class certification briefing, including any potential settlement discussions that may take place as the case reaches that stage of the proceedings. For this reason as well, just as in *Sterk*, allowing an interlocutory

appeal of the tortious or criminal conduct exception to allow the appellate court to weigh in on the merits of this strictly legal question, the resolution of which can be made quickly and based on one pleading alone, is appropriate. As the Seventh Circuit likewise held in *Arenholz*: "It is equally important, however, to emphasize the duty of the district court and of our court as well to allow an immediate appeal to be taken when the statutory criteria are met," 219 F.3d at 677.

Rush therefore proposes the following question for certification to the appellate court, assuming the Court does not enter judgment on the claim: "Whether the federal Wiretap Act's tortious or criminal conduct exception bars plaintiffs' federal claim under the statute, as alleged in Count I of their Second Amended Complaint (Dkt. # 86, 2d Am. Compl. ¶¶ 301-348)."

## CONCLUSION

This case has been filled with a long road of hard-fought briefing on the legal merits of plaintiffs' many-stated claims. Rush respectfully submits that this road should now travel north, for this simple reason: Judgment as a matter of law is appropriate on the entirety of plaintiffs' second amended complaint. In the alternative, the Court should certify the following proposed question to the Seventh Circuit for interlocutory review: "Whether the federal Wiretap Act's tortious or criminal conduct exception bars plaintiffs' federal claim under the statute, as alleged in Count I of their Second Amended Complaint (Dkt. # 86, 2d Am. Compl. ¶¶ 301-348)."

Dated: January 3, 2024

Respectfully submitted,

By: */s/ David Carney*
*Counsel for Defendant Rush System for Health*

Bonnie Keane DelGobbo
bdelgobbo@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
Firm No. 46365

David Carney
dcarney@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7634

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 3, 2024, a true and correct copy of the foregoing *Memorandum in Support of Motion for Judgment on the Pleadings or In the Alternative to Certify for Interlocutory Appeal* was served on counsel of record via the Court's electronic filing system.

*/s/ David Carney*
*Counsel for Defendant Rush System for Health*