**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>*v.*<br><br>RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH,<br><br>Defendant. | ) | Case No. 1:22-cv-05380<br><br>The Honorable Matthew F. Kennelly, Judge |

**DEFENDANT RUSH SYSTEM FOR HELTH'S OPPOSITION BRIEF TO PLAINTIFFS' MOTION TO COMPEL**

Pursuant to Minute Entry dated February 9, 2024, the Court ordered that "[t]he parties should be prepared to address and all matters that are currently before the Court." (Dkt. # 104, Min. Entry.) Pursuant to this Order, defendant Rush System for Health respectfully submits this brief opposition brief on plaintiffs' motion to compel for tomorrow's status hearing:

Specifically, plaintiffs' motion to compel proceeds from the premise that plaintiffs should be entitled to all the discovery plaintiffs want, irrespective of the size of the case, their own amount of discovery, or the fact that no putative class has yet been certified. This is not correct.

"Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new [proportionality] rule 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F..3d 260, 273 (6th Cir. 2021) (quoting John G. Roberts, Jr. 2015 Year-End Report on the Federal Judiciary 6 (2015)).

"By 'emphasiz[ing] proportionality as a governing principle,' the changes 'tightened discovery deadlines and so shortened the opportunities for delay.'" *Id.* (quoting Neil M. Gorsuch, *A Republic, If You Can Keep It* 260 (2019)). "It is now 'the power—and *duty*—of the district courts actively to manage discovery and limit discovery that exceeds its proportional and proper bounds.'" *Id.* (emphasis in original, quoting *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016)).

When it comes to the proportionality analysis in this case, here are the facts:

1) To support their claims for damages, plaintiffs have each produced only one document total: a screenshot of their Rush patient portal log-in information. This was information that Rush had already previously provided to plaintiffs in discovery. Thus, plaintiffs' minimal discovery production shows there are no real damages at issue in this case.

2) The entire discovery burden has thus fallen on Rush, and Rush has more than met its discovery obligations under Rule 26(b)(1). From a document production perspective alone, which is the lone subject of plaintiffs' motion to compel, Rush has reviewed 91,943 documents for responsiveness and production, and produced 11,922 of these documents, totaling 73,224 pages. These are the key documents in the case: years of organizational charts for the marketing communications department; Rush's internal HIPAA privacy policies and procedures; executive board presentations made by the marketing communications department; campaign-specific reports describing digital strategies; annual, quarterly, monthly and daily reports and dashboards of Rush web-property metrics; and confidential reports from Epic regarding MyChart usage metrics, such as the total number of accounts, the number of active accounts over the

past year, and the number of MyChart log-ins over the past ninety days. Rush will be prepared to address these documents further to the extent desired at the status hearing tomorrow, and the attached addendum analyzes a sampling of these documents for now. (*See* Addendum, Ex. A.)

3) Rush produced these documents pursuant to the parties' agreed upon search terms and custodians. These search terms were never set in stone, however, they were always intended to be a collaborative process. The parties met and conferred over timing for production and plaintiffs wanted the production to go back as far as Rush had so-called tracking technologies on Rush's website. The belief at the time was that this would take the collection and review back to 2011, which Rush believed was way too far from a proportionality perspective, particularly at this pre-class certification stage of the case. *See Miner v. Gov't Payment Serv., Inc.*, 2017 WL 3909508, at *4 (N.D. Ill. Sept. 5, 2017) ("As applied to class actions, this proportionality standard further supports the notion that pre-certification discovery should not exceed what is necessary to permit the Court to make an informed decision on class certification."); *Bilek v. Fed. Ins. Co.*, 2022 WL 18912277, at *3 (N.D. Ill. Dec. 12, 2022) (same).

4) Rush thus, as an initial matter, collected, reviewed and produced email documents over the relevant custodians for a nearly three-year period, from January 1, 2020 to September 30, 2022, the date that plaintiffs filed their initial, original complaint. (Dkt. # 1, Compl.). What this document collection from Rush showed was that certain of the parties' search terms did not work; to take just one example, the term "cid," intended to encompass one single reference to a Google cookie, instead returned 46,959 hits. (Hit Term Search Report # 1, Ex. B.) Thus, once again from a

proportionality perspective, Rush removed the most offensive search terms from the review, and reviewed and produced documents from a narrower group of emails, at that time representing 82,343 documents. (Hit Term Search Report # 2, Ex. C.)

