**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>RUSH SYSTEM FOR HEALTH D/B/A RUSH UNIVERSITY SYSTEM FOR HEALTH,<br><br>Defendant. | CASE NO. 1:22-cv-05380<br><br>HON. MATTHEW F. KENNELLY, JUDGE |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL**

**REDACTED PUBLICLY FILED VERSION**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

LEGAL STANDARD .......... 2

PLAINTIFFS' COUNTER-STATEMENT OF FACTS .......... 3

A. Rush Was on Notice of Its Illegal Conduct Long Before December 2022 .......... 3

B. Rush Did Not Immediately Stop—And Has Resumed—The Wrongful Activity .. 4

ARGUMENT .......... 5

I. THE COURT CORRECTLY FOUND PLAINTIFFS ADEQUATELY INVOKED 18 U.S.C. § 2511(2)(d) .......... 5

A. Rush Was Aware of Its Unlawful Conduct Prior to December 2022 .......... 5

B. Section 2511(2)(d) Does Not Require Rush to Agree Its Conduct Is Unlawful .......... 6

C. Smith v. Facebook Is Irrelevant .......... 8

D. Rush's Criminal and Tortious Conduct Extends Beyond HIPAA .......... 9

II. PLAINTIFFS ADEQUATELY ALLEGE BREACH OF CONTRACT .......... 10

III. PLAINTIFFS ADEQUATELY ALLEGE A VIOLATION OF THE ELECTRONIC COMMUNICATIONS PORTION OF THE ILLINOIS EAVESDROPPING ACT .......... 12

IV. RUSH'S MOTION FOR CERTIFICATION SHOULD BE DENIED .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. BJ's Wholesale Club, Inc.*,
2023 WL 4456956 (Mass. Super. Ct. Jun 21, 2023)....9

*Anderson v. Pan Am. Motors Corp.*,
232 Ill. App. 27 (1924) ....10

*Automed Techs., Inc. v. Microfil, LLC*,
2006 WL 1647505 (N.D. Ill. June 7, 2006), *aff'd in part,*
244 F. App'x 354 (Fed. Cir. 2007) ....10

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ....12

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023)....9

*Bergstrom v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
2004 WL 2973808 (N.D. Ill. Nov. 30, 2004) ....12

*Brewer v. Custom Builders Corp.*,
42 Ill. App. 3d 668 (1976) ....11

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....7

*In re Busse*,
124 Ill. App. 3d 433 (1984) ....10

*Bustos v. Riverside Med. Clinic*,
CVRI2203466 (Cal. Super. Ct. Jan. 30, 2023) ....9

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982) ....13

*CaramelCrisp, LLC v. Putnam*,
2023 WL 422892 (N.D. Ill. Jan. 26, 2023)....11

*Caraway v. OSU*,
Case No. 2022-00859JD (Ohio Ct. Cl. Nov. 3, 2023)....9

*Chi. Title Land Trust Co. v. JS II, LLC*,
2012 IL App (1st) 063420....12, 15

*In re Cmty. Health Data Incident Litig.*,
49D01-2211-PL-041242 (Ind. Super. Ct. Oct. 25, 2023)....9

*Crosby v. Chi.*,
11 Ill. App. 3d 625 (1973)....15

*Cyr v. Orlando Health*,
No. 8:23-cv-588 (M.D. Fl. July 5, 2023)....9

*Dady v. Condit*,
188 Ill. 234 (1900)....10, 11

*Desnick v. Cap. Cities/ABC, Inc*.,
851 F. Supp. 303 (N.D. Ill. 1994), *aff'd in part, rev'd in part sub nom. Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345 (7th Cir. 1995)....7, 10

*Deteresa v. Am. Broad. Cos*,
121 F.3d 460 (9th Cir. 1997)....9

*Doe v. Bon Secours Mercy Health*,
2021 WL 9939010 (Ohio Ct. Com. Pl. Nov. 23, 2021)....9

*Doe v. Boone Health, Inc*.,
2023 WL 4996117 (Mo. Cir. Ct. Jul. 20, 2023)....9

*Doe v. Boston Med. Center Corp*.,
No. 2384CV00326-BLS-1 (Mass. Super. Ct. Sept. 14, 2023)....9

*Doe v. The Children's Hosp. Corp*.,
No. 2384CV00411-BLS-1 (Mass. Super. Ct. Sept. 14, 2023)....9

*Doe v. Emerson Hosp.*,
No. 2277CV01000 (Mass. Super. Ct. Nov. 22, 2023)....9

*Doe v. MedStar*,
Case No. 24-C-20-000591 (Md. Cir. Ct. Aug. 5, 2020)....8

*Doe v. MedStar*,
No. 24-C-20-000591 OG (Md. Cir. Ct. Aug. 5, 2020)....9

*Doe v. Meritas*,
Case No. 22CY-CV11296 (Mo. Cir. Ct. Jul. 26, 2023)....9

*Doe v. Meta Platforms, Inc.*,
Case No. 22-cv-03580 (N.D. Cal. Sept. 7, 2023) ....................9

*Doe v. Partners*,
No. 1984CV01651 (Ma. Super. Ct.) ....................9

*Doe v. Regents of Univ. of Cal.*,
2023 WL 3316766 (N.D. Cal. May 8, 2023) ....................9

*Doe v. Sutter Health*,
Case No. 34-2019-00258072-CU-BT-GDS (Ca. Super. Ct. June 8, 2022) ....................9

*Doe v. UH*,
No. CV 20 933357 (Ohio Ct. Com. Pl. Nov. 16, 2020 & June 25, 2023) ....................9

*Doe v. Va. Mason Med. Ctr.*,
2010 WL 1983046 (Wash. Sup. Ct. Feb. 12, 2020)....................8, 9

*Doe v. Wood*,
Case No. 23 CV 160 (Ohio Ct. Com. Pl. Aug. 17, 2023) ....................9

*Dominion Nutrition, Inc. v. Cesca*,
467 F. Supp. 2d 870 (N.D. Ill. 2006) (Posner, J., sitting by designation)....................10

*Feldstein v. Guinan*,
148 Ill. App. 3d 610 (Ill. App. Ct. 1986) ....................12

*Florsheim v. Travelers*,
75 Ill. App. 3d 298 (Ill. App. Ct. 1979) ....................12

*Florsheim*, *Mitchell v. Elrod*,
275 Ill. App .3d 357, 362 (Ill. App. Ct. 1995) ....................13

*Henly v. Jacobs*,
2019 WL 8333448 (N.D. Cal., Oct. 25, 2019)....................15

*Hentze v. Unverfehrt*,
237 Ill. App. 3d 606 (1992) ....................11

*Intercon Sols., Inc. v. Basel Action Network*,
969 F. Supp. 2d 1026 (N.D. Ill. 2013) ....................2

*Jeffrey v. Chi. Transit Auth.*,
37 Ill. App. 2d 327 (Ill. App. Ct. 1962) ....................10

*Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*,
285 Ill. App. 3d 201 (1996) ..........10

*Krown1 FZC v. Crane Worldwide Logistics*,
2021 WL 1212797 (N.D. Ill. Mar. 31, 2012)..........12

*Martin v. Asset Acceptance, LLC*,
2012 WL 3042524 (N.D. Ill. Jul. 25, 2012)..........14, 15

*Martinez v. River Park Place, LLC*,
2012 Il. App. ..........10, 11

*McNay v. Stratton*,
9 Ill. App. 215 (1881), app. dismissed 109 Ill. 30 (1884)..........13

*Media Logic USA, LLC v. Prinova US, LLC*,
76 Misc.3d 1218(A) (Albany Cnty. Sup. Ct. Sept. 7, 2022)..........14, 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..........6, 8

*Motorola, Inc. v. Lemko Corp.*,
2010 WL 960348 (N.D. Ill., Mar. 15, 2010) (Kennelly, J.)..........2

*Pactiv LLC v. Perez*,
2021 WL 4439393 (N.D. Ill. 2021) ..........10

*R.R. Donnelley & Sons, Co. v. Vanguard Transp. Sys., Inc.*,
641 F. Supp. 2d 707 (N.D. Ill. 2009) ..........10

*Rogers v. BNSF Ry. Co.*,
2022 WL 2208824 (N.D. Ill., Jun. 21, 2022) (Kennelly, J.) ..........15

*Rosenbach v. Six Flags Entm't Corp.*,
2019 Il 123186 (2019) ..........13

*Sharon Leasing, Inc. v. Phil Terese Transp., Ltd.*,
299 Ill. App. 3d 348 (Ill. App. Ct. 1998) ..........12

*Smith v. Driscoll*,
94 Wash. 441 (1917)..........6, 8

*Smith v. Facebook*, 745 F. App'x 8 (9th Cir. 2018)..........8

*Stake v. Knox Community Hosp.*,
2023 WL 5719594 (Ohio Ct. Com. Pl. Aug. 24, 2023)..........9

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d. 1200 (9th Cir. 1999) ....................7

*Tapia-Rendon v. United Tape & Finishing Co. Inc.*,
2024 WL 406513 (N.D. Ill., Feb. 2, 2024) (Kennelly, J.) ....................2

*TAS Distribut. Co. v. Cummins Engine Co.*,
491 F.3d 625 (7th Cir. 2007) ....................11

*Thirteen Inv. Co., Inc. v. Foremost Ins. Co.*,
67 F.4th. 389 (7th Cir. 2023) ....................1

*Thisler v. Hopkins*,
85 Ill. App. 207 (1899) ....................11

*Transp. & Transit Assoc., Inc. v. Morrison Knudsen Corp.*,
255 F.3d 397 (7th Cir. 2001) ....................11

*U.S. Gypsum Co. v. LaFarge N. Am., Inc.*,
508 F. Supp. 2d 601 (N.D. Ill. 2007) ....................11, 12

*U.S. v. Lam*,
271 F. Supp. 2d 1182 (N.D. Cal. 2003) ....................7

*Walker v. Ridgeview Constr. Co., Inc.*
316 Ill. App. 3d 592 (Ill. App. Ct. 2000), *appeal denied*,
193 Ill. 2d 600 (2001) ....................12

*Warren v. Pomona Valley Hosp. Med. Ctr.*,
Case No. 23STCV05324 (Cal. Super. Ct. Nov. 14, 2023) ....................9

*Yockey v. Salesforce, Inc.*,
2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ....................9

**Statutes**

720 ILCS 5/14-6 ....................12
815 ILCS 505/10a ....................14
15 U.S.C. § 1681n....................15
18 U.S.C. § 2511(2)(d) ....................5, 6
42 U.S.C. § 1320d-6 ....................6

**Other Authorities**

Illinois House Trans., 2013 Reg. Sess. No. 38 ....................14

Restatement (Second) of Contracts § 346(2) & cmt. b ........................................................ 11
Williston on Contracts § 1345 ........................................................................................ 11

## INTRODUCTION

Although styled as a motion for judgment on the pleadings pursuant to Rule 12(c), Rush's motion is an improper motion for reconsideration of this Court's ruling on Rush's earlier motion to dismiss. While governed by the same standard of review, Rule 12(c) also permits a defendant to seek dismissal where an uncontested affirmative defense in an Answer would dispose of case even where a complaint sufficiently pleads claims on its face—for example, a prior release, or a statute of limitations. Here, however, Rush never once cites to its Answer, nor mentions any affirmative defense—Rush instead simply ***denies*** the allegation that it knowingly violated HIPAA prior to the December 2022 HHS bulletin—or as Rush asks, "How could Rush have in mind a purpose to commit a crime when, at the time of the alleged disclosures in question, Rush was not on notice that HIPAA even applied to the alleged transferences of internet information at issue?" Mot. at 1. But Rush's denial is not an affirmative defense, *see Thirteen Inv. Co., Inc. v. Foremost Ins. Co.*, 67 F.4th 389, 391-92 (7th Cir. 2023) and thus not a proper basis for a Rule 12(c) motion.[1]

Rush's motion also rests on a straw-man fallacy: Plaintiffs do not allege the HHS bulletin is the beginning of (and sole basis for) Rush's privacy obligations; but that it further supports for the strength of Plaintiffs' claims. This case was filed many months before the HHS bulletin was issued and the claims could rise or fall irrespective of when or whether the bulletin was issued.

Rush also asks this Court to reconsider its earlier order allowing breach of contract and Illinois Eavesdropping Act claims to proceed, without identifying any proper basis for reconsideration. Plaintiffs respond to Rush's arguments on the merits, but also request that the

[1] Rule 12(d) permits the Court to accept evidence outside the pleadings and convert the motion into one for summary judgment. But counsel's factual denials regarding state of mind are not "evidence" which could form the basis of a summary judgment ruling. Equally importantly, discovery confirms [redacted]. Plaintiffs provide a few samples below for illustration purposes in the event the Court accepts Rush's factual assertions.

Court simply strike this portion of the motion.

And finally, as to the ECPA claim, Rush seeks certification of a question for interlocutory review—but the proposed question is not a controlling question of pure law. Rush does not dispute that the Wiretap Act portion of the ECPA has a crime/tort exception, but instead disputes this Court's earlier determination that the Plaintiffs properly pled the exception in this particular case. Such a determination is a mixed question of fact and law and is not a proper basis for certification. Plaintiffs therefore request that the motion be denied.

## LEGAL STANDARD

"A motion to reconsider is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion. Rather, a motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Tapia-Rendon v. United Tape & Finishing Co. Inc.*, 2024 WL 406513, at *2 (N.D. Ill., Feb. 2, 2024) (internal citations and quotation marks omitted) (Kennelly, J.).

"A motion for judgment on the pleadings under Rule 12(c) is considered under the same standard that applies to a Rule 12(b)(6) motion." *Motorola, Inc. v. Lemko Corp.*, 2010 WL 960348, at *2 (N.D. Ill., Mar. 15, 2010) (Kennelly, J.); *accord*, *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1056 (N.D. Ill. 2013) ("The Court accepts as true all facts alleged in the Complaint and construes all reasonable inferences in favor of the non-moving party."). The Court may only look to the Complaint and Answer and attachments thereto, *Intercon Sols.,* 969 F. Supp. 2d at 1056, except as permitted under Rule 12(d).

## PLAINTIFFS' COUNTER-STATEMENT OF FACTS

As noted above, Plaintiffs object to Rush offering new factual assertions and moving to dismiss based on those assertions (specifically, Rush's claim that Rush was not on notice of its HIPAA violations prior to the December 2022 HHS bulletin, and Rush's claim that the offending activity has stopped). Rule 12(c) does not authorize Rush to go beyond the pleadings and make these factual assertions. If, however, the Court were considering accepting Rush's assertions under Rule 12(d), the Court should also see that discovery has revealed [redacted].

### A. Rush Was on Notice of Its Illegal Conduct Long Before December 2022

Rush has repeatedly argued that the at-issue information does not constitute protected health information or "PHI." *See* Dkt. 50 at 13; Dkt. 21 at 1. However, *at all times relevant to this case*, Rush internally admitted that [redacted]. For example:

- [redacted]" RUSH0010613 at -616.
- [redacted] RUSH0002604 at -623.
- [redacted]. RUSH0002507 at -519.
- [redacted] RUSH0034917 at -927.

[redacted]

[redacted]

- [redacted]
- [redacted]
- [redacted] *Id.*

This evidence demonstrates Rush was not just on explicit notice it was violating HIPAA before the Bulletin but had contractually adopted those same principles in its own policies. Thus, Rush's surprise from the Bulletin was not from learning that its conduct was illegal, but from realizing that it stood to face legal consequences for ignoring its privacy obligations to patients.

### B. Rush Did Not Immediately Stop—And Has Resumed—The Wrongful Activity

Rush also argues that it "took immediate action to change Rush's website" "following" the HHS Bulletin that was published in December 2022. Mot. at 7. This statement is misleading. Rush did not change any of its practices until late March 2023—and only after this Court ruled that

Plaintiffs had adequately stated claims under the IDTPA. Further, based on Plaintiffs' continuing investigation, it appears that Rush never stopped disclosing patient information to Google at www.rush.edu relating to doctors, treatments, conditions, payments, and appointments. In fact, Rush *began* making new disclosures *to Microsoft* after March 2023. Finally, Plaintiffs' investigation suggests Rush has re-implemented some Google source code on its patient portal. Plaintiffs are happy to provide an expert report to the Court to detail these findings upon request.

## ARGUMENT

### I. THE COURT CORRECTLY FOUND PLAINTIFFS ADEQUATELY INVOKED 18 U.S.C. § 2511(2)(d)

Under the Electronic Communications Privacy Act ("ECPA"), a person may not acquire the contents of an electronic communication where the interception is "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiffs Second Amended Complaint ("SAC") adequately alleged that Defendant Rush acted with criminal or tortious purposes in engaging in the actions at issue in this case. SAC ¶¶ 319–344. And this Court agreed. Dkt. 81 at 4–7. Yet, Rush asks the Court to re-consider its opinion—again—arguing that it could not possibly have had criminal or tortious intent based on the timing of an HHS Bulletin and the earlier *Smith v. Facebook* decision that has nothing to do with this case. Rush's argument is legally and factually flawed.

#### A. Rush Was Aware of Its Unlawful Conduct Prior to December 2022

Rush falsely represents the December 2022 HHS Bulletin reminder was the first time it received notice its conduct could be unlawful. However, this is provably false. As noted above, [redacted]. But even just considering the allegations in the Complaint, the federal government has warned healthcare providers since at least 2000 that the conduct alleged in this case is wrongful. *See* SAC ¶¶ 169–189. In fact, the December 2022 Bulletin—which simply

memorializes *Rush's own policies*—states that "***it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors***." SAC ¶ 178.

Further, medical ethical prohibitions against sharing patient information for non-healthcare purposes is ancient and modern. *See* [redacted]; SAC ¶ 211 (Hippocratic oath circa 400 B.C.), ¶¶ 213–217 (Modern AMA ethical rules, including that healthcare providers "must seek to protect patient privacy in all settings to the greatest extent possible."). Courts have agreed—for more than a century. *See Smith v. Driscoll*, 94 Wash. 441, 442 (1917) ("Neither is it necessary to pursue at length the inquiry of whether a cause of action lies in favor of a patient against a physician for wrongfully divulging confidential communications. . . . for so palpable a wrong, the law provides a remedy."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 783 (N.D. Cal. 2022) ("Our nation recognizes the importance of privacy in general and health information in particular: the safekeeping of this sensitive information is enshrined under state and federal law.").

### B. Section 2511(2)(d) Does Not Require Rush to Agree Its Conduct Is Unlawful

Putting the factual issues aside, Rush misapplies the plain language of 18 U.S.C. § 2511(2)(d), which does not require a defendant to agree it was engaged in criminal or tortious activity. Rather, it merely states the defendant must not intercept a communication for "the purpose of committing any criminal or tortious act." *Id.* Here, Rush indisputably used the tracking technology at issue *knowingly, and for the purpose of, disclosing patient individually identifiable health information* for commercial or personal gain—a crime. 42 U.S.C. § 1320d-6(a)(3). The Court has already (correctly) found Plaintiffs adequately alleged Rush intercepted their communications for the criminal purpose of sharing patient data with Facebook, Google, and

others for marketing purposes. Dkt. 81 at 4–6. Rush's purposeful and intentional conduct violates the provisions of 42 U.S.C. § 1320d-6 whether Rush agrees or not. Nothing more is required.

Here's Rush's conduct is *per se* illicit. For this reason, *Desnick* is inapplicable because it grappled with facts not present here. *Desnick* acknowledged the outcome of the case turned on a factual issue of ABC's subjective purpose because there was a plausible *permissible* purpose (*i.e.* recording for the purposes of legal journalism) and a plausible *tortious* purpose (*i.e.* recording for illicit defamation). 44 F.3d 1345, 1353 (7th Cir. 1995). However, "by the plaintiffs' own account" ABC's uncontested purpose was investigative reporting, a non-tortious purpose. *Id.* at 1353. Therefore, the court resolved the undisputed fact issue in ABC's favor and found § 2511(2)(d) did not apply to conduct motivated by journalism. *Id.* at 1353–54.

This case bears no resemblance to *Desnick* because there is no plausible permissible explanation for Rush's conduct, let alone an *undisputed* permissible purpose. Rush intercepted patient protected health information and communications content for the purpose of disclosing them to third parties (with whom Rush did not have a business associate agreement) for personal and commercial advantage without consent. SAC ¶¶ 1-5, 35-121. To be clear, it is not now—nor has it ever been—legal for a health care provider to sell or share patient data for marketing purposes. *See* SAC ¶¶ 169–189. Courts have consistently held that a "partially lawful purpose" does not "sanitize" an interception "made for an illegitimate purpose." *Sussman v. Am. Broad. Cos., Inc.,* 186 F.3d. 1200, 1202 (9th Cir. 1999). Likewise, profit or commercial activity is not a defense where the underlying actions are unlawful. *U.S. v. Lam*, 271 F. Supp. 2d 1182, 1184 (N.D. Cal. 2003) (interception for illicit commercial purpose invoked exception); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (intercepting communications for the purpose of associating plaintiffs' data with preexisting user profiles was "further use" of the

plaintiffs' data that invoked exception). Therefore, at worst, Rush engaged in per se illegal or tortious conduct. At best, there is a factual dispute regarding its purpose. Either way, the Court cannot grant Rush's motion.

**C. Smith v. Facebook Is Irrelevant**

Rush argues it engaged in the conduct at issue under good faith reliance on an unreported Ninth Circuit decision, *Smith v. Facebook,* 745 F. App'x 8, 9 (9th Cir. 2018). First, there is no evidence Rush was aware of, let alone relied upon, an unreported out-of-circuit opinion that addressed neither the parties nor the conduct at issue. Instead, it appears to be a post hoc justification by counsel. Second, it is difficult to image any counsel would advise a hospital it could violate its patients' privacy based on a case that has no relevance to Rush's proposed course of conduct because: (1) the *Smith* plaintiffs were not patients; (2) the websites in *Smith* included entities that were not healthcare providers; (3) the *Smith* plaintiffs did not allege any transmissions relating to patient portals or make any distinctions between communications about doctors, treatments, conditions, and payments from any other communications; and (4) the technology was different. In fact, *Smith*'s only relevance to hospitals comes from the Ninth Circuit's observation during oral argument that the plaintiffs' "beef" *was with hospitals* "***which can be sued elsewhere.***":

> That's really your beef. It's with the medical providers that ought not be putting this stuff out on Facebook … and so, obviously they've been dismissed for lack of personal jurisdiction, they can be sued elsewhere presumably, but it strikes me that, if there's a problem, it isn't with Facebook, it's with the healthcare providers."[2]

The Court does not need to take Plaintiffs' word—every court to consider *Smith* in this context has rejected it. *See Doe v. Va. Mason Med. Ctr.*, 2010 WL 1983046 (Wash. Sup. Ct. Feb. 12, 2020); *Doe v. MedStar*, Case No. 24-C-20-000591 (Md. Cir. Ct. Aug. 5, 2020); *In re Meta*

[2] *See* https://youtu.be/abPc-fhAlyE?si=VrcLTFqggLGGVlmm&t=401 for video of this question.

*Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022); *In re Meta Pixel II*. More to the point, 24 courts have now denied motions to dismiss similar claims against hospitals.[3]

### D. Rush's Criminal and Tortious Conduct Extends Beyond HIPAA

Even if Rush did not disclose Plaintiffs' information with the purpose of violating HIPAA, courts have held that an intent to engage in unfair business practices is sufficient to invoke the "tortious or criminal intent" exception. *See Deteresa v. Am. Broad. Cos*, 121 F.3d 460, 467, n. 4 (9th Cir. 1997) (invasion of privacy, fraud, and unfair business practices are sufficient unlawful purposes to invoke exception). Here, Plaintiffs adequately alleged intent to engage in unfair business practices under the Illinois Deceptive Trade Practices Act for conduct that occurred before March 2023. *See* Dkt. 31 at 17–18.[4]

---

[3] *Doe v. Sutter Health*, Case No. 34-2019-00258072-CU-BT-GDS (Ca. Super. Ct. June 8, 2022); *Barbour v. John Muir Health*, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023); *Bustos v. Riverside Med. Clinic*, CVRI2203466 (Cal. Super. Ct. Jan. 30, 2023); *Doe v. Regents of Univ. of Cal.*, 2023 WL 3316766 (N.D. Cal. May 8, 2023); *Yockey v. Salesforce, Inc*., 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023); *Doe v. Meta Platforms, Inc.*, Case No. 22-cv-03580 (N.D. Cal. Sept. 7, 2023); *Warren v. Pomona Valley Hosp. Med. Ctr.*, Case No. 23STCV05324 (Cal. Super. Ct. Nov. 14, 2023); *Cyr v. Orlando Health,* No. 8:23-cv-588 (M.D. Fl. July 5, 2023); *In re Cmty. Health Data Incident Litig.*, 49D01-2211-PL-041242 (Ind. Super. Ct. Oct. 25, 2023); *Doe v. MedStar*, No. 24-C-20-000591 OG (Md. Cir. Ct. Aug. 5, 2020); *Doe v. Partners*, No. 1984CV01651 (Ma. Super. Ct.); *Alves v. BJ's Wholesale Club, Inc.*, 2023 WL 4456956 (Mass. Super. Ct. Jun 21, 2023); *Doe v. Boston Med. Center Corp.*, No. 2384CV00326-BLS-1 (Mass. Super. Ct. Sept. 14, 2023); *Doe v. The Children's Hosp. Corp.*, No. 2384CV00411-BLS-1 (Mass. Super. Ct. Sept. 14, 2023); *Doe v. Emerson Hosp.*, No. 2277CV01000 (Mass. Super. Ct. Nov. 22, 2023); *Doe v. Boone Health, Inc*., 2023 WL 4996117 (Mo. Cir. Ct. Jul. 20, 2023); *Doe v. Meritas*, Case No. 22CY-CV11296 (Mo. Cir. Ct. Jul. 26, 2023); *Doe v. UH*, No. CV 20 933357 (Ohio Ct. Com. Pl. Nov. 16, 2020 & June 25, 2023); *Doe v. Bon Secours Mercy Health*, 2021 WL 9939010 (Ohio Ct. Com. Pl. Nov. 23, 2021); *Doe v. Wood*, Case No. 23 CV 160 (Ohio Ct. Com. Pl. Aug. 17, 2023); *Stake v. Knox Community Hosp*., 2023 WL 5719594 (Ohio Ct. Com. Pl. Aug. 24, 2023); *Caraway v. OSU*, Case No. 2022-00859JD (Ohio Ct. Cl. Nov. 3, 2023); *Doe v. Virginia Mason*, No. 19-2-26674-1 SEA (Wash. Super. Ct. Feb. 12, 2020).

[4] Although the Court found that Rush's changed conduct negated a claim for injunctive relief under the DTPA (Dkt. 60 at 14–16) nothing in the opinion reversed the previous ruling that Plaintiffs had otherwise stated a claim. Further, Plaintiffs are filing a motion to reconsider the Court's ruling on the DTPA claim based on Rush's subsequent conduct demonstrating that the factual bases for the Court's ruling have been overcome by subsequent actions by Rush—namely, its continued actions with respect to Google at www.rush.edu, its decision to add Microsoft as a third-party to which it sends patient data, and its decision to put Google source code back on the patient portal.

## II. PLAINTIFFS ADEQUATELY ALLEGE BREACH OF CONTRACT

Rush argues that the breach of contract claim fails as a matter of law because Plaintiffs fail to allege a viable theory of actual damages. According to Rush, because the Court has rejected Plaintiffs' damages as a "pecuniary loss" under the ICFA, Plaintiffs' contract damages are necessarily insufficient as well. But Rush misreads Illinois contract law.

First, under Illinois law, the victim of a breach of contract is entitled to an award of nominal damages even where the breach caused no harm. *Desnick v. Cap. Cities/ABC, Inc.*, 851 F. Supp. 303, 311 (N.D. Ill. 1994), *aff'd in part, rev'd in part sub nom. Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345 (7th Cir. 1995) ("[T]he victim of a breach of contract is entitled to nominal damages, even if the plaintiff was not injured by the breach, because the breach itself is the wrong."); *Automed Techs., Inc. v. Microfil, LLC*, 2006 WL 1647505, at *4 (N.D. Ill. June 7, 2006), *aff'd in part,* 244 F. App'x 354 (Fed. Cir. 2007) ("However, AutoMed has not shown to any degree of certainty that it suffered a harm due to Gerold's breach of contract. Therefore, based on all the evidence, we conclude that the only appropriate award of damages to AutoMed would be an award of nominal damages…"); *Dominion Nutrition, Inc. v. Cesca*, 467 F. Supp. 2d 870, 882 (N.D. Ill. 2006) (Posner, J., sitting by designation) ("Injury is not required for a breach of contract. The victim of such a breach, even if not injured, is entitled to an award of nominal damages."); *Pactiv LLC v. Perez*, 2021 WL 4439393, at *4 (N.D. Ill. 2021) ("Regardless of whether [the plaintiff] suffered harm, Illinois law allows a plaintiff that established a breach to recover at least nominal damages."); *R.R. Donnelley & Sons, Co. v. Vanguard Transp. Sys., Inc.*, 641 F. Supp. 2d 707, 726 (N.D. Ill. 2009); *Dady v. Condit,* 188 Ill. 234, 237 (1900); *Jeffrey v. Chi. Transit Auth.*, 37 Ill. App. 2d 327, 330 (Ill. App. Ct. 1962); *In re Busse*, 124 Ill. App. 3d 433, 439 (1984); *Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*, 285 Ill. App. 3d 201, 213 (1996); *Martinez v. River Park*

*Place, LLC*, 2012 Il. App. (1st) 111478 (Ill. App. Ct. 2012); *Anderson v. Pan Am. Motors Corp*., 232 Ill. App. 27, 36 (1924) ("any breach of contract entitles the injured party to at least nominal damages."); *Brewer v. Custom Builders Corp.*, 42 Ill. App. 3d 668, 677–78 (1976); *Hentze v. Unverfehrt*, 237 Ill. App. 3d 606, 612 (1992); *Thisler v. Hopkins*, 85 Ill. App. 207, 212 (1899) ("If a breach of contract were clearly shown, it might entitle the plaintiff to nominal damages."); *see also* Restatement (Second) of Contracts § 346(2) & cmt. b; Williston on Contracts § 1345.

The *Dady* case cited by *Martinez* appears to be the only case from the Illinois Supreme Court that speaks clearly to the question—and to plaintiffs' knowledge, it has not been questioned by any subsequent Illinois Supreme Court opinion. Its answer: a valid contract plus breach is "sufficient to establish the plaintiff's right to mere nominal damages."

> The only contested question before the last jury was as to the damages. It is asserted in the argument of counsel for appellant that, upon the declaration and plea, he was not liable even for nominal damages; but the claim is not seriously insisted upon, as it could not be under the proofs. The validity of the agreement had already been determined by this court, and the defendant's failure and refusal to perform it was clearly established by the evidence, and not denied by him. These facts were sufficient to establish the plaintiff's right to mere nominal damages.

*Dady*, 118 Ill. at 237.

Rush's argument appears to arise out of a misreading of *CaramelCrisp, LLC v. Putnam*, 2023 WL 422892, at *4 (N.D. Ill. Jan. 26, 2023), which relies upon *U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 639 (N.D. Ill. 2007) and *TAS Distribut. Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007). The holdings in those cases derive entirely from a statement in *Transp. & Transit Assoc., Inc. v. Morrison Knudsen Corp.*, 255 F.3d 397, 401 (7th Cir. 2001):

> On TTA's understanding of what ¶ 4 means, MKC broke its promise; neither MKC nor Amerail (after the delegation in 1995) even once offered TTA an opportunity to meet another subcontractor's bid. *But this does not matter unless TTA can show damages, and the district court held that it could not do so*." (emphasis added).

But the parties in *TTA* did not dispute the availability of nominal damages and the issue was not

before the Court.[5] Further, nothing in *TTA* or Rush's other cited cases suggest the courts intended to disagree with the century's long body of Illinois case law, which hold a breach of a contract gives rise to at least nominal damages. Even so, Plaintiffs *do* allege harm from Rush's breach. *See* SAC, ¶ 361. Even under Rush's interpretation of the law, to the extent the Court has rejected Plaintiffs' *quantification* of these damages, Plaintiffs are still entitled to a nominal recovery. Put simply, nominal damages are perhaps most appropriate in situations where quantification of harm is difficult. This may be one such case.

## III. PLAINTIFFS ADEQUATELY ALLEGE A VIOLATION OF THE ELECTRONIC COMMUNICATIONS PORTION OF THE ILLINOIS EAVESDROPPING ACT

The Illinois Eavesdropping Act provides, in relevant part: "Any or all parties to any . . . electronic communication upon which eavesdropping is practiced contrary to this Article *shall be* entitled to the following remedies: (a) To an injunction by the circuit court prohibiting further eavesdropping . . .; (b) To all actual damages . . .; (c) To any punitive damages which may be awarded by the court or by a jury. 720 ILCS 5/14-6.

Nevertheless, Rush argues that "a plaintiff can only be awarded punitive damages where actual damage is shown." Mtn. at 10, *Florsheim v. Travelers*, 75 Ill. App. 3d 298, 309–310 (Ill. App. Ct. 1979). Rush is "simply wrong. . . . While an award of punitive damages cannot stand alone, an award of nominal damages can support the assessment of punitive damages in the case of an intentional tort." *Chi. Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420 ¶ 88.

---

[5] The same is true for other cases cited by *Rush* and in *Gypsum*. *See Ill. Bell Tel. Link Up II,* 2013 Il. App. (1st) 113349 (Ill. App. Ct. 2013)*; Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill. 2d 100, 149 (2005); *Krown1 FZC v. Crane Worldwide Logistics,* 2021 WL 1212797 (N.D. Ill. Mar. 31, 2012) (Rush's cases); *Walker v. Ridgeview Constr. Co., Inc.* 316 Ill. App. 3d 592 (Ill. App. Ct. 2000), *appeal denied*, 193 Ill. 2d 600, 253 (2001); *Sharon Leasing, Inc. v. Phil Terese Transp., Ltd.,* 299 Ill. App. 3d 348 (Ill. App. Ct. 1998); *Feldstein v. Guinan,* 148 Ill. App. 3d 610 (Ill. App. Ct. 1986); *Bergstrom v. Ne. Ill. Reg'l Commuter R.R. Corp.,* 2004 WL 2973808 *3 (N.D. Ill. Nov. 30, 2004) (*Gypsum* cases).

Thus, Rush's reliance on *Florsheim*, *Mitchell v. Elrod*, 275 Ill. App .3d 357, 362 (Ill. App. Ct. 1995), and *By-Prod Corp. v. Armen-Berry Co*., 668 F.2d 956, 961–962 (7th Cir. 1982) is misplaced. All three cases conflict with more recent and binding Illinois authority. In fact, *By-Prod Corp.* did not conclusively decide or rest its opinion on Rush's argument that "punitive damages" are unavailable under the Eavesdropping Act in the absence of actual damages. Rather, the issue was whether the plaintiff could remain in federal court on an Illinois Eavesdropping Act claim when the related federal claim had been dismissed and the plaintiff could not prove more than $10,000 was at stake because the defendant "had a lawful purpose when he made the interception." *By-Prod. Corp*., 668 F.2d at 962. Thus, having found that the defendant had a "lawful purpose," the Court concluded there was no reasonable circumstance where the plaintiff could obtain punitive damages sufficient to confer federal jurisdiction. *Id*. Contrary to Rush's argument, *By-Prod Corp*. expressly stated that it did not "rest" its decision "entirely" on the line of cases suggesting punitive damages are not available in Illinois in the absence of actual harm. *Id*. at 961. Instead, the Court said, "it would be dangerous to do so in light of *McNay v. Stratton*, 9 Ill. App. 215 (1881), app. dismissed 109 Ill. 30 (1884), where . . . an Illinois appellate court held that punitive damages could be awarded in a false-imprisonment case without proof of any actual damages." *By-Prod. Corp*., 668 F.2d at 961.

Nor can Rush rely on the structure of the statute for its argument. The Illinois Supreme Court recently held that a statute with a similar structure permitted recovery of statutory damages even in the absence of actual damages, explaining the plain language of the statute unambiguously allowed recovery for any person "aggrieved" by a violation and "when the General Assembly has wanted to impose such a requirement [of actual damages], it has made that intention clear."

*Rosenbach v. Six Flags Entm't Corp.*, 2019 Il 123186 (2019). The same logic applies here.[6] The statute in question states that any party to any "electronic communication upon which eavesdropping is practiced . . . *shall be entitled*" to the relief offered under the Act, specifically including "punitive damages as may be awarded by the court or by a jury" as a separate and independent category from "actual damages." If the legislature had intended the statute to work as Rush insists, it would have drafted the cause of action section in same manner as the Illinois Consumer Fraud and Deceptive Business Practices Act and limited the action to "any person who suffers actual damages as a result of a violation." 815 ILCS 505/10a As a result, the Court here cannot re-write the statute to Rush's preference. The venue for Rush to change the statutory language it does not like is with the Illinois legislature, not this Court.

Finally, Rush's citations to *Media Logic USA, LLC v. Prinova US, LLC*, 76 Misc.3d 1218(A) (Albany Cnty. Sup. Ct. Sept. 7, 2022) and *Martin v. Asset Acceptance, LLC*, 2012 WL 3042524 (N.D. Ill. Jul. 25, 2012) are misleading. Both cases support Plaintiffs, not Rush. In *Media Logic*, a New York state court held actual damages were unavailable under the Eavesdropping Act because the plaintiffs had not proven actual damages and then separately analyzed and rejected a claim for punitive damages because it held the defendant made a good-faith mistake. If punitive damages were not recoverable in the absence of actual damages it would not have been necessary

---

[6] The only legislative history Plaintiffs could find on the civil liability section for electronic communications states as follows:

> **Clerk Hollman**: "House Bill 3038, a Bill for an Act concerning criminal law. Third Reading of this House Bill." ….
>
> **Williams**:…This Bill simply creates a corollary civil remedy for eavesdropping based on electronic communication. Currently, it's already a civil penalty for a regular conversation for eavesdropping, and it is criminal violation to eavesdrop whether by conversation or electronic communication. **This, simply, extends it in the civil section of the Criminal Code providing for civil remedies for electronic communications**. …I know of no opposition."
>
> **Speaker Riley**: "…this Bill, having received the Constitutional Majority, is hereby declared passed."

Illinois House Trans., 2013 Reg. Sess. No. 38 (emphasis added). Contrary to this brief but clear legislative record, Rush asks this Court rule that violation of the statute actually did not create a civil remedy.

for the *Media Logic* court to consider them after having disposed of the actual damages issue. In *Martin*, the Court dismissed a claim under one portion of a federal statute that has no relevance here because that portion of the statute required allegations of "actual damages" for *negligent* violations of the statute—and only allowed the recovery of "actual damages" plus "reasonable attorney's fees as determined by the court." *Martin*, 2012 WL 3042524 at *2–4 (analyzing 15 U.S.C. § 1681o(a)). However, the same court found actionable claims for statutory damages for "willful" violations of the same statute even though it had already found that the plaintiff did not adequately allege actual damages. *Id.* at *4–5, analyzing 15 U.S.C. § 1681n, which permits recovery for "actual damages" or "statutory damages" or "such amount of punitive damages as the court may allow."[7]

## IV. RUSH'S MOTION FOR CERTIFICATION SHOULD BE DENIED

Consistent with the Court' comments during the February 13 conference, Rush's request for interlocutory certification of the ECPA claim is unwarranted and should be denied. Rush does not dispute the Wiretap Act portion of the ECPA has a tort/crime exception—instead, Rush disagrees with this Court's determination under Rule 12(b)(6) that the Plaintiffs sufficiently pled facts to support a claim under the statute, which is the "antithesis" of a pure question of controlling law. *Henly v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal., Oct. 25, 2019). In *Sterk*, cited by Rush, certification was granted to decide a pure legal question, not whether the claim was sufficiently pled. Mot. at 13. Rush also fails to demonstrate how interlocutory appeal of the Wiretap Act issue would "speed up the litigation," *Rogers v. BNSF Ry. Co*., 2022 WL 2208824, at *2 (N.D. Ill., Jun. 21, 2022) (Kennelly, J.). Rush's request for interlocutory certification of the ECPA claim is unwarranted and should be denied.

[7] The logic of how damages are treated for "negligent" versus "willful" conduct in 15 U.S.C. § 1681 is consistent with how Illinois law distinguishes between negligent versus intentional conduct. *See Crosby v. Chi.*, 11 Ill. App. 3d 625, 630 (1973); *Chi. Title Land Trust Co. v. JS II, LLC*, ¶ 88, *supra.*

Dated: February 19, 2024

Respectfully Submitted,

*/s/ Corban S. Rhodes*
**DICELLO LEVITT LLP**
Adam J. Levitt
Amy E. Keller
Nada Djordjevic
Ten North Dearborn St., Sixth Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
Fax.: (312) 253-1443
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com

**DICELLO LEVITT LLP**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes
485 Lexington Ave., 10th Floor
New York, NY 10017
Tel.: (646) 933-1000
Fax.: (646) 494-9648
dstraite@dicellolevitt.com
crhodes@dicellolevitt.com

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes
Eric Johnson
Jennifer Paulson
112 Madison Avenue, 7th Floor
New York, NY 10016-7416
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
ejohnson@simmonsfirm.com
jpaulson@simmonsfirm.com

***Counsel for Plaintiffs and the Proposed Class***

**CERTIFICATE OF SERVICE**

I certify that on February 19, 2024, I filed the foregoing document with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system.

*/s/ Corban Rhodes*
Corban Rhodes