**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-05380 |
| v. | ) | The Honorable Matthew F. Kennelly, Judge |
| RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH, | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF RUSH'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR INTERLOCUTORY APPEAL**

## TABLE OF CONTENTS

**Page**


*1) Rush is not making a motion for reconsideration.* ......... *1*

*2) Rush is not "simply denying" the allegation Rush knowingly violated HIPAA.* ......... 2

*3) Department of Health & Human Services Bulletin.* ......... 2

*4) Plaintiffs' new evidence.* ......... 3

*5) "Plaintiffs are happy to provide an expert report."* ......... 5

*6) Transferred intent under the Wiretap Act.* ......... 6

*7) Actual damages on breach of contract claim.* ......... 7

*8) Illinois Eavesdropping Act civil remedies provision.* ......... 8

*9) Certification for interlocutory appeal under 28 U.S.C. § 1292(b):* ......... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bates v. Green Farms Condo. Ass'n*,
958 F.3d 470 (6th Cir. 2020) ....................3

*Caro v. Weintraub*,
618 F.3d 84 (2d Cir. 2010)....................7

*Chi. Title Land Trust Co. v. JS II, LLC*,
2012 IL App (1st) 063420....................8

*In re Dealer Mang't Sys. Antitrust Litig.*,
--- F. Supp. 3d ----, 2023 WL 4297644 (N.D. Ill. June 29, 2023) ....................7, 8

*Desnick v. American Broadcasting Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995) ....................6, 10

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................6

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012) ....................3, 5

*Henley v. Jacobs*,
2019 WL 8333448 (N.D. Cal. Oct. 25, 2019)....................10

*Kurowski v. Rush System for Health*,
--- F. Supp. 3d ----, 2023 WL 4707184 (N.D. Ill. July 24, 2023)....................3

*MG Design Assoc., Corp. v. CoStar Realty Info., Inc.*,
267 F. Supp. 3d 1000 (N.D. Ill. 2017) ....................1, 2

*Peterson v. Wexford Health Sources, Inc.*,
986 F.3d 746 (7th Cir. 2021) ....................10

*Redding v. Fairman*,
717 F.2d 1105 (7th Cir. 1983) ....................8

*Roe v. Bridgestone Corp.*,
492 F. Supp. 988 (S.D. Ind. 2007)....................3

*Rogers v. BNSF Railway Co.*,
2022 WL 2208824 (N.D. Ill. June 21, 2022)....................9

*Rosenbach v. Six Flags Entertainment Corp.*,
2019 IL 123186 (2019) ........................................ 8

*Schlosser v. Kwak*,
16 F.4th 1078 (2d Cir. 2021) ........................................ 3

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) ........................................ 9, 10

*TAS Distributing Co. v. Cummins Engine Co., Inc.*,
491 F.3d 625 (7th Cir. 2007) ........................................ 7, 8

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013)........................................ 7

*Vasich v. City of Chicago*,
2013 WL 80372 (N.D. Ill. Jan. 7, 2013) ........................................ 1

**Statutes, Rules & Other Authorities**

720 ILCS 5/14-6 ........................................ 8

740 ILCS 14/20........................................ 9

18 U.S.C. § 2520........................................ 1

28 U.S.C. § 1292........................................ 9

42 U.S.C. § 1320........................................ 3

FED. R. CIV. PRO. R. 12 ........................................ 2

45 C.F.R. § 164.514 ........................................ 5

The Court may at some point be wondering why we are all continuing to fight and fight about the federal Wiretap Act. Plaintiffs' statements in their motion to compel made this clear:

> **Amount in controversy.** The ECPA provides for statutory damages of 'not less than $100 and not more than $1000' per violation. 18 U.S.C. § 2520(c)(1)(B). Given the number of patients who have logged into Rush's patient portal during the relevant time period, even using a conservative estimate or one violation per person who logged in, potential damages in this case could run from ***the tens of millions into the hundreds of millions of dollars***.

(Dkt. # 101, *Mem. in Supp.* 13 (initial emphasis in original, second emphasis added).)

Rush will not tire of or from the fight, because Rush believes it is right. Absent from plaintiffs' opposition brief is any attempt to defend their claims for actual damages on the merits.

Rush respectfully submits the following reply brief in support its motion for judgment on the pleadings or, in the alternative, for interlocutory appeal:

***1) Rush is not making a motion for reconsideration.*** Plaintiffs first argue that "Rush's motion is an improper reconsideration of this Court's ruling on Rush's earlier motion to dismiss." (Opp. 1.) This is not correct, for three reasons. *First*, Rush has never moved to dismiss plaintiffs' second amended complaint, which was just filed on December 20, 2023. (Dkt. # 86, *2d Am. Compl.*) Rush argued that leave to amend should be denied based on futility, but even here the primary focus of the analysis was different in terms of whether plaintiffs had alleged new facts to meet the Court's prior orders. (Dkt. # 73, *Opp. Br. 8-9.*) *Second*, "[a]n amended complaint 'supersedes all prior pleadings, and it is well-settled that defendants are entitled to use the clean slate that plaintiffs are afforded when amendment is permitted.'" *MG Design Assoc., Corp. v. CoStar Realty Info., Inc.*, 267 F. Supp. 3d 1000, 1008 (N.D. Ill. 2017) (quoting *Vasich v. City of Chicago*, 2013 WL 80372, at *10 (N.D. Ill. Jan. 7, 2013)). In *MG Design*, the court refused to treat a renewed personal jurisdiction motion as a motion for reconsideration on an amended complaint, explaining: "the First Amended Complaint wiped clean the parties'

procedural positions and Defendants thus have an opportunity to raise new Rule 12(b)(2) arguments." *Id.* at 1012. *Third,* and finally, plaintiffs have now presented new evidence in their opposition brief, that the Court has never seen nor considered before. (Opp. Br. 3-4.) Even putting anything else to the side, how could the Court's ruling here constitute a motion for reconsideration of anything the Court has already previously decided, when this new and additional evidence has now been provided?

***2) Rush is not "simply denying" the allegation Rush knowingly violated HIPAA.*** Plaintiffs next argue Rush's motion for judgment on the pleadings is inappropriate because "Rush never once cites to its Answer, nor mentions any affirmative defense," and instead "simply ***denies*** the allegation that it violated HIPAA prior to the December 2022 HHS bulletin," (Opp. 1 (emphasis in original); *see also id.* at pg. 3 (accusing Rush of raising "new factual assertions").) The text of Rule 12(c) is plain and simple: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. Pro. R. 12(c). The basis for Rush's motion under the rule is clear: plaintiffs' failure to *allege* facts to state a plausible claim under *Twombly* and *Iqbal*. (Dkt. # 91, Mem. in Supp. 3-12.) This is a defense Rush raised in Rush's answer. (Dkt. # 89, *Aff. Def. 2* ("[p]laintiffs' remaining claims fail to state a claim upon which relief can be granted").)

***3) Department of Health & Human Services Bulletin.*** Plaintiffs claim that "Rush falsely represents that the December 2022 HHS Bulletin reminder was the first time it received notice its conduct could be unlawful." (Opp. 5.) Here again, though, plaintiffs' amended complaint shows this to be true. To this day, plaintiffs have never alleged that any governmental agency issued any guidance, rule or otherwise specifically directed to the so-called "tracking technologies" alleged in their complaint prior to the December 1, 2022 bulletin; nor could they.

(*See* Dkt. # 86, 2d Am. Compl. ¶¶ 167-169, 181, 183, 186-189.) *See also Schlosser v. Kwak*, 16 F.4th 1078, 1083 n.3 (2d Cir. 2021) ("HIPAA provides for administrative enforcement by the Secretary of Health and Human Services, *see* 42 U.S.C. § 1320d-5(a), (c), and enforcement by the State attorneys general civil actions, *see id.*, § 1320d-5(d), in addition to criminal enforcement, *see id.* § 1320d-6."). And, as this Court has appropriately recognized, even this guidance does not carry the force of law. *See Kurowski v. Rush System for Health*, --- F. Supp. 3d ----, 2023 WL 4707184, at *3 (N.D. Ill. July 24, 2023).

***4) Plaintiffs' new evidence.*** As set forth above, plaintiffs have now presented new evidence in opposing Rush's motion for judgment on the pleadings. (Opp. Br. 3-4.) Under Seventh Circuit precedent, this argument appears appropriately before the Court. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *but cf. Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483-84 (6th Cir. 2020). Plaintiffs did not submit the full exhibits to the Court, however, and Rush has now learned that plaintiffs do not intend to do so, notwithstanding their citation and discussion of these documents in their opposition brief. (Opp Br. 3-4; *compare Roe v. Bridgestone Corp.*, 492 F. Supp. 988, 1007 (S.D. Ind. 2007).)

Rush thus provides the full documents to the Court with this filing, so the Court has the benefit of the full record, *see Geinosky*, 675 F.3d at 745 n.1. Rush has also withdrawn the confidentiality designation so that the documents can be publicly filed. The documents show good reason for plaintiffs' omission. They are innocuous; things such as a 2017 example of Rush's comprehensive, 21-page HIPAA privacy policy (*see Exhibit 1, HIPAA Privacy Policy*, RUSH0002604-RUSH0002624 ("Rush will use or disclose protected health information as permitted or required by these Privacy Policies and Procedures")); a 44-page presentation from February 2020 entitled "Security and Privacy of Health Information," likewise exhaustively

detailing HIPAA's privacy and security requirements (*Exhibit 2, Security & Privacy of Health Information* (Feb. 2020), RUSH0002507-RUSH0002550); an "Authorization to Share Personal Health Information in Research" form Rush had used for research purposes (*Exhibit 3, Rush University Medical Center, Authorization to Share Personal Health Information in Research*, RUSH0010613-RUSH0010621); and a June 1, 2022 warning from Epic about the potential "privacy issues that might arise if third-party-hosted web analytics tools are embedded in your organization's MyChart website," that talks about a potential "[r]isk of disclosure of limited personal information," but also never once mentions HIPAA. (*Exhibit 4, Issue Notification*, RUSH00063734-RUSH0063738.)

If anything, the documents show conscientious, not criminality. This includes following the June 2022 Markup Article on Facebook (*see* Dkt. # 86, *2d Am. Compl.* ¶ 31 n.3), where one Rush employee wrote: "If you search the study for Rush, it says that the pixel in question wasn't found on our appointment scheduling page. I'm going to guess the pixel isn't our MyChart, so perhaps the sensitive appointment information is insulated from it. *That said, I definitely think that we should talk to our vendors about this, and that we should consider taking steps to remove or limit the use of the pixel further*." (*Exhibit 5, Markup emails*, RUSH0024007-0024010 (emphasis added); *see also id.*, RUSH0029695-RUSH0029695 ("So, obviously Rush is **not** one of the hospitals being dinged here for sending sensitive data to Facebook. However, Thurston mentioned he believes we **do** use the Meta Pixel, *and we wanted to conduct a review to make sure nothing our patients might be concerned about is being sent on*.") (italics added). (*Compare* Dkt. # 86, *2d Am. Compl.* ¶ 31 (only alleging Google Analytics was in the portal).)

The main purpose of the new evidence appears to show Rush defining protected health information in connection with HIPAA's de-identification regulation. (*See, e.g., Ex. 2, Feb. 2020*

*Presentation*, RUSH0002519; *Exhibit 6, Guide for Review of Patient Comments*, at RUSH0034927.) The de-identification regulation does not purport to define what is or is not the scope of protected health information under HIPAA in the first instance, however. The regulation simply provides a mechanism by which a HIPAA-covered entity may disclose the protected health information already in its possession without any consent. *See* 45 C.F.R. § 164.514(a) (setting forth the standard for "De-identification of *protected health information*") (emphasis added).) This in turn can be done in one of either two ways: (1) by expert validation, *id.*, or (2) without expert validation by scraping a list of 18 potential identifiers "of the individual or of relatives, employers, or household members," including IP addresses, web URLs, and device identifiers and serial numbers, *id.*

***5) "Plaintiffs are happy to provide an expert report."*** Plaintiffs also claim that Rush is continuing to make allegedly inappropriate disclosures to third-parties, including Microsoft and Google, and further that "they are happy to provide an expert report to the Court to detail these findings upon request." (Opp. Br. 5.) Under *Geinosky*, plaintiffs may "elaborate on their existing allegations," "so long as the new elaborations *are consistent with the pleadings*." 675 F.3d at 745 n.1 (emphasis added). Plaintiffs are not free to assert new claims altogether. As plaintiffs are careful to note, they brought this case in September 2022, based on allegations they first made at that time. (Opp. Br. 1.) We are now nearly a year and a half and three pleadings into the case. At some point, enough should be enough. More to the point, there is no amount of evidence, whether old or new, that would change the basic legal question before the Court: *Why does it matter to the application of the Wiretap Act's tortious or criminal conduct exception merely that someone might have violated the law, even with a financial purpose?*

Having cleared away the brush, to this question Rush now turns.

***6) Transferred intent under the Wiretap Act.*** On the main issue, plaintiffs ask the Court to transfer criminal and/or tortious intent from one alleged legal violation to the next under the Wiretap Act: "Rush indisputably used the tracking technology *knowingly, and for the purpose of, disclosing patient individually identifiable health information* for commercial or personal gain—a crime." (Opp. Br. 6 (emphasis added).) Judge Buchwald has rejected this interpretation of the statute. *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515-19 (S.D.N.Y. 2001). In doing so, Judge Buchwald analyzed a decision this Court has not addressed: *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345 (7th Cir. 1995). Plaintiffs argue "[t]his case bears no resemblance to *Desnick* because there is no plausible permissible explanation for Rush's conduct, let alone an undisputed permissible purpose." (Opp. Br. 7.) This "plausible permissible explanation" shows from the face of plaintiffs' complaint, however: to "collect and analyze information about how internet users are interacting with a regulated entity's website or mobile application." (Dkt. # 86, *2d Am. Compl.* ¶ 170 (quoting *HHS Office of Civil Rights Issue Bulletin on Requirements under HIPAA for Online Tracking Technologies* (Dec. 1, 2022).) To this day, the federal government *mandates* that federal agencies, including HHS itself, use Google Analytics on their websites in order to advance these same basic speech interests. *See* https://analytics.usa.gov/; https://digital.gov/guides/dap/common-questions-about-dap/ (Guide to the Digital Analytics Program; "The Digital Analytics Program (DAP) offers advance, easy web analytics for federal agencies.").)

What the case law shows is what makes sense: We do not retroactively impose punitive, crippling statutory penalties and potential criminal liability under the federal Wiretap Act merely because, with all the benefit of hindsight, it may turn out that someone might have violated the law, even a criminal law. As applied to this case here, plaintiffs may have plausibly alleged that

Rush acted with a financial purpose, but plaintiffs have not plausibly alleged Rush acted with a financial purpose in order to violate HIPAA and thereby harm the named plaintiffs in particular. If, as it turns out, Rush's conduct violated HIPAA, that alleged legal violation might help support plaintiffs' breach of contract claim, based on the alleged transmission of "your confidential health information" (Am. Compl. ¶ 352), at least assuming plaintiffs could allege actual damages on that claim. It does not, however, support plaintiffs' claim for statutory penalties in the absence of any real harm under the Wiretap Act. *See Caro v. Weintraub*, 618 F.3d 84, 99-100 (2d Cir. 2010) & *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (holding the exception is "confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass them").

***7) Actual damages on breach of contract claim.*** "Illinois law is clear that, *to state a claim for breach of contract*, one must be able to prove actual damage." *TAS Distributing Co. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 n.6 (7th Cir. 2007) (emphasis added). "Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, *to state a claim for breach of contract*." *Id.* at 631 (emphasis added). Plaintiffs may be correct that Illinois law also provides for the recovery of nominal damages in the ultimate event that the plaintiff cannot prove actual damages. (Opp. Br. 10-12.) But that does not mean they are relieved from any pleading burden to plead and ultimately prove actual damages. *See also In re Dealer Mang't Sys. Antitrust Litig.*, --- F. Supp. 3d ----, 2023 WL 4297644, at *6-7 (N.D. Ill. June 29, 2023) (holding ability to collect nominal damages under Illinois contract law does not prevent one from having to show actual damages in the first instance, even if the amount ultimately cannot be proved); *TAS Distributing Co.*, 491 F.3d at 632 (same). Plaintiffs do not argue they have met this burden here, and their contract claim should be dismissed.

***8) Illinois Eavesdropping Act civil remedies provision.*** Plaintiffs also do not argue they can meet the Illinois Eavesdropping Act's "actual damages" provision. (Opp. Br. 12-15.) Instead, plaintiffs argue that "[w]hile an award of punitive damages cannot stand alone, an award of nominal damages can support the assessment of punitive damages in the case of an intentional tort." *Id.* at 12 (quoting *Chi. Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 88)). *Chicago Title Land* was an intentional tort trespass case, however, not a claim under the Illinois Eavesdropping Act. *Id.* Whatever the rule may be in that context, the Illinois Eavesdropping Act only provides "Civil remedies *to injured parties*." 720 ILCS 5/14-6 (emphasis added). There is no statutory right to nominal damages under this provision, remedies are limited "(a) To an injunction by the circuit court prohibiting further eavesdropping by the eavesdropper and by or on behalf of his principal, or either," (b) To all actual damages against the eavesdropper or his principal or both," and "(c) To any punitive damages which may be awarded by the court or by a jury." *Id.* Moreover, "[n]ominal damages are not compensation for loss or injury, but rather recognition of a violation of rights." *Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir. 1983).

Plaintiffs cite *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186 (2019), for the proposition that "[t]he Illinois Supreme Court recently held that a statute with a similar structure permitted recovery of statutory damages even in the absence of actual damages," (Opp. Br. 13). The Illinois Biometric Privacy Act operates very differently from the Illinois Eavesdropping Act, however. A person "aggrieved" under the statute may recover either "actual damages" *or* "*liquidated damages*" under the statute, whichever amount is greater. *Id.*, ¶¶ 1, 10, 21 (analyzing 740 ILCS 14/20(1) & 14/20(2).) Plaintiffs' problem is that the Illinois Eavesdropping Act has no such similar language here.

***9) Certification for interlocutory appeal under 28 U.S.C. § 1292(b):*** For the reasons set forth above, the Court should enter judgment on the entirety of plaintiffs' second amended complaint. In the alternative, or in some combination, the Court should certify its decision on the Wiretap Act claim for interlocutory appeal. (Dkt. # 91, *Mem. in Supp.* 12-15.)

Plaintiffs argue Rush's request for interlocutory appeal should be denied "[c]onsistent with the Court's comments during the February 13 conference," (Opp. Br. 15). Rush is not asking the Court to certify the Court's order granting plaintiffs' motion for leave, based on the arguments Rush raised in that opposition, as discussed at the hearing. Rush is instead asking the Court to certify this order, prospectively, in the event the Court holds plaintiffs' complaint states a claim under the Wiretap Act. This is something plaintiffs have asked for previously, and we are far enough into this case now where it seemed best to make the request in this way.

Citing to this Court's decision in *Rogers v. BNSF Railway Co.*, 2022 WL 2208824, at *2 (N.D. Ill. June 21, 2022), plaintiffs argue Rush "also fails to demonstrate how interlocutory appeal of the Wiretap Act issue would 'speed up the litigation,'" (Opp. 15). Unlike in *Rogers*, however, Rush has made this showing in its opening brief. As the Seventh Circuit recognized in *Sterk*: "uncertainty about the status of the destruction claim may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Here again, plaintiffs' statements in support of their motion to compel on proportionality demonstrate in stark fashion why this same holding from *Sterk* applies to this case here. (Dkt. # 101, Mem. in Supp. 13.)

As the Seventh Circuit further held in that case: "But all that Section 1292(b) requires as a precondition to an interlocutory appeal, once it is determined that the appeal presents a controlling question of law on which there is a substantial ground for difference of opinion, is

that an immediate appeal *may* materially advance the ultimate termination of the litigation." *See Sterk*, 672 F.3d at 536 (emphasis in original).

Finally, citing to *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019), plaintiffs argue that a decision on a motion to dismiss is not a controlling question of law. (Opp. Br. 15.) The Seventh Circuit, however, holds that a decision on a motion for judgment on the pleadings is a pure question of law, reviewed "de novo, asking whether the well-pleaded factual allegations viewed in favor of the nonmoving party state a facially plausible claim for relief." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (quotation omitted). Plaintiffs have further bolstered the case for an interlocutory appeal with their new evidence. It is still an exceedingly limited factual record, but the Seventh Circuit now has the benefit of this additional record upon which to analyze the tortious or criminal conduct exception.

## CONCLUSION

For the above-stated reasons, the Court should enter judgment on plaintiffs' second amended complaint. In the alternative, the Court should certify this proposed question to the Seventh Circuit for interlocutory review: "Whether the federal Wiretap Act's tortious or criminal conduct exception bars plaintiffs' federal claim under the statute, as alleged in Count I of their Second Amended Complaint (Dkt. # 86, 2d Am. Compl. ¶¶ 301-348)."

Dated: March 4, 2024

Respectfully submitted,

By: */s/ David Carney*
*Counsel for Defendant Rush System for Health*

Bonnie Keane DelGobbo
bdelgobbo@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
Firm No. 46365

David Carney
dcarney@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7634

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on March 4, 2024, a true and correct copy of the foregoing *Motion for Judgment on the Pleadings or in the Alternative to Certify for Interlocutory Appeal* was served on counsel of record via the Court's electronic filing system.

*/s/ David Carney*
*Counsel for Defendant*