# Exhibit A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH,<br><br>Defendant. | Case No. 22 Civ. 5380<br><br>The Honorable Matthew F. Kennelly, Judge |

## SETTLEMENT AGREEMENT

This Settlement Agreement, entered into September 25, 2024, is made and entered into jointly by **(i)** plaintiffs Marguerite Kurowski and Brenda McClendon, by and through their counsel, Jason 'Jay' Barnes of Simmons Hanly Conroy LLC and Nada Djordjevic of DiCello Levitt LLP, on the one hand, and **(ii)** defendant Rush System for Health d/b/a Rush University System for Health, by and through its counsel David Carney and Bonnie Keane DelGobbo of Baker & Hostetler LLP, on the other. Kurowski and McClendon are collectively referred to in this Agreement as the "Representative Plaintiffs." Rush System for Health d/b/a Rush University System for Health is referred to as "Rush" or "Defendant." The Representative Plaintiffs and Rush are collectively referred to as the "Settling Parties."

The Agreement is intended to fully, finally, and forever resolve, discharge and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## RECITALS

*Whereas*, on September 30, 2022, the Representative Plaintiffs sued Rush on behalf of two putative classes over alleged privacy violations on Rush's public website, www.rush.edu, and Rush's MyChart Patient Portal, https://mychart.rush.edu/mychart/Authentication/Login? (the "Litigation");

*Whereas*, specifically, plaintiffs alleged that Rush violated their privacy rights by disclosing "Plaintiffs' and Class Members' personally identifiable patient data, including their status as patients and the contents of their communications with Rush, to third parties including Facebook, Google, and a digital advertising company called 'Bidtellect'";

*Whereas*, the putative class in the Representative Plaintiffs' initial complaint were defined to include: (1) a "Patient Class," consisting of "[d]uring the fullest period allowed by law, all persons who are, or were, patients of Rush or any of its affiliates and accessed Rush's MyChart patient portal that causes transmission of personally identifiable data and communications to be made to third-parties"; and (2) an "Illinois class," defined to include "[d]uring the fullest period allowed by law, all residents of Illinois who are, or were, patients of Rush or any of its affiliates and accessed Rush's MyChart patient portal that causes transmission of personally identifiable data and communications to be made to third-parties";

*Whereas*, Rush moved to dismiss plaintiff's complaint in its entirety under Rule 12(b)(6) on November 23, 2022;

*Whereas*, on March 3, 2023, the Court issued a published opinion, granting in part and denying in part Rush's Rule 12(b)(6) motion to dismiss, *see Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023);

*Whereas*, ever since that time, the parties have been vigorously litigating this case on two different fronts: (1) continuing to engage in dispositive motion practice over the scope of the allowable claims in the case; and (2) engaging in extensive discovery over the remaining claims alleged in the Representative Plaintiffs' amended complaints;

*Whereas*, this discovery has included: Rush reviewing nearly 200,000 documents, and producing 43,093 documents totaling 202,741 pages; both parties answering extensive interrogatories and requests for production; Rush answering more than one-hundred-fifty requests for admission; and both parties preparing their witnesses for deposition, including a comprehensive Rule 30(b)(6) deposition spanning fourteen topics and three Rush corporate witnesses;

*Whereas*, the pleadings and dispositive motions practice has included plaintiffs filing two motions for leave to amend; Rush opposing both motions for leave and filing an additional Rule 12(b)(6) motion and a final Rule 12(c) motion for judgment on the pleadings;

*Whereas*, following this motion for judgment on the pleadings, two claims remain heading into class certification proceedings: one claim under the federal Electronic Communications Privacy Act (ECPA) and a second claim under the Illinois Eavesdropping Act;

*Whereas*, also following this dispositive motion practice, the Representative Plaintiffs and Rush began discussions regarding an injunctive relief class settlement of the Representative Plaintiffs' remaining claims, with a complete release of the Representative Plaintiffs' individual claims;

*Whereas*, following nearly a month of negotiations, the Representative Parties and Rush were able to resolve their claims, finally executing a settlement term sheet on August 23, 2024;

*Whereas*, this Settlement Agreement sets forth two separate releases in Article V below, one for all claims, including damages claims, with respect to the Representative Plaintiffs, and the second limited to claims for declaratory and injunctive relief, with respect to the Settlement Class;

*Whereas*, based upon their substantial investigation and pretrial discovery as set forth above, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate to Settlement Class Members and are in their best interests, and have agreed to settle the claims that were asserted or could have been asserted in the above-captioned litigation pursuant to the terms and provisions of this Agreement after considering: (a) the substantial benefits that Settlement Class Members will receive from the Settlement; (b) the uncertain outcome and attendant risks of litigation; (c) the delays inherent in litigation; and (d) the

desirability of permitting the settlement of this litigation to be consummated as provided by the terms of this Agreement;

*Whereas*, this Agreement sets forth the final understanding of the Settling Parties regarding the settlement of the litigation proceedings against Rush over the Litigation;

*Whereas*, pursuant to these terms, this Settlement Agreement provides for the final class-wide resolution of the Litigation on the terms set forth herein;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Representative Plaintiffs, individually and on behalf of the Settlement Class, Class Counsel, and the Defendant, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

## I. DEFINITIONS.

As used anywhere in the Settlement Agreement, including the Recitals, the following terms have the meanings specified below:

1.1 "Agreement" or "Settlement Agreement" means this agreement.

1.2 "Class Counsel" means Jason 'Jay' Barnes of Simmons Hanly Conroy LLC and Nada Djordjevic of DiCello Levitt LLP.

1.3 "Effective Date" means the first date by which all of the events and conditions specified in ¶ 7.1 herein have occurred and been met.

1.4 "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service

award, or appeal solely thereof, made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.5     "Judgment" means a judgment rendered by the Court, which will finally be entered through a separate docket entry.

1.6     "Objection" means a valid challenge to the Settlement asserted by a Settlement Class Member pursuant to Section IV of this Agreement.

1.7     "Objection Deadline" means the deadline to submit an Objection, which will be established by the Court in the preliminary approval order.

1.8     "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, agents and/or assignees.

1.9     "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate or contact a person, including, without limitation:  names, addresses, birthdates, Social Security numbers, telephone numbers, and the names of employers and/or guarantors, member identification number, and financial account information.

1.10    "Plaintiffs" or "Representative Plaintiffs" means Marguerite Kurowski and Brenda McClendon.

1.11    "Plaintiffs' Counsel" means Class Counsel and the other attorneys who have represented plaintiffs in the Litigation.

1.12    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement.  The Settling Parties' proposed form of Preliminary Approval Order is attached as Exhibit 1. The Parties understand and acknowledge that they may make revisions to the proposed form, including in connection with Plaintiffs' preliminary approval filing.

1.13 "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

1.14 "Related Entities" means Rush's past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as each of Rush's and these entities' respective predecessors, successors, members, directors, officers, employees, principals, agents, attorneys, providers, customers, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation.

1.15 "Released Claims" means: (i) with respect to the Representative Plaintiffs any and all claims and causes of action including, without limitation, any causes of action for or under 18 U.S.C. § 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein; the Fair Credit Reporting Act, and all similar statutes in effect in any states in the United States as defined herein; the Illinois Consumer Fraud Act, and all similar statutes in effect in any states in the United States as defined herein; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, against any of the Released Persons (Rush) based on, relating to, concerning or in any way arising out of the Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement; and (ii) with Respect to Defendant, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities, whether known or unknown, legal, equitable,

or otherwise, that could have been asserted against the Representative Plaintiffs on or prior to the date of this Agreement that are related to the Litigation. This release shall not be construed any other claim related to the Representative Plaintiffs' care, including with respect to the payment of bills.

1.16   "Released Persons (Rush)" means Rush and the Related Entities including each of their past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, and each of their respective predecessors, successors, members, directors, officers, employees, principals, agents, attorneys, providers, customers, insurers, and reinsurers.

1.17   "Released Persons (Plaintiffs)" means the Representative Plaintiffs as well as their agents, representatives, servants, attorneys, assigns, and all other individuals and entities acting on their behalf.

1.18   "Service Award" means any Court-approved payment to Plaintiffs for serving as class representatives.

1.19   "Settlement Class" means: "All Rush University System for Health, Rush University Medical Center, Rush Oak Park Hospital, Rush Copley Medical Center, Rush Medical Group, and any and all predecessor entities' patients who are current Rush MyChart patient portal users and/or account holders."

1.20   "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.21   "Settling Parties" means, collectively, Rush and the Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.22   "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Representative Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.

1.23 "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

**II. WEBSITE PRIVACY COMMITMENTS.**

2.1 Rush shall adopt, implement, and/or maintain the following privacy commitments: Pursuant to the settlement, and for a period of two years, Rush agrees to remove any remaining vestiges of the following tracking technologies on Rush's Websites:

a. Google Analytics

b. Google Doubleclick

c. Google Ads

d. Meta (including Facebook, Instagram, and all other Meta entities)

e. Amazon

f. TikTok

g. Pinterest

h. Liveramp

i. TheTradeDesk

j. LinkedIn (except for on Rush's careers page)

k. Oracle

l. BidSwitch

m. Yahoo

n. Bidtellect

o. Twitter / X

p. Rubicon Project

q. YouTube

r. Hotjar

s. CrazyEgg

For purposes of this term sheet, the term "Websites" shall be defined to mean www.rush.edu, doctors.rush.edu, and mychart.rush.edu.

2.2 The parties understand and acknowledge that Rush may use HIPAA-compliant third-party companies to perform analytics and de-identifying functions on Rush's Websites, so long as Rush has a Business Associate Agreement with the third-party.

2.3 On an annual basis each year following final approval of the settlement, for the two-year period, Rush further agrees to provide plaintiffs' counsel with a declaration, signed under oath, attesting to compliance with the above-stated requirements.

### III. TIMELINE FOR PRELIMINARY AND FINAL APPROVAL.

3.1 As soon as practicable after the execution of the Settlement Agreement, or on any date directed by the Court, Class Counsel shall submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement with the Court.

3.2 Class Counsel shall apply to the Court for entry of the [Proposed] Preliminary Approval Order attached hereto as Exhibit 1, subject to any agreed-upon revisions, as set forth in paragraph 1.12 above.

3.3 No later than forty-five (45) days after entry of the Preliminary Approval Order, Class Counsel will file a motion for attorneys' fees, costs and Service Awards, and Class Counsel and counsel for Rush shall jointly file a motion for final approval of the settlement with the Court.

### IV. OBJECTION PROCEDURES

4.1 Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection. Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector, if any; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing, if any; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection, if any; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (viii)

the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation), if any; (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years; and (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court no later than sixty (60) days after the Preliminary Approval Date, and served concurrently therewith upon Class Counsel: Jason 'Jay' Barnes, 112 Madison Avenue, 7th Floor, New York, New York, 10016, and Nada Djordjevic, Ten North Dearborn Street, Chicago, Illinois, 60602; and the following counsel for Rush: David Carney, Baker & Hostetler LLP, 127 Public Square, Suite 2000, Cleveland, Ohio, 44114.

4.2     Because this Settlement Agreement is reached under Fed. R. Civ. P. 23(b)(2) only, Settlement Class Members may not exclude themselves from the Settlement.

4.3     Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 4.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 4.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

V.     **RELEASE AND DISMISSAL OF LITIGATION.**

5.1     <u>Representative Plaintiff Release</u>. Upon the Effective Date, the Representative Plaintiffs shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and

forever released, relinquished, and discharged all Released Claims against all Released Persons, as defined in ¶¶ 1.12 and 1.13. Further, upon the Effective Date, and to the fullest extent permitted by law, the Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any Released Claim(s) is/are asserted.

5.2    <u>Settlement Class Member Release</u>. As of the Effective Date, all Settlement Class Members, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all claims for injunctive and declaratory relief, including Unknown Claims, against Rush (and Rush's respective agents, directors, officers, attorneys and employees acting on its behalf) and agree to refrain from instituting, directing or maintaining any contested matter, adversary proceeding, or miscellaneous proceeding, or participating in any contested matter, miscellaneous proceeding, or adversary proceeding by a third party against Rush that relates in any way to the claims for injunctive or declaratory relief made in the above-captioned matter, and in any way relating to the Litigation.

**VI.    PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES; SERVICE AWARDS TO PLAINTIFFS.**

6.1    Plaintiffs' Counsel has the right to request reimbursement of attorneys' fees and reasonable costs and expenses incurred in the Litigation, and the right to request settlement payments (including service awards) for the Representative Plaintiffs, subject to the limits listed in ¶6.2 below.

6.2    As part of the settlement, Rush acknowledges that the Representative Plaintiffs and Class Counsel intend to seek Court approval for the following expenses, fees and payments, up to (but not to exceed) the following amounts:

a. Plaintiffs may seek approval for Rush to pay up to a maximum of $15,000 to each of the two named plaintiffs, Marguerite Kurowski and Brenda McClendon (i.e., up to $30,000 total) in exchange for their full releases in ¶ 1.16 and as proposed service awards;

b. Class Counsel may seek reimbursement of their expenses and costs actually incurred, in an amount not to exceed $20,000;

c. Class Counsel may seek attorneys' fees as approved by the Court but not to exceed $2.8 million.

6.3 The payments above shall be made in a single sum to Class Counsel as soon as practicable following final approval of the settlement to an account established by Class Counsel. Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel and service awards to the Representative Plaintiffs in a manner approved by the Court, consistent with ¶ 6.1. Approved attorney's fees, costs and expenses shall be allocated between the Class Counsel firms in their discretion.

6.4 No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service awards ordered by the Court to Class Counsel or the Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**VII. CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION.**

7.1 The Effective Date of the settlement shall be the date on which the last of the following events occurs:

(a) the Court has entered an Order of Preliminary Approval;

(b) the Court has entered Judgment and granted final approval of the settlement as set forth herein; and

(c) the Judgment has become Final, as defined in ¶ 1.4.

7.2　If any of the conditions specified in ¶ 7.1 hereof are not satisfied the Settlement Agreement may be cancelled and terminated subject to ¶ 7.4 unless Class Counsel and Rush's counsel mutually agree in writing to cure and proceed with the Settlement Agreement.

7.3　The parties share a common understanding that a class notice program is not required and the Settlement Agreement is conditioned on this mutual understanding. If the Court were to rule otherwise, the parties agree to confer in good faith on possible modifications to the Settlement Agreement, if possible.

7.4　In the event that the Settlement Agreement is not approved by the Court, the Court requires a Notice including individual notice, or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (a) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall constitute grounds for cancellation or termination of the Settlement Agreement.

### VIII.　MISCELLANEOUS PROVISIONS.

8.1　The Settling Parties (i) acknowledge that it is their intent to consummate this Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

8.2 The Settling Parties intend this settlement to be a final and complete resolution of all disputes between the Representative Plaintiffs and Settlement Class Members, on the one hand, and Rush on the other, with respect to the Litigation, under the terms and conditions set forth above. The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

8.3 Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.4 The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.5 The Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise

provided herein, each party shall bear its own costs. This agreement supersedes all previous agreements made by the Representative Plaintiffs, and Settlement Class Members, on the one hand, and Rush the other.

8.6 Proposed Class Counsel, on behalf of the Settlement Class, are expressly authorized by the Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

8.7 Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.8 Non-retaliation: In light of Plaintiffs' representation that they intend to continue to have the option to seek medical and other services from Rush and the Related Entities (or may be in an emergency position where they have no practical choice), Rush agrees to refrain from all retaliation against Plaintiffs (including their families and agents), including through coercion, disparagement, action or inaction.

8.9 The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

8.10 The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

8.11 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

8.12 The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations

15

of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to choice of law principles.

8.13   As used herein, "he" means "he, she, they, or it;" "his" means "his, hers, theirs, or its," and "him" means "him, her, their, or it."

8.14   All dollar amounts are in United States dollars (USD).

8.15   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

On Behalf of Plaintiffs,                                     Counsel for Rush and Duly Authorized Signatory,

_____            _____

Dated: September ___, 2024                          Dated: September ___, 2024

By: Jason "Jay" Barnes                                 By: David Carney

*Counsel for Plaintiffs and the Proposed Settlement Class; Proposed Settlement Class Counsel*

*Counsel for Defendant Rush System for Health*

_____            _____

Dated: September <u>26</u>, 2024                      Dated: September ___, 2024

By: Nada Djordjevic                                       By: Bonnie Keane DelGobbo

*Counsel for Plaintiffs and the Proposed Settlement Class; Proposed Settlement Class Counsel*

*Counsel for Defendant Rush System for Health*

16

of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to choice of law principles.

8.13 As used herein, "he" means "he, she, they, or it;" "his" means "his, hers, theirs, or its," and "him" means "him, her, their, or it."

8.14 All dollar amounts are in United States dollars (USD).

8.15 All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

On Behalf of Plaintiffs,

*[signature]*

Dated: September 26, 2024

By: Jason "Jay" Barnes

*Counsel for Plaintiffs and the Proposed Settlement Class; Proposed Settlement Class Counsel*

Dated: September __, 2024

By: Nada Djordjevic

*Counsel for Plaintiffs and the Proposed Settlement Class; Proposed Settlement Class Counsel*

Counsel for Rush and Duly Authorized Signatory,

*[signature]*

Dated: September 26, 2024

By: David Carney

*Counsel for Defendant Rush System for Health*

*[signature: Bonnie DelGobbo]*

Dated: September 26, 2024

By: Bonnie Keane DelGobbo

*Counsel for Defendant Rush System for Health*

16