**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARGUERITE KUROWSKI and BRENDA MCCLENDON, on behalf of herself and others similarly situated, | Case No. 1:22-cv-05380 |
| Plaintiffs, | The Honorable Matthew F. Kennelly, Judge |
| vs. | |
| RUSH SYSTEM FOR HEALTH d/b/a RUSH UNIVERSITY SYSTEM FOR HEALTH, | |
| Defendant. | |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL CERTIFICATION OF THE SETTLEMENT CLASS

# TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND...........................................................2

A. Litigation and Procedural History.....................................................................2

B. The Settlement Agreement ................................................................................2

1. Class Definition ........................................................................................2

2. Injunctive Relief........................................................................................2

3. Class Notice ..............................................................................................3

4. Release .....................................................................................................4

5. Attorneys' Fees and Costs for Class Counsel and Service Awards for Class Representatives.......................................................................................4

III. FINAL APPROVAL IS WARRANTED....................................................................5

A. Class Certification Remains Appropriate. ..........................................................6

1. The requirements of Rule 23(a) are satisfied. ..............................................7

i. Numerosity: the Class is sufficiently numerous. ..............................7

ii. Commonality: Common questions would drive the resolution of this litigation. .........................................................................................7

iii. Typicality: the Class Representatives' claims are typical................8

iv. Adequacy: the Settlement Class Representatives and Lead Settlement Class Counsel are Adequate. ........................................9

2. The requirements of Rule 23(b)(2) are satisfied. .......................................10

B. The Settlement is Fair, Reasonable, and Adequate...............................................12

1. Rule 23(e)(2)(A): The Class representatives and Class Counsel are adequate and have served the best interest of the Class.............................13

2. Rule 23(e)(2)(B): the Parties negotiated the Settlement at arm's length. ..13

3. Rule 23(e)(2)(C): the Settlement provides excellent relief........................14

i. The Settlement is superior to the costs, risks, and delay of continued litigation / The strength of Plaintiffs' case balanced against the value of the Settlement and the complexity, length, and expense of litigation favor Settlement....................................14

ii. The effectiveness of the proposed method of distributing relief to the Class ........................................................................17

iii. The proposed attorneys' fees are reasonable ................................17

iv. There are no agreements between the parties separate from the Settlement. ........................................................................18

v. Opposition to the Settlement and reaction of Class Members.......18

vi. Opinion of competent counsel .....................................................18

vii. The stage of the proceedings indicates the Settlement is fair and reasonable...................................................................19

4. Rule 23(e)(2)(D): The Settlement treats Settlement Class Members equitably.........................................................................................19

IV. CONCLUSION..........................................................................................20

# TABLE OF EXHIBITS TO JOINT DECLARATION

| EXHIBIT | DESCRIPTION |
|---|---|
| **A** | CAFA Notice pursuant to 28 U.S.C. § 1715 |
| **B** | Declaration of Settlement Class Representative Brenda McClendon |
| **C** | Declaration of Settlement Class Representative Marguerite Kurowski |
| **D** | DiCello Levitt LLP lodestar through October 31, 2024, sorted by timekeeper |
| **E** | DiCello Levitt LLP lodestar through October 31, 2024, sorted by month |
| **F** | Simmons Hanly Conroy LLP lodestar through October 31, 2024, sorted by timekeeper |
| **G** | Simmons Hanly Conroy LLP lodestar through October 31, 2024, sorted by month |
| **H** | DiCello Levitt LLP unreimbursed litigation expenses |
| **I** | Simmons Hanly Conroy LLP unreimbursed litigation expenses |
| **J** | [Proposed] Order of Final Approval |
| **K** | [Proposed] Order Granting Motion for Attorneys' Fees, Expenses, and Service Awards |
| **L** | [Proposed] Rule 58 Final Judgment |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....7

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)....6

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008)....7

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010)....8

*Chambers v. Together Credit Union*,
2021 WL 1948453 (S.D. Ill. May 14, 2021)....17

*Hale v. State Farm Mutual Automobile Insurance Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)....18, 20

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
757 F.3d 599 (7th Cir. 2014)....8

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996)....6

*Kohen v. Pacific Inv. Mgmt.*,
571 F.3d 672 (7th Cir. 2009)....10

*Lechuga v. Elite Eng'g, Inc.*,
2021 WL 4133543 (N.D. Ill. Sept. 10, 2021)....7

*Lucas v. Vee Pak, Inc.*,
2017 WL 6733688 (N.D. Ill. Dec. 20, 2017)....17

*Mulvania v. Sheriff of Rock Island Cty.*,
850 F.3d 849 (7th Cir. 2017)....8

*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
231 F.R.D. 280 (N.D. Ill. 2005)....9

*Payton v. Cty. of Kane*,
308 F.3d 673 (7th Cir. 2002)....7

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ....................9

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009)....................9

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ....................7

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011)....................17

*Snyder v. Ocwen Loan Servicing, LLC*,
2019 WL 2103379 (N.D. Ill. May 14, 2019)....................15

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ....................8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................8

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ....................15

**Rules**

Fed. R. Civ. P. 23.................... *passim*

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

On October 2, 2024, this Court entered an order certifying for settlement purposes the Settlement Class and preliminarily approving the Settlement Agreement. Dkt. 152 (the "Preliminary Approval Order"). The Court found that the Settlement is "fair, reasonable, and adequate, in accordance with Rule 23(e)." As previously discussed, the Settlement provides the ***full*** prospective injunctive relief sought by Plaintiffs.[1] Namely, Defendant Rush System for Health ("Defendant" or "Rush") has agreed to remove "any remaining vestiges" of tracking technologies from its website and patient portal that Plaintiffs contend caused HIPAA-protected personal information to be transmitted to third parties, including Facebook, Google, Amazon, TikTok, and others. Rush will be able to transition to HIPAA-compliant third-party companies to perform analytics and de-identifying functions on Rush's websites, so long as Rush has a Business Associate Agreement with the third-party. There is also a mandatory verification mechanism agreed to by Rush, and no class members (other than the Plaintiffs) release *any* money damage claims. The proposed Settlement is also free from any indicia of collusion, because attorney fees and expenses are subject to Court approval (and Rush has the right to be heard on the motion, i.e., no "clear sailing"), and the Plaintiffs approved the settlement terms prior to being notified of their right in the Settlement Agreement to seek incentive awards. The Settlement remains fair, adequate and reasonable, and the Plaintiffs respectfully request that the Court enter the Proposed Order granting Final Approval and enter Judgment closing the docket. Settlement Class Counsel separately move for fees, expenses and Class Representative incentive awards in an accompanying motion, which Rush has agreed to pay if approved by the Court.

---

[1] The Court appointed the Named Plaintiffs as Settlement Class Representatives. Dkt. 152. This Memorandum refers to them as "Plaintiffs" for efficiency.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Litigation and Procedural History

In 2018, Plaintiffs' counsel began investigating and rigorously pursuing alleged privacy violations against healthcare providers for their use of tracking technologies like the Facebook Pixel on hospital websites. Counsel represented various plaintiffs in the first medical privacy cases related to these tracking technologies, and in September 2022, Plaintiffs commenced the present litigation. *See* Dkt. 150 ¶¶ 10, 11. Over the course of two years, the parties engaged in robust motions practice (including two motions to dismiss, two motions for judgment on the pleadings, a motion to reconsider, two contested motions for leave to amend, and discovery disputes), negotiated an ESI protocol, and exchanged extensive discovery. *See* Dkts. 20, 36, 37, 41, 49, 67, 74, 90, 100. Rather than spend additional months—and potentially years—in litigation, which could also involve appeals, the Parties engaged in successful settlement discussions that achieved more immediate relief for Settlement Class Members. Dkt. 150, ¶ 12.

### B. The Settlement Agreement

#### 1. Class Definition

Plaintiffs seek final approval of the Settlement that includes the following Settlement Class, which the Court preliminarily approved at Dkt. 152, ¶ 4:

> All Rush University System for Health, Rush University Medical Center, Rush Oak Park Hospital, Rush Copley Medical Center, Rush Medical Group and any and all predecessor entities' patients, who are current Rush MyChart patient portal users and/or account holders.

#### 2. Injunctive Relief

Although Rush denies Plaintiffs' allegations, Rush agrees to the following Stipulated Injunction to resolve the action. Pursuant to the Settlement Agreement, and for a period of not less than two years, Rush agrees to remove any remaining vestiges of the following tracking

technologies on Rush's Websites:

| | |
|---|---|
| A | Google Analytics |
| B | Google Doubleclick |
| C | Google Ads |
| D | Meta (including Facebook, Instagram, and all other Meta entities) |
| E | Amazon |
| F | TikTok |
| G | Pinterest |
| H | Liveramp |
| I | TheTradeDesk |
| J | LinkedIn (except for on Rush's careers page) |
| K | Oracle |
| L | BidSwitch |
| M | Yahoo |
| N | Bidtellect |
| O | Twitter / X |
| P | Rubicon Project |
| Q | YouTube |
| R | Hotjar |
| S | CrazyEgg |

*See* Dkt. 150-1 ¶ 2.1. The term "Websites" means www.rush.edu, doctors.rush.edu, and mychart.rush.edu. *Id.* The parties understand and acknowledge that Rush may use HIPAA-compliant third-party companies to perform analytics and de-identifying functions on Rush's Websites, so long as Rush has a Business Associate Agreement with the third-party. *Id.* ¶ 2.2. Furthermore, on an annual basis each year following final approval of the Settlement, Rush further agrees to provide Plaintiffs' counsel with a declaration, signed under oath, attesting to compliance with the above-stated requirements. *Id.* ¶ 2.3.

### 3. Class Notice

In the Preliminary Approval Order, the Court held that "providing notice to the relevant federal and state regulatory authorities pursuant to 28 U.S.C. § 1715 (the 'CAFA Notice'), constitutes sufficient notice of the matters and fully satisfies the requirements of due process, Rule 23(e) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and

rules.'" Dkt. 152 ¶ 8; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362, 131 S. Ct. 2541, 2558, 180 L. Ed. 2d 374 (2011) ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *Stathakos v. Columbia Sportswear Co.*, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) (collecting cases) ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required"); *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000) ("Rule 23(b)(2) certification does not ensure personal notice or opportunity to opt out even if some or all the plaintiffs pray for monetary damages."). Pursuant to this determination and in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715, Rush provided notice to the required authorities on October 10, 2024, and copied Class Counsel. *See* Joint Declaration of Class Counsel Jay Barnes and Nada Djordjevic, dated November 15, 2024 (the "Joint Decl.") ¶ 5 and Exhibit A thereto.

#### 4. Release

The Settlement Agreement, if approved, will release Plaintiffs' ***individual*** claims for monetary relief, but Class Members' claims for monetary relief are not released. Dkt. 150-1 ¶¶ 5.1, 5.2. Settlement Class Members (including Plaintiffs) are bound to the terms of the Stipulated Injunction to the extent they wish to seek injunctive relief in a class action pursuant to Rule 23(b)(2).

#### 5. Attorneys' Fees and Costs for Class Counsel and Service Awards for Class Representatives

Under the terms of the Settlement, Class Counsel are permitted to petition this Court for an Order awarding them (i) attorneys' fees, and (ii) reimbursement of reasonable litigation expenses, so long as not in excess of the caps set in the Settlement Agreement ¶ 6.2. There is no "clear sailing" as Rush retains the right to respond to (or even oppose) such petition. Settlement

Class Counsel are also permitted to seek $15,000 for each of the two Plaintiffs in exchange for their full release of all money damages claims, and as a Service Award (or "incentive award") in recognition for their two years of contributions to the case. Dkt. 150-1 ¶ 6.2(a). As noted above, the Plaintiffs agreed to the terms of this Settlement prior to being informed that their attorneys would seek this amount, to avoid even the appearance of collusion. Dkt. 150, ¶ 9; *see also* Joint Decl. ¶¶ 6-7 and Exhibits B and C thereto (Plaintiff declarations). Settlement Class Counsel are filing their motion for fees, expenses and service awards separately.

## III. FINAL APPROVAL IS WARRANTED

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). However, "[f]ederal courts naturally favor the settlement of class action litigation" to "minimize[] the litigation expenses of both parties and also reduce[] the strain such litigation imposes upon already scarce judicial resources." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

Courts employ a multi-step process for evaluating a class action settlement, beginning with preliminary approval. *In re Northfield Lab'ys, Inc. Sec. Litig.*, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The second step is a final fairness hearing, at which the Court considers (1) whether the proposed class is suitable for certification under Rule 23 and (2) the settlement is fair, reasonable, and adequate under the following factors: (a) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (b) the complexity, length, and expense of further litigation; (c) the amount of opposition to the settlement; (d) the reaction of members of the class to the settlement; (e) the opinion of competent counsel; and (f) stage of the proceedings and the amount of discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th

Cir. 2014); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 921 (N.D. Ill. 2022) (citing Fed. R. Civ. P. 2(e)(1)-(2))[2]. In making its determination, the Court views the facts "in the light most favorable to the settlement." *Isby*, 75 F.3d at 1199.

The Court has already granted preliminary approval of the Settlement. *See* Dkt. 152. Plaintiffs now respectfully request the Court grant final approval.

**A. Class Certification Remains Appropriate.**

Certification of a settlement class is appropriate if the proposed class satisfies each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). While the decision to certify a class is subject to "heightened" attention for settlement purposes, *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997), district courts nevertheless have "broad discretion to determine whether certification of a class is appropriate," *Lechuga v. Elite Eng'g, Inc.*, 2021 WL 4133543, at *2 (N.D. Ill. Sept. 10, 2021) (citing *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). In line with this framework, class certification is governed by Rules 23(a) and 23(b), which set forth six threshold requirements a plaintiff must meet. *See Amchem*, 521 U.S. at 621; *Arreola*, 546 F.3d at 794. This analysis does not necessarily hinge on the merits of the plaintiffs' claims. *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010); *Payton v. Cnty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ("a determination of the propriety of class certification should not turn on the likelihood of success on the merits."). Rather, the Court need only look "to those aspects of the merits that affect the decisions *essential* under Rule 23." *Schleicher*, 618 F.3d at 685 (emphasis added). For the reasons set forth below, the Court should re-certify the Settlement Class for final settlement purposes.

[2] As noted above, the notice requirements of Rule 23(e)(1) are not applicable to this injunctive-relief only settlement.

### 1. The requirements of Rule 23(a) are satisfied.

Rule 23(a) requires that (1) the proposed settlement class is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) Plaintiffs' claims are typical of those of the Class (typicality); and (4) Plaintiffs and Class Counsel will adequately protect the interests of the Class (adequacy). Fed. R. Civ. P. 23(a)(1)-(4); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 344 (N.D. Ill. 2010). Each of these requirements is satisfied here.

#### i. Numerosity: the Class is sufficiently numerous.

Rule 23(a)(1) provides that the class be so "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Plaintiffs allege the third-party tracking technologies that Rush deployed on its website affected every patient who utilized Rush's online patient portal. The Parties believe the Settlement Class of Rush patient portal users consists of at least 500,000 members (Dkt. 150 ¶ 13), which greatly exceeds the threshold requirement for numerosity in the Seventh Circuit. *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859-60 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Smith v. Aon Corp.*, 238 F.R.D. 609, 614 (N.D. Ill. 2006) ("Classes of twenty-five to fifty persons are sufficiently numerous to warrant certification). Thus, joinder would be impracticable and Rule 23(a)(1) is satisfied.

#### ii. Commonality: Common questions would drive the resolution of this litigation.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality

requirement. *Wal-Mart Stores, Inc.*, 564 U.S. at 359. "The critical point is 'the need for conduct common to members of the class.'" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014)). However, there need not be commonality of damages. *IKO Roofing*, 757 F.3d at 602.

Here, Plaintiffs allege numerous common issues, including, among others, (1) whether the at-issue disclosures are the "contents" of Plaintiffs' "electronic communications" within the meaning of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510; (2) whether Rush's conduct satisfies the ECPA's crime-or-tort exception under 18 U.S.C. § 2511(2)(d); and (3) whether the at-issue disclosures constitute "private electronic communications" under the Illinois Eavesdropping Statute, 720 ILCS § 5/14-1(e). With more than one common question capable of class-wide resolution, the Settlement Class satisfies Rule 23(a)(2).

**iii. Typicality: the Class Representatives' claims are typical.**

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp*., 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). A claim is typical under Rule 23(a)(3) when it "'arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and when the "'claims are based on the same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). The typicality requirement does not require "all class members [to] suffer the same injury as the named class representative." *Id.*

Here, the claims of Plaintiffs and the Class all arise out of Rush's use of third-party tracking technologies on Rush's patient portal and rely on the same legal theories under the ECPA and the

Eavesdropping Statute; Plaintiffs also sought and obtained discovery confirming their activities on the subject websites. Dkt. 150 ¶ 13. Thus, typicality is easily satisfied.

**iv. Adequacy: the Settlement Class Representatives and Lead Settlement Class Counsel are Adequate.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation is measured by a two-part test: (1) the named plaintiffs cannot have claims in conflict with other class members, and (2) the named plaintiffs and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009).

Both requirements are satisfied here. Lead Settlement Class Counsel and their firms are qualified, experienced, and thoroughly familiar with data privacy class actions. Counsel have a combined decades of experience representing plaintiffs in key privacy class actions. Dkt. 150-3 (DiCello Levitt firm bio); 150-4 (Simmons Hanly firm bio); *see also In re Google Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015) (establishing, *inter alia*, precedent that common law intrusion upon seclusion is actionable against Internet companies that mislead consumers about privacy practices); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) (establishing, *inter alia*, first post-*Spokeo* precedent that privacy injury is sufficient to confer Article III Standing); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (establishing, *inter alia*, that a defendant's monetization of unlawfully collected data can constitute an economic injury). Further, counsel represented the plaintiffs in the first class actions involving medical privacy and the Facebook Pixel, achieving significant success, and are currently litigating a putative class action against Facebook itself for violating its users' medical privacy. *See Doe v. Partners, et. al.*, Case No. 19-1651-BLS1 (Suffolk Cnty., Mass.)

(class-wide settlement reached); *Doe v. Virginia Mason*, Case No. 19-2-26674-1 SE (Kings Cnty., Wash.) (awaiting trial for certified class); *Doe v. Sutter Health*, Case No. 34-2019-00258072-CU-BT-GDS (Sacramento Cnty., Cal.) (surviving motions to dismiss and awaiting class certification decision); *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580 (N.D. Cal.) (surviving two motions to dismiss). Settlement Class Counsel are also supported by their firms, which are two of the leading data privacy class action firms in the country. Dkt. Nos. 150-3, 150-4. Settlement Class Counsel have diligently represented the interests of the Class throughout this litigation, Joint Decl. ¶ 17(a)-(v), and will continue to do so. *See, e.g.*, Settlement Agreement, Dkt. 150-1, ¶ 6.2 (ongoing verification duties).

Moreover, the interests of the Settlement Class Members are aligned with those of the representative Plaintiffs because they all seek to use Rush's websites without sacrificing their medical privacy. Plaintiffs' interests do not conflict with those of the absent Class Members, as they suffered precisely the same injury. In addition, Plaintiffs have diligently represented the interests of the Class by participating in discovery (including written discovery and document production) and communicating regularly with counsel regarding the status of the case. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

**2. The requirements of Rule 23(b)(2) are satisfied.**

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must establish the Settlement Class satisfies Rule 23(b)(2) by showing Rush "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

With respect to the first requirement, Rush's use of the at-issue tracking technologies applied generally to the entire Settlement Class. This inquiry focuses on common *behavior* by the defendant toward the class, not common *effects* on the class. § 4:28, 2 Newberg and Rubenstein

on Class Actions § 4:28 (6th ed.) at n.2. Thus, Rule 23(b)(2) does not require that Rush's conduct be directed or damaging to every member of the class. *Id.* In this instance, Rush deployed a set of tracking technologies on its patient portal that was intended to work uniformly in all relevant respects to cause the disclosure of the same categories of medical information for every patient who encountered the portal. Because Rush used the third-party trackers to target every patient who visited the patient portal, Rush's conduct unquestionably applied generally to the entire Class.

Further, the injunctive relief is appropriate to the class as a whole. Plaintiffs seek certification to enjoin Rush from using the offending tracking technologies on its websites, which would afford relief to every Class Member. In other words, there is no need for a different injunction for each individual Member of the Class. Given the indivisible nature of the proposed relief, the injunction is appropriate to the Class as a whole. *See Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 441 (7th Cir. 2015) ("23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is . . . to require the defendant to do or not do something that would benefit the whole class"); *Rivers v. Southway Carriers, Inc.*, 2024 WL 579734, at *8 (N.D. Ill. Feb. 13, 2024) (certifying Rule 23(b)(2) class seeking a declaratory judgment that the defendant violated applicable law, which provided "a prospective remedy to prevent . . . future unlawful activity"); *cf. Wal-Mart*. 564 U.S. at 360 (Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction[.]").

Lastly, the contemplated relief is "final" in that it provides a prospective remedy to prevent future alleged illegal activity and is not "merely lay[ing] an evidentiary foundation for subsequent determinations of liability." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011). Plaintiffs therefore satisfy all requirement of Rule 23(b)(2): Rush's conduct applied

generally to the Class, the injunctive relief is appropriate to the Class as a whole, and the relief is final.

### B. The Settlement is Fair, Reasonable, and Adequate.

After considering certification, the Court turns to the adequacy of the settlement itself to determine whether the terms of the settlement are fair, reasonable, and adequate, in light of " (1) the strength of the case for plaintiffs on the merits, balanced against the extent of [the] settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed." *In re TikTok*, 617 F. Supp. 3d at 933 (quoting *Wong*, 773 F.3d at 863). Further, to the extent applicable,[3] Rule 23(e) sets out the following considerations of whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

**(i)** the costs, risks, and delay of trial and appeal;

**(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[3] "Congress amended Rule 23 in 2018 to add a list of concerns that courts should consider when deciding whether to approve a class action settlement. Fed. R. Civ. P. 23(e)(2), advisory committee note to 2018 amendment; *see* Fed. R. Civ. P. 23(e)(2)(A)–(D). But Congress stated that these factors were not intended to 'displace' any of the tests devised by the courts of appeals. Fed. R. Civ. P. 23(e)(2), advisory committee note to 2018 amendment." *In re TikTok*, 617 F. Supp. 3d at 933 at n. 23. Thus, Courts in this District continue to apply the factors from *Wong* (*see id.*), which largely subsume the Rule 23(e)(2) criteria (*Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *5 (N.D. Ill. May 14, 2019)). However, to avoid any doubt, Plaintiffs also explicitly address the concerns set out in Rule 23(e)(2).

**(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

**1. Rule 23(e)(2)(A): The Class representatives and Class Counsel are adequate and have served the best interest of the Class**

The first Rule 23(e)(2) factor requires courts to consider whether class representatives and class counsel will represent the class adequately. Fed. R. Civ. P. 23(e)(2). This factor is easily satisfied because, as discussed *supra*, the Plaintiffs and Settlement Class Counsel have zealously represented the Settlement Class Members' interests.

**2. Rule 23(e)(2)(B): the Parties negotiated the Settlement at arm's length.**

The Settlement before the Court is the product of months of extensive, good-faith settlement discussions as required by Rule 23(e)(2)(b). Lest there be any doubt, the sharply contested motions practice (*i.e.*, multiple motions to dismiss, motion for judgment on the pleadings, a motion to reconsider, motions for leave to amend, a motion for certification for interlocutory appeal, and notices of supplemental authority, see Joint Decl. ¶ 17, underscores the arms-length nature of the negotiations and belies any question of collusion. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 496 (N.D. Ill. 2015) (finding the record suggested a lack of collusion where "the parties vigorously litigated this case[,]" noting the parties fully briefed a motion to dismiss, a motion to reconsider, and submitted supplemental authority). And to underscore the complete arms-length nature of the Settlement, Rush retains the right to oppose any fee request, Dkt. 150, ¶ 9, and Plaintiffs approved the Settlement terms before being informed of

the right to seek Service Awards. Joint Decl. ¶¶ 5-6 and Exhibits B and C thereto (Plaintiff declarations).

### 3. Rule 23(e)(2)(C): the Settlement provides excellent relief.

To evaluate whether relief provided by a settlement is adequate, Rule 23(e)(2)(C) instructs the Court to consider four factors: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees; and (iv) any agreements made in connection with the proposed settlement. The *Wong* factors largely encompass the criterion enumerated in Rule 23(e)(2) and include (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed. *Snyder*, 2019 WL 2103379, at *5; *Wong*, 773 F.3d at 863. Each of these factors supports approval of the Settlement.

#### i. The Settlement is superior to the costs, risks, and delay of continued litigation / The strength of Plaintiffs' case balanced against the value of the Settlement and the complexity, length, and expense of litigation favor Settlement

The injunctive relief provides superior benefits to the Settlement Class Members, particularly given the costs, delays, and risks posed by continued litigation. Although Plaintiffs continue to believe in the strength of their claims, the road thus far has been hard-fought. Following three iterations of Plaintiffs' complaint (Dkts. 1, 46, 86) and several rounds of briefing, the Court dismissed nine of Plaintiffs' eleven claims (*see* Dkts. 31, 60, 81, 140). Among other things, the Court rejected Plaintiffs' damages theories, making any recovery dependent on statutory damages under the ECPA and punitive damages under the Eavesdropping Act. *See* Dkt. 60 at 11-13.

To recover under the ECPA, Plaintiffs must show Rush intercepted Plaintiffs' communications "for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(2)(d). This question is intertwined with a Department of Health and Human Services bulletin that has been revised and successfully challenged in separate litigation. *See* Dkts. 138 & 139 (addressing *Am. Hosp. Ass'n, et al. v. Becerra, et al.*, Case No. 23-cv-01110-P (N.D. Tex. June 20, 2024)). Although Plaintiffs maintain that the *AHA* decision is irrelevant to this case (*see* Dkt. 139), the decision presents another area of contention amongst the Parties and further complicates the issues. Also, for punitive damages under the Eavesdropping Act, Plaintiffs bear the burden of establishing Rush acted with wantonness, willfulness, malice, fraud, oppression, or gross negligence. Dkt. 140 at 21. While Plaintiffs believe they will ultimately be able to prove statutory and punitive damages, these burdens are not insignificant.

In addition, continued litigation will encompass more hotly contested motions, including class certification, potential decertification, and summary judgment, accompanied by discovery, and trial. Given the highly technical subject matter at hand, the costs and complexities of this litigation will be exacerbated by the inevitable involvement of expert witnesses. In substantially similar cases, the parties have retained experts in forensic software, identifiability, and medical ethics. Absent settlement, Plaintiffs anticipate the need to retain the same number of experts here.

And while Plaintiffs are confident they could certify a class and withstand summary judgment, they also recognize the potential obstacles and risks associated with continued litigation. For instance, defendants in analogous cases (some represented by Rush's skilled counsel here) have raised defenses based on purported individual issues stemming from a patient's browser, device, user-settings, and privacy-preserving methods. The plaintiffs' experts in those cases have vehemently contested these assertions with differing degrees of success. In *Doe v. Virginia Mason*,

Case No. 19-2-26674-1 SEA (King Cnty., Wash.), the court granted the plaintiffs' motion for class certification and partially granted the plaintiff's motion for summary judgment which established certain elements of Plaintiffs' claims. In contrast, in *Doe v. MedStar*, Case No. 24-c-20-000591 (Baltimore City, Md.), the court denied class certification and granted the defendants' motion for summary judgment *in toto*. The drastically different results of these litigations reflect the very real risks and uncertainties faced by both Parties in this case.

Finally, the Parties have expressed a desire and willingness to appeal any adverse outcome, which would significantly protract the costs and time of the litigation. *See* Dkt. 67 (Plaintiffs requesting certification of issue for interlocutory review in the event leave to amend denied); Dkt. 90 (Rush's request for certification of question for interlocutory review).

In contrast to the uncertainty, costs, and delays posed by continued litigation, the Settlement allows Class Members to "realize both immediate and future benefits" of the lawsuit upon settlement approval. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Settlement would bypass "the inherent risk, complexity, time, and cost associated with continued litigation[.]" *Id.* Under the terms of the Settlement, Rush would be enjoined from deploying tracking technologies on its websites for at least two years, which remedies the privacy violations alleged in Plaintiffs' complaint. Further, the Settlement does not require Plaintiffs or Class Members to release their claims for monetary relief, which preserves the rights of the Settlement Class to file individual or class action lawsuits for any damages they could attempt to prove they suffered as a result of Rush's conduct. This is an excellent result for the Class who, absent settlement, risks recovering nothing if this Court, a jury, or an appellate court found against them. *See Chambers v. Together Credit Union*, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding that the "relief provided for by the Settlement appears adequate" because "[t]he costs,

risks, and delays of trial and appeal would have delayed any recovery for several years, and would have risked the Class recovering nothing had this Court or an appellate court ruled against them on the pending motion to dismiss, a motion for class certification, a motion for summary judgment, at trial, or on appeal from a final judgment."); *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *11 (N.D. Ill. Dec. 20, 2017) (finding the injunctive relief "increase[s] the value of the settlement" where the "settlement's injunctive relief benefits the Class by correcting and improving" defendant's wrongful conduct). Therefore, this Settlement fares far better when weighed against the numerous risks and obstacles associated with continued litigation.

**ii. The effectiveness of the proposed method of distributing relief to the Class**

This factor is not applicable to the proposed Settlement, consisting of injunctive relief only.

**iii. The proposed attorneys' fees are reasonable**

As set out above, the Settlement Agreement permits Settlement Class Counsel to apply to the Court for an award of attorneys' fees and litigation expenses in amounts not to exceed the caps in paragraph 6.2 of the Settlement Agreement. If approved by the Court, Rush will pay these fees and expenses, which will not impact the Settlement Class's relief. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (finding award of fees did not constitute an abuse of discretion where "[t]he vast majority of the fee [would] be paid by [the defendant] and [would] not come out of any class recovery"). Counsel's devotion of significant time and resources —with no guarantee of recovery—indicates the fairness of the attorneys' fees. Settlement Class Counsel provide detailed support for their application in the accompanying Motion for Fees and Expenses, and in the Joint Declaration and exhibits thereto.

**iv. There are no agreements between the parties separate from the Settlement.**

Rule 23(e)(2)(C)(iii) instructs the court to consider any agreements between the parties in addition to the Settlement. All agreements have been disclosed to the Court, and there are no separate "side-deals" between the Parties. Dkt. 150, ¶ 5. Thus, this factor also weighs in favor of approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (finding factor neutral where the parties, nor the Court, identified "any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3).").

**v. Opposition to the Settlement and reaction of Class Members**

The Parties have received no objections to the Settlement. Therefore, this factor weighs in favor of final approval. If a Settlement Class Member were to file a timely objection, the Court has set December 9, 2024 as the deadline for Plaintiffs to respond. Dkt. 152, ¶ 12(c).

**vi. Opinion of competent counsel**

Counsel for Rush and Plaintiffs are both experienced class action litigators who support the Settlement, after two full years of litigation. "When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000). Here, counsel for both Parties are well versed not only in class actions, but also litigation involving medical privacy and the third-party tracking technologies at issue. Dkts. 150-3, 150-4. Further, as discussed above, the Settlement is not the result of collusion but was reached only after two years of contentious litigation and extensive settlement discussions. Thus, counsels' opinions that the Settlement is fair, reasonable, and adequate should be afforded significant weight. *See Schulte*, 805 F. Supp. 2d at 586-87 (finding

counsel's opinion supported approval where counsel had extensive experience in consumer class actions and complex litigation and there was no indication of collusion).

**vii. The stage of the proceedings indicates the Settlement is fair and reasonable**

"The last factor – the stage of the proceedings and the amount of discovery completed – asks how fully the district court and counsel were able to evaluate the merits of plaintiffs' claims before reaching the settlement." *In re TikTok*, 617 F. Supp. 3d at 938 (cleaned up). At this juncture, Plaintiffs and the Court have more than sufficient information to responsibly evaluate the merits of the case and assess the risks versus rewards of continued litigation. The Parties have extensively briefed the legal bases of Plaintiffs' claims and the Parties have exchanged written discovery and completed extensive document productions; Plaintiffs also obtained substantial third-party discovery. Joint Decl. ¶ 17; *accord*, Dkt. ¶ 149. Because of this extensive fact discovery, the focus of the litigation is now "more on legal than factual issues," which have been thoroughly scrutinized. *See In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. at 350 (finding this factor weighed in favor of approval even before formal discovery took places because the focus of the case was on legal, not factual, issues).

**4. Rule 23(e)(2)(D): The Settlement treats Settlement Class Members equitably.**

The Settlement treats Settlement Class Members equitably relative to each other, another factor that weighs in support of approval. Fed. R. Civ. P. 23(e)(2)(D). As discussed *supra*, the Settlement seeks an injunction that prohibits conduct that applies generally to the entire Class. That is, "[a]ll class members are entitled to the same relief under the proposed Settlement." *Hale*, 2018 WL 6606079, at *5.

## IV. CONCLUSION

For the reasons sets forth above, Plaintiffs respectfully request the Court grant final approval of the Settlement Agreement, re-certify the Settlement Class, and enter the accompanying Proposed Order and Proposed Judgment.

Dated: November 15, 2024

Respectfully Submitted,

*/s/ Nada Djordjevic*

**DICELLO LEVITT LLP**
Adam J. Levitt
Amy E. Keller
Nada Djordjevic
Julia K. Veeser
Ten North Dearborn St., Sixth Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
Fax.: (312) 253-1443
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
jveeser@dicellolevitt.com

**DICELLO LEVITT LLP**
David A. Straite (admitted *pro hac vice)*
Corban Rhodes (admitted *pro hac vice)*
485 Lexington Ave., 10th Floor
New York, NY 10017
Tel.: (646) 933-1000
Fax.: (646) 494-9648
dstraite@dicellolevitt.com
crhodes@dicellolevitt.com

**SIMMONS HANLY CONROY LLC**

*/s/ Jay Barnes*

Jason 'Jay' Barnes (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
Jenny Paulson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016-7416
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
ejohnson@simmonsfirm.com
jpaulson@simmonsfirm.com

***Settlement Class Counsel***

**SIGNATURE ATTESTATION**

Pursuant to the United States District Court for the Northern District of Illinois' General Order on Electronic Case Filing, General Order 16-0020(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from the signatories shown above and that each signatory concurs in the filing's content.

*/s/ Nada Djordjevic*
**DICELLO LEVITT LLP**
Nada Djordjevic

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be filed using this Court's CM/ECF service, which will send notification of such filing to all counsel of record this 15th day of November, 2024.

*/s/ Nada Djordjevic*
**DICELLO LEVITT LLP**
Nada Djordjevic