5) Plaintiffs claim there was no meet and confer over this process. (Dkt. # 101, Mem. in Supp. 4.) Yet Rush was never stating that this was the final production, and nothing else would ever be reviewed or produced. The intention was to provide plaintiffs with this initial group of documents, and then the parties could work from this production, based on reviewing the documents contained in this production, to inform the parties' subsequent negotiations over the tailored production of additional documents, based on the documents that Rush had actually produced.

6) The problem the parties are dealing with now is plaintiffs' constant practice of pulling a bait-and-switch. On January 2, 2024, plaintiffs' counsel represented that "Plaintiffs are in the process of putting together revised search terms and will circulate once these are ready, so that the parties can meet and confer further." (*Tues., Jan. 2. 2024 3:04:07 PM email*, at pg. 1, Ex. D.) The parties then jointly went to the Court for an amendment to the scheduling order on January 5, 2024. (Dkt. # 92, Joint Motion.) The Court entered the amended scheduling order on the morning of January 18, 2024. (Dkt. # 95, Min. Entry.) That afternoon, and only after the Court's Order had been entered, Rush then received new correspondence from plaintiffs' counsel for the first time stating that they would not revise the search terms, but wanted Rush to review everything using these search terms, and now going back to January 1, 2016. (Dkt. # 102-7, *January 18, 2024 Correspondence*.)

7) Based on the numbers previously produced, this would likely mean reviewing and collecting approximately upwards of one million additional email documents, in a case where plaintiffs themselves have only produced one. On January 24, 2024, Rush completed and responded to the other issues raised by plaintiffs' letter, and at the same time told plaintiffs in no unequivocal terms that Rush would not be collecting and producing additional emails based on search terms that did not work in a process that would delay the case by months. (*Wed. Jan. 24 8:44 PM email*, at pg. 1, Ex. E.)

8) Plaintiffs did nothing at the time. The parties spent the next two weeks scheduling and preparing for an aggressive and comprehensive deposition schedule, to meet the Court's February 22 deadline. On February 7, 2024, the deposition schedule was finalized, and included six Rush employees (one former), a Rule 30(b)(6) deposition (including testimony from three of these same employees), and the two named witness depositions, all of which were to take place in Chicago between February 13 and February 21, 2024. That evening, only after all the scheduling was done, did plaintiffs then disclose to Rush, again for the first time, that plaintiffs still intended to file a motion to compel raising the same broad document issues that Rush had clearly rejected from two weeks before. (*Wed. Feb. 7 8:33 PM email*, at pg. 1, Ex. F.)

9) The next day plaintiffs confirmed plaintiffs intended to hold these Rush depositions open pending the Court's decision on their forthcoming motion to compel, in the event that additional documents are ordered to be produced from Rush. (Dkt. # 99-1, Ex. A). Thus, from plaintiffs' perspective, these Rush employees should have to sit for their depositions twice, without regard for their time and the fact they have important jobs to do for Rush as a non-profit healthcare provider.

10) In sum, plaintiffs' motion to compel should be denied because it seeks to force Rush to collect and produce documents not based on any narrowing of search terms that did not work, but instead doubling down on these search terms over an additional period of approximately five years in a way that is well outside the bounds of any potential proportional needs of this case, particularly at this pre-class certification stage.

11) As a final point, and in further support of deciding Rush's motion for judgment on the pleadings and in the alternative for interlocutory appeal now, the only basis for plaintiffs' proportionality analysis is their federal Wiretap Act claim: "**Amount in controversy.** The ECPA provides for statutory damages of 'not less than $100 and not more than $1000' per violation. 18 U.S.C. § 2520(c)(1)(B). Given the number of patients who have logged into Rush's patient portal during the relevant time period, even using a conservative estimate or one violation per person who logged in, potential damages in this case could run from the tens of millions into the hundreds of millions of dollars." (Dkt. # 101, Mem. in Supp. 13 (emphasis in original).)

Dated: February 11, 2024

Respectfully submitted,

By: */s/ David Carney*
*Counsel for Defendants*

Bonnie Keane DelGobbo
bdelgobbo@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
Firm No. 46365

David A. Carney
dcarney@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7634

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on February 11, 2024, a true and correct copy of the foregoing *Opposition Brief* was served on counsel of record via the Court's electronic filing system.

*/s/ David Carney*
*Counsel for Rush System for Health